## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CITY OF RATON, a municipal corporation
and political subdivision of the State of New
Mexico,

        Plaintiff,

vs.                                                                           No. CIV 08-0026 JB/WDS

ARKANSAS RIVER POWER AUTHORITY,
a public power corporation and political sub-
division of the State of Colorado,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Motion to Stay, or in the

Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or Dismiss Pursuant to Fed. R. Civ.

P. 12(b)(6), filed February 15, 2008 (Doc. 5)("Motion").  The Court held a hearing on May 2, 2008.

The primary issues are: (i) whether the Court should transfer venue of this action to the United

States District Court for the District of Colorado; (ii) whether Plaintiff City of Raton's claim for

declaratory relief under the New Mexico Joint Powers Agreements Act states a claim for which

relief can be granted; (iii) whether the Colorado Governmental Immunity Act bars the City of

Raton's claim for negligent misrepresentation; and (iv) whether the City of Raton can state a claim,

under the circumstances alleged, for violation of the New Mexico Constitution's Anti-Donation

Clause.  For the reasons stated at the hearing, for reasons stated herein that are consistent with those

stated at the hearing, and because the Court does not believe that the Colorado venue is a

measurably, if any, better forum than the jurisdiction of New Mexico, the Court will deny the

motion to transfer and to abstain.  The Court will permit Defendant Arkansas River Power Authority

("ARPA") to withdraw its motion to dismiss City of Raton's First Claim.  The Court will grant the motion to dismiss City of Raton's Third Claim for negligent misrepresentation because the Court believes that New Mexico courts would extend governmental immunity to the Arkansas River Power Authority under the principle of comity.  The Court will grant the motion to dismiss City of Raton's Fifth Claim for Relief because Raton has failed to state a claim for violation of the Anti-Donation Clause, because the Court believes the purpose of the Anti-Donation Clause is to prevent gifts from governmental entities and the City of Raton is not gifting electricity to non-ARPA subscribers.

**FACTUAL BACKGROUND**

ARPA is a political subdivision of the State of Colorado, formed by six Colorado municipalities and the City of Raton, to provide wholesale electric power to its member municipalities.  See Motion at 1.  The City of Raton entered into the Organic Contract and the Power Sales Agreement forming ARPA in 1979.  See Complaint for Declaratory Judgment, Breach of Contract, Misrepresentation, Violation of the New Mexico Constitution and Permanent Injunctive Relief ¶ 10, at 2, filed January 9, 2008 ("Complaint").  Pursuant to the Organic Contract and the Power Sales Agreement, the City of Raton agreed to "purchase and obtain all [of its] wholesale power and energy requirements from [ARPA]."  Complaint ¶ 13, at 3 (internal quotation marks omitted).  The New Mexico Department of Finance and Administration ("DFA") approved the Organic Contract on October 31, 1979.  See Complaint ¶ 11, at 2.

The City of Raton subsequently approved amendments to the Organic Contract.  See Complaint ¶ 26, at 5.  The amendments authorized ARPA to proceed with the Repowering Project and with the issuance of bonds to finance that project.  See Complaint ¶¶ 25-30, at 5.  The City of Raton approved these amendments on or about October 26, 2004 and January 18, 2005.  See

Complaint ¶ 29, at 5.  The City of Raton did not provide any notice of its suit against ARPA  under the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-109(1).  See Motion, Exhibit 1, Affidavit of Brunelli ¶ 24, at 7-8 (executed February 15, 2008)("Brunelli Aff.").

## PROCEDURAL BACKGROUND

The City of Raton's First Claim for Relief is for declaratory judgment and seeks a declaration that certain amendments to the Organic Contract and the Power Sales Agreement, made in contemplation of the Repowering Project, are "void and of no effect" because ARPA did not, pursuant to the New Mexico Joint Powers Agreements Act, N.M.S.A. 1978 §§ 11-1-1 to 11-1-7, receive the DFA Secretary's prior approval.  Complaint ¶¶ 61-68, at 10-11.

In its Third Claim for Relief, for negligent misrepresentation, the City of Raton alleges that ARPA "made a number of material misrepresentations to the City concerning the Project and costs associated with the Project," including alleged "misrepresentations concerning the cost of the Project, the progress of the Project, its economic feasibility, and its superiority to other alternatives available to the City and Member Municipalities for acquiring power."  Complaint ¶¶ 77-78, at 12. The City of Raton alleges that, as a result of these alleged misrepresentations, it was damaged.  See Complaint ¶ 84, at 13.

The City of Raton's Fifth Claim for Relief asserts that ARPA "must sell up to twenty-seven percent (27%) of the Project energy output to non-members" at rates less than the estimated cost of production, which "would amount to an impermissible donation and an indirect lending of credit to non-members [of ARPA] in violation of Article IX, Section 14 of the New Mexico Constitution." Complaint ¶¶ 93-94, at 14.

On February 5, 2008, ARPA submitted a motion requesting that the Court stay the case, or in the alternative transfer venue to the United States District of Colorado, or dismiss Counts I, III,

and V of the City of Raton's Complaint. <u>See</u> Doc. 5.  ARPA contends that the Court should abstain from deciding the case because the action should have been commenced in Colorado and thus venue is inconvenient in this Court. <u>See id.</u> at 12.  While ARPA acknowledges that this case was filed two days before the pending case in Colorado, neither case has progressed more significantly than the other. <u>See id.</u> at 13-14.  ARPA also asserts that Colorado law, not New Mexico law, should govern the dispute, because the Organic Contract and the Power Sales Agreement were "intended to be governed by Colorado law." <u>Id.</u> at 14.  ARPA alternatively requests that the Court transfer venue of this case to the federal district court in Colorado. <u>See id.</u> at 16-17.  ARPA asserts that the majority of non-party witnesses reside in Colorado. <u>See id.</u> at 17.

ARPA argues that the Court should dismiss the City of Raton's Count I because the Colorado Governmental Immunity Act bars the claim and because the City of Raton has not sufficiently pled this count with particularity as required under rule 9 of the Federal Rules of Civil Procedure. <u>See id.</u> at 20-24.  ARPA contends that the Court should dismiss City of Raton's Count V for violation of the Anti-Donation Clause of the New Mexico Constitution because ARPA is a Colorado political subdivision that is not subject to New Mexico Constitution's limitations. <u>See id.</u> at 24.  ARPA asserts that, even if the Anti-Donation Clause were applicable, its conduct does not violate the Anti-Donation Clause because the City of Raton has received substantial consideration for its expenditures. <u>See id.</u> at 25.  ARPA also argues that the Court should give effect to the notice requirements of the Colorado Governmental Immunity Act under the comity principle. <u>See</u> Reply in Support of Motion to Stay, or in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6), filed March 28, 2008 (Doc. 10)("Reply").  ARPA further contends that the City of Raton has not provided sufficient detail to satisfy rule 9, because "it[s] recitation of the general subject matter of the alleged misrepresentations fails to

describe exactly what [ARPA] said that was not true, who made the statements, or how such statements were false."  Id. at 8.

The City of Raton responded on March 4, 2008.  See City of Raton's Response to Motion to Stay, or in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), filed March 4, 2008 (Doc. 7)("Response").  The City of Raton contends that the Court should not abstain, because there are no parallel proceedings pending in state and federal court.  See id. at 5.  The City of Raton contends that the majority of relevant events and communications underlying the dispute occurred in New Mexico.  See id. at 8.  The City of Raton argues that, because the Organic Contract and Power Sales Agreement does not contain a choice-of-law provision selecting Colorado law, it is unclear Colorado law is applicable to this case.  See id. at 11.  The City of Raton contends that it has properly stated a claim for negligent misrepresentation because the Colorado Governmental Immunity Act is inapplicable to breach-of-contract actions. See id. at 19.  The City of Raton asserts that, even if the Colorado Governmental Immunity Act is applied, it properly gave actual notice to ARPA of its intention to sue.  See id. at 20.  The City of Raton argues that ARPA would not have immunity under New Mexico law, because it was provided actual notice.  See id. at 21.  The City of Raton also asserts that rule 9 does not apply to a negligent misrepresentation claim, and, even if it did, that the City of Raton has satisfied it by providing sufficient detail.  See id. at 22.  The City of Raton contends that it has asserted a claim for violation of the Anti-Donation Clause because the City of Raton is forced to pay a subsidy to a non-member, private citizen, who will pay less than the cost of production.  See id. at 23.

On March 11, 2008, the City of Raton submitted a request for judicial notice of dismissal of related Colorado proceedings.  See Doc. 9.  The City of Raton attached a copy of an order that the Honorable John L. Kane, Senior United States District Judge for the United States District Court

for the District of Colorado, had issued.  See id., Exhibit 1, <u>Arkansas River Power Authority v. City</u>

<u>of Raton</u>, No. 08-cv-00073-JLK, Order (Doc. 9-2)("Kane Order").  In that Order, Judge Kane grants

the City of Raton's motion to dismiss ARPA's action.  See id. at 2.  Judge Kane concluded:

> The New Mexico action was first filed, involves the same parties, presents the same
> factual issues as this case and includes a request for declaratory judgment that is a
> reverse image of the declaratory relief the ARPA seeks in this court.  The New
> Mexico action also involves other claims and relief not asserted here, including
> claims by Raton for damages under tort and contract theories and a request for
> permanent injunctive relief.  The New Mexico action is, therefore, a better and more
> effective forum for fully resolving the controversy between the parties.

<u>Id.</u> at 3.  Judge Kane also found that "the public interest of the citizens and governmental agencies

of New Mexico in this dispute, on balance, outweighs that of the citizens and governmental agencies

of Colorado."  <u>Id.</u>

     At the May 2, 2008 hearing, ARPA represented that fourteen of the Board Members

governing ARPA are Colorado residents and, two members, whom the City of Raton appointed, are

presumably New Mexico residents.  See Transcript of Hearing at 7:5-9 (Johnson)(taken May 2,

2008)("Tr.").[1]  ARPA contended that a number of other key witnesses are residents of the State of

Colorado.  See id. at 7:15-8:19 (Johnson).  ARPA argued it had no way to compel residents of

Colorado to come to New Mexico.  See id. at 8:1-3 (Johnson). ARPA contended that, because it is

a Colorado government entity, under a Colorado contract, relating to Colorado bonds, and a

Colorado powering project affecting seventy-eight percent of the 22,000 ratepayers residing in

Colorado, the strongest state interest is in Colorado.  See id. at 15:6-14 (Johnson).

     The City of Raton contended that residents of New Mexico, including elected officials and

lay persons analyzing various representations that ARPA's representatives made, may be witnesses.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

See id. at 20:19-21:3 (Winter).  The City of Raton argued that it has witnesses that could not be compelled to appear in Colorado.  See id. at 21:5-6 (Winter).  The City of Raton suggested that, because the ARPA Board's minutes are regularly recorded and issued, it is unlikely that the Board Members would be relevant at trial, and they would be difficult to produce at a trial in Colorado. See id. at 25:21-25 (Winter).

ARPA reconsidered its motion to dismiss on Count I of the City of Raton's Complaint and asked to withdraw its motion as it pertains to Count I, because of the likelihood that the arguments involve disputed issues of fact.  See id. at 83:23-84:4 (Johnson).  The City of Raton did not object to ARPA's withdrawal of its 12(b)(6) motion on Count I of the Complaint.  See id. at 84:5-7 (Court & Winter).

ARPA contended that the Court should dismiss the City of Raton's Count III because the City of Raton did not plead it with particularity, and because the City of Raton failed to give ARPA tort-claims notice.  See id. at 84:11-85:21 (Johnson & Court).  ARPA argued that, were the Court not to recognize the Colorado immunity statute, when there was "no question [that] the statute was not complied with," then it would encourage forum shopping.  Id. at 89:4-10 (Johnson).  The City of Raton argued that it was not required to plead with particularity its negligent misrepresentation claim, because it was based on contract, not in tort.  See id. at 93:8-96:2 (Court & Winter).  ARPA maintained that the City of Raton's negligent misrepresentation claim is a tort, rather than a breach-of-contract claim.  See id. at 102:6-12 (Johnson).

ARPA asserted that the Court should dismiss the City of Raton's Anti-Donation Clause claim because:

> [A]t this point no power has been sold, no price has been set, and, in fact, the plant is not yet complete, so what Raton is really seeking here is an advisory opinion about what might happen in the future if the power plant is completed and the . . . surplus

-7-

> power is sold at a given amount.  It's not entirely clear that that will ever happen.
> It is projected that may happen, and that was what was put out in disclosure
> documents, but it's not a certainty, and until that occurs, we're deal[ing] with a
> question that I would submit is not ripe.

Id. at 104:9-18 (Johnson).   ARPA contended that it was unclear whether the New Mexico

Constitution would apply to it, as a Colorado governmental entity.  See id. at 104:19-21 (Johnson).

The City of Raton conceded that it gave ARPA consideration for the agreement, and received

consideration in return: "Mutual covenants and conditions contained herein is the consideration

indicated.  There was no  monetary consideration. . . . [and] power at 5.5 cents."  Id. at 62:12-24

(Court & Winter).  The City of Raton countered that it is not alleging that ARPA's conduct may

violate the Anti-Donation Clause, but that the City of Raton's "donation" of overage power is an

impermissible donation to either another municipality or some third party.  Id. at 108:2-7 (Winter

& Court).  The City of Raton argued that, implicit in the rate-making structure, there will be below-

cost sale of excess energy, which did not exist before the implementation or completion of the

power-plant project, to third parties.  See id. at 112:12-15 (Winter).  The City of Raton asserted that

the seven municipalities involved with ARPA in the power project "are on line for every operational

cost ARPA creates, and one of the costs [that] ARPA has indicated will happen is that it will be

making sales to third parties at less than production."  Id. at 15-18 (Winter).  ARPA countered that

the plant-building project is being constructed to serve the needs for forty years and, to supply such

power in the future, it must anticipate growth and it must build greater capacity than its existing

need; because it knows it does not need all that power today, it looks for sources where it can recoup

some of those costs, and one of the ways it recoups its costs is in sales to third parties.  See id. at

118:17-119:1 (Johnson).

**LAW REGARDING TRANSFER OF VENUE**

28 U.S.C. § 1404 governs the transfer of venue.  That statute provides, in pertinent part:

"[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."  28

U.S.C. § 1404(a).  Section 1404(a) affords a district court broad discretion to adjudicate motions to

transfer based on a case-by-case review of convenience and fairness.  See Chrysler Credit Corp. v.

Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991).

> Among the factors [a district court] should consider is the plaintiff's choice of forum;
> the accessibility of witnesses and other sources of proof, including the availability
> of compulsory process to insure attendance of witnesses; the cost of making the
> necessary proof; questions as to the enforceability of a judgment if one is obtained;
> relative advantages and obstacles to a fair trial; difficulties that may arise from
> congested dockets; the possibility of the existence of questions arising in the area of
> conflict of laws; the advantage of having a local court determine questions of local
> law; and, all other considerations of a practical nature that make a trial easy,
> expeditious and economical.

Id. at 1516 (internal quotation marks omitted).  See Texas Gulf Sulfur v. Ritter, 371 F.2d 145, 147

(10th Cir. 1967)(stating the factors that courts consider in making a venue determination under §

1404(a)).

**LAW REGARDING ABSTENTION**

The Supreme Court of the United States has noted that "the power to stay proceedings is

incidental to the power inherent in every court to control the disposition of the causes on its docket

with economy of time and effort for itself, for counsel and for litigant."  Landis v. N. Am. Co., 299

U.S. 248, 254 (1936).  In Colorado River Conservation District v. United States, 424 U.S. 800

(1976), the Supreme Court held that the abstention doctrine empowers federal courts to decline to

exercise or to postpone the exercise of their jurisdiction in exceptional circumstances where a

parallel state-court proceeding is pending, and where permitting the state-court proceeding to

proceed would clearly serve an important countervailing interest. <u>See</u> 424 U.S. at 813.  "Abstention from the exercise of federal jurisdiction is the exception, not the rule." <u>Id.</u>

Abstention is appropriate where an action presents difficult questions of state law bearing on policy problems of substantial public import which transcend the result in the case before the court.  <u>See</u> <u>Colo. River Conservation Dist. v. United States</u>, 424 U.S. at 814 ("Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."); <u>La. Power and Light Co. v. City of Thibodaux</u>, 360 U.S. 25, 28-30 (1959)(holding that a federal action was properly stayed, pending the outcome of parallel state proceedings, where the action involved a matter of state policy – the scope of eminent domain powers of municipalities under state law); <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315, 316-35 (1943)(holding that federal proceedings should have been dismissed where the subject matter of the lawsuit in the federal district court involved the review of oil drilling permits by a state agency, because the state had established its own review system for the permits and a federal court ruling would have an impermissibly disruptive affect on state policy for management of the oil fields).

There is no precise rule for parallel proceedings in two federal district courts.  <u>See</u> <u>Colo. River Conservation Dist. v. United States</u>, 424 U.S. at 817 ("As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation.").  In <u>Colorado River Conservation District v. United States</u>, the Supreme Court identified several factors a court should consider in deciding whether to abstain from exercising jurisdiction over a case pending the resolution of a parallel proceeding, including: (i) whether either court has assumed jurisdiction over property; (ii) whether the federal forum is inconvenient; (iii) the avoidance of piecemeal litigation; (iv) the order in which the courts obtained jurisdiction and the

progress of the two cases; (v) which forum's substantive law governs the merits of the litigation; and (vi) the adequacy of the state forum to protect the rights of the parties.  See 424 U.S. at 819.  "No single factor is dispositive; '[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.'" Fox v. Maulding, 16 F.3d 1079, 1082 (10th Cir. 1994)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983)). The court's decision "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. at 16.

**LAW REGARDING RULE 12(b)(6)**
**OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, and view those allegations in the light most favorable to the non-moving party and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991). A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (internal citation omitted). "[T]he [United States Supreme] Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1967, 1969 (2007)). "The Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974.)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

In resolving a motion to dismiss brought under rule 12(b)(6), the court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1965 (internal quotation marks omitted).

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [Bell Atl. Corp. v. Twombly, 127 S Ct.] at 1974. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the

claim rests." [Bell Atl. Corp. v. Twombly, 127 S.Ct.] at 1965 n. 3.  See Airborne Beepers
& Video, Inc. v. AT & T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some
point the factual detail in a complaint may be so sketchy that the complaint does not provide
the type of notice of the claim to which the defendant is entitled under Rule 8.").  The
Twombly Court was particularly critical of complaints that "mentioned no specific time,
place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such
a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would
have little idea where to begin."  Id.

Robbins v. Oklahoma, 519 F.3d at 1248.  Complaints in § 1983 actions subject to qualified-

immunity defenses

> must allege facts sufficient to show (assuming they are true) that the defendants plausibly
> violated the [plaintiff's] constitutional rights, and that those rights were clearly established
> at the time.  This requires enough allegations to give the defendants notice of the theory
> under which their claim is made.
>
> * * * *
>
> [C]omplaints in § 1983 cases against individual government actors pose a greater likelihood
> of failures in notice and plausibility because they typically include complex claims against
> multiple defendants.  The Twombly standard may have greater bite in such contexts,
> appropriately reflecting the special interest in resolving the affirmative defense of qualified
> immunity at the earliest possible stage of a litigation. Without allegations sufficient to make
> clear the "grounds" on which the plaintiff is entitled to relief,  Twombly, 127 S. Ct. at 1965
> n. 3, it would be impossible for the court to perform its function of determining, at an early
> stage in the litigation, whether the asserted claim is clearly established.

Robbins v. Oklahoma, 519 F.3d at 1249 (internal quotation marks and citations omitted).

## LAW REGARDING RULE 9(b)
## OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 9(b) of the Federal Rules of Civil Procedure provides that: "In alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.

R. Civ. P. 9(b).  In light of the language of rule 9(b), a court must make at least two initial inquiries

regarding rule 9(b): first, to which specific causes of action does rule 9(b) apply; and second, what

degree of particularity should the law demand.

-13-

With respect to rule 9(b)'s scope, a court should require parties to plead a cause of action with particularity when that cause of action contains allegations grounded in fraud.  See 2 JAMES WM. MOORE, JEFFREY A. PARNESS, & JERRY SMITH, MOORE'S FEDERAL PRACTICE § 9.03(1)(d), at 9-20 (3d ed. 2008).  On the other hand, claims based on negligent or innocent misrepresentation, to the extent those claims do not require proof of fraud, may be pled in accordance with the more relaxed standards of rule 8(a).  J. MOORE, supra § 9.03(1)(d), at 9-21; Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104-05 (9th Cir. 2003)("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).").

The primary motives that animate rule 9(b) help illuminate the reason for limiting the rule's reach to claims grounded in fraud.  First, the requirement of pleading with particularity protects defendants' reputations from the harm attendant to accusations of fraud or dishonest conduct.  See Guidry v. Banks of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992)("[The particularity requirement] stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to defendant's reputations."); United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d 908, 921 (4th Cir. 2003)("Rule 9(b) protects defendants from harm to their goodwill and reputation.") (quotations and citations omitted).  Second, the requirement to plead with particularity puts defendants on notice of the allegedly fraudulent conduct so that they can formulate a defense.  See United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d at 921.  A related goal of 9(b) is to prevent plaintiffs from tagging on specious fraud claims to their pleadings in an attempt "to induce advantageous settlements or for other ulterior purposes."  Banker's Trust Co., v. Old Republic Insurance Co., 959 F.2d 677, 683 (7th Cir. 1992).

The United States Court of Appeals for the Tenth Circuit has fleshed out the components necessary to a successful 9(b) pleading.  In Sheldon v. Vermonty, 246 F.3d 682 (Table), 2000 WL

-14-

1774038 (10th Cir. December 4, 2000), the Tenth Circuit held that the plaintiff alleged with specific

particularity a violation of the Securities Exchange Act of 1934.  See 2000 WL 1774038 at *4.  The

Tenth Circuit concluded that the complaint

> adequately met Rule 9(b) requirements. First, as the district court acknowledged, the
> Complaint alleged misrepresentations with background information as to date,
> speaker, and the medium of communication. . . . Second, certain of the alleged
> misrepresentations involved profitable expectations arising from an unowned and
> inoperable meat-packing plant, a nonexistent lumber company, and fabricated
> contracts. Accepting Sheldon's allegations as true, these are patently false statements
> of present fact. The district court erred in determining they were mere conclusory
> allegations of falsity and in characterizing them as fraud by hindsight. . . . Third, the
> allegations of scienter were sufficient.  In securities fraud cases, although speculation
> and conclusory allegations will not suffice, great specificity is not required if the
> plaintiff alleges enough facts to support a strong inference of fraudulent intent.

Id. at * 5 (internal quotation marks and citations omitted).  "At a minimum, Rule 9(b) requires that

a plaintiff set forth the who, what, when, where and how of the alleged fraud."  United States ex rel.

Schwartz v. Coastal Healthcare Group, Inc., 232 F.3d 902 (Table), 2000 WL 1595976 at * 3 (10th

Cir. 2000)(unpublished opinion).  "To survive a motion to dismiss, an allegation of fraud must 'set

forth the time, place, and contents of the false representation, the identity of the party making the

false statements and the consequences thereof.'"  Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d

1039, 1047 (D.N.M. 2005)(Browning, J.)(quoting Schwartz v. Celestial Seasonings, Inc., 124 F.3d

1246, 1252 (10th Cir. 1997)).  "On the other hand, rule 9(b) does not require specific knowledge

regarding the defendant's state of mind."  Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d at 1047.

The federal courts have not fully agreed on proper pleading standard for negligent

misrepresentation. On the one hand, some courts have held that negligent misrepresentation must

be pled with particularity.  See Atlantic Richfield Co., v. Ramirez, 176 F.3d 481, 1999 WL 273241

*1 (9th Cir. 1999) (unpublished opinion); Aetna Casualty and Surety Co., v. Aniero Concrete Co.,

404 F.3d 566, 583 (2nd Cir. 2005 (per curiam); Miller v. Allstate Insurance Co., 489 F. Supp. 2d

1133, 1139 (N.D. Ca. 2007); Anderson v. USAA Casualty Insurance Co., 221 F.R.D. 250, 254 (stating that a failure to plead with particularity would be "fatal" to a negligent misrepresentation claim) (D.D.C. 2004). Others have rejected such a rule and found that the notice-pleading standard of rule 8(a) applies. See Tricontinental Industries, Ltd. v. PriceWaterhouseCoopers, LLP., 475 F.3d 824, 833 (7th Cir. 2007); Baltimore County v. Cigna Health Care, 238 Fed. Appx. 914, 921-22 (4th Cir. 2007 (7th Cir.).

The United States Court of Appeals for Fifth Circuit's stance is more subtle. On the one hand, the Fifth Circuit has applied with approval the pleading standard set forth in rule 8(a) to a claim of negligent misrepresentation. See Electric Capital Corp., v. Posey, 415 F.3d 391, 395-96 (5th Cir. 2005). On the other hand, the Fifth Circuit has held that the heightened standard of rule 9(b) applies to negligent misrepresentation claims that are based on the same set of facts. See Benchmark Electronics, Inc., v. J. M. Hubard Corp., 343 F.3d 719, 723 (5th Cir. 2003)("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims."). Thus, the Fifth Circuit applies the heightened standard when the "inadequate fraud claim is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim." American Realty Trust, Inc. v. Travelers Casualty and Surety Co. of America, 362 F. Supp. 2d 744, 749 (N.D. Tex. 2005).

The only case on point within the Tenth Circuit is Van Leeuwan v. Nuzzi, 810 F. Supp. 1120, 1123 (D. Colo. 1993), in which the court held that a plaintiff failed to plead negligent misrepresentation by not meeting the requirements of rule 9(b). See id. The United States District Court for the District of Colorado did not state a rationale for holding the way it did.

The Court determines that the heightened-pleading standard should not apply to negligent-misrepresentation claims.  Rule 9(b) is primarily designed to protect defendants from facing damaging fraud accusations that the facts do not support. In cases involving negligent misrepresentation or innocent mistake, the heightened standards do not further that purpose, but rather work against the general notion of notice pleading that applies in most cases.  See 2. MOORE, supra § 9.03(1)(d), at 9-21.

First, negligent misrepresentation is, as its name suggests, grounded in negligence rather than fraud.  See Sims v. Craig, 96 N.M. at 35, 627 P.2d at 877 ("The theory of liability for this tort [negligent misrepresentation] is one of negligence rather than of intent to mislead.");  Bloskas v. Murray, 646 P.2d 907, 914 (Colo. 1982)("The tort of negligent misrepresentation provides a remedy for false information negligently given a person who relies to his detriment thereon.")(internal quotation marks omitted).  Therefore, when persons or businesses are accused of negligent conduct, they do not face the same potential damage to their goodwill as when they face allegations of fraud.  Thus, since the tort is grounded in negligence, rule 9(b) should not govern its pleading standard.

Second, fraud includes elements that negligent misrepresentation does not.  Colorado and New Mexico require essentially the same elements to establish fraud.  In Cargill v. Sherrod, 96 N.M. 431, 631 P.2d 726, (1981), the Supreme Court of New Mexico stated: "Actionable fraud consists of misrepresentation of a fact, known to be untrue by the maker, and made with an intent to deceive and to induce the other party to act in reliance thereon to his detriment." Id. at 431, 631 P.2d at 727.  Similarly, the Supreme Court of Colorado has explained that:

> The constituents of fraud . . . consist of the following: (1) A false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or a concealment of a material existing fact, that in equity and good conscience should be disclosed. (2) Knowledge on the part of the one making the representation that it is false; or utter indifference to its

truth or falsity; or knowledge that he is concealing a material fact that in equity and good conscience he should disclose. (3) Ignorance on the part of the one to whom representations are made or from whom such fact is concealed, of the falsity of the representation or of the existence of the fact concealed. (4) The representation or concealment made or practiced with the intention that it shall be acted upon. (5) Action on the representation or concealment resulting in damage.

Morrison v. Goodspeed, 68 P.2d 458, 477-478 (Colo. 1937).  On the other hand, "[t]he tort of negligent misrepresentation provides a remedy for false information negligently given a person who relies to his detriment thereon." Bloskas v. Murray, 646 P.2d at 914 (internal quotation marks omitted)(emphasis added); See Sims v. Craig, 96 N.M. 33, 35, 627 P.2d 875, 877 (1981).

Notice pleading is sufficient for most elements, particularly the common elements. Rule 9(b) seeks to force the plaintiff to state with particularity what is unique about fraud – fraudulent conduct. Rule 9(b) requires the plaintiff to explain why the misrepresentation was intentional or reckless, and it does so, usually, by averring what the defendant knew when it made the misrepresentation. That allegation should be done with particularity. On the other hand, negligent misrepresentation is usually shown by establishing what the defendant should have known or did not do, not what it knew at the time. It is sufficient for the plaintiff to allege negligence – what the defendant did not do–generally.   That general allegation is sufficient for notice pleading of negligent misrepresentation.

Third, the Supreme Court has recently made the standards for dismissal under rule 12(b)(6) more rigorous. Notice pleading under Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1977 (2007), has real teeth. There is no sound reason to give corporate defendants accused of negligent misrepresentation more protection that doctors accused of malpractice or automobile operators of negligence. Bell Atlantic Corp. v. Twombly serves the purposes of pleading negligent misrepresentation as well as would rule 9(b).  Indeed, the Twombly rule is better, because there is

-18-

nothing served by creating a new exception to Twombly's general rule for a negligence tort unless there is some compelling reason to do so.  Not finding that compelling reason, the Court will decline to apply rule 9(b) to negligent misrepresentation claims, particularly those like New Mexico's and Colorado's, which are truly based on negligent conduct.

## LAW REGARDING GOVERNMENTAL IMMUNITY

A foreign jurisdiction is not compelled to follow the governmental immunity laws that protect a state-governmental entity in its own state.  See Franchise Tax Bd. of Cal. v. Hyatt, 538 U.S. 488 (2003)(holding that a forum is not required to extend sovereign immunity to other states sued in its courts, but should extend immunity under the principle of comity unless doing so would violate the forum's public policies); Nevada v. Hall, 440 U.S. 410, 424 (1979)(holding that the Full Faith and Credit clause does not require a forum to apply the sovereign immunity doctrine of another state, if such an application would violate the forum's  legitimate public policies).  On the other hand, New Mexico law has indicated it will extend immunity as a matter of comity if to do so would not violate the state's public policies.  Here, New Mexico has very similar tort-notice requirements as Colorado.

### 1.    New Mexico Law Regarding Governmental Immunity.

The Supreme Court of New Mexico has articulated a number of factors for a court to consider in deciding whether to apply immunity provisions of a foreign state, including:

> (1) whether the forum state would enjoy similar immunity under similar circumstances. . . (2) whether the state sued has or is likely to extend immunity to other states. . .  (3) whether the forum state has a strong interest in litigating the case. . . and (4) whether extending immunity would prevent forum shopping.

Sam v. Sam, 2006-NMSC-022, ¶ 22, 134 P.3d 761, 767.  The  New Mexico courts "likewise consider each of these factors when determining whether recognizing the sovereign immunity of a

sister state would be contrary to the public policy of New Mexico." Id., 134 P.3d at 767.

In Sam v. Sam, 2006-NMSC-022, 134 P.3d 761 (2006), the Supreme Court of New Mexico discussed the issue of "whether the New Mexico courts should apply Arizona's statute of limitations or extend New Mexico's statute of limitations to an Arizona public employee based on the principles of comity, not whether it is compelled to do so." Id. ¶ 20, 134 P.3d at 767. "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." Id. ¶ 19, 134 P.3d at 766. The Supreme Court of New Mexico noted that there are several factors that "assist in determining whether extending immunity through comity would violate the forum state's public policy." Id. ¶ 22, 134 P.3d at 767. These factors include:

> (1) whether the forum state would enjoy similar immunity under similar circumstances . . . (2) whether the state sued has or is likely to extend immunity to other states . . . (3) whether the forum state has a strong interest in litigating the case . . . and (4) whether extending immunity would prevent forum shopping . . . . We likewise consider each of these factors when determining whether recognizing the sovereign immunity of a sister state would be contrary to the public policy of New Mexico.

Id., 134 P.3d at 767. The Supreme Court of New Mexico stated that, although it was unclear whether Arizona courts would extend immunity to New Mexico, it believed that New Mexico has a interest in extending immunity by comity to "encourage Arizona to extend immunity to a New Mexico governmental entity in the future." Id. ¶ 24, 134 P.3d at 767.

N.M.S.A. 1978, § 41-4-16 provides:

> A. Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the county clerk of a county for claims against the county, or to the administrative head of any other local public body for claims against such local public body, within ninety days after an occurrence giving rise to a claim for which

-20-

immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

B. No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence. The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice by reason of injury.

N.M.S.A. 1978, § 41-4-16(A) & (B)(emphasis added).  "[D]efendants have the burden of proving that the notice requirement was not met." Dutton v. McKinley County Bd. of Com'rs, 113 N.M. 51, 53, 822 P.2d 1134, 1136 (Ct. App. 1991).  Under New Mexico law, mere awareness that an accident involving a state employee is insufficient to put a governmental entity on notice under N.M.S.A. 1978, § 41-4-16(A).  See Powell v. N.M. State Highway and Transp. Dep't, 117 N.M. 415, 419, 872 P.2d 388, 392 (Ct. App. 1994)(stating "where virtually every employee was aware of occurrence, but not of likelihood of litigation, such knowledge held insufficient to comply with notice requirement of Section 41-4-16" and "where both mayor and chief of police were aware of occurrence, but not that litigation might result, or that the plaintiff considered accident to be fault of the defendants, actual notice held not provided.")(citing Dutton v. McKinley County Bd. of Com'rs, 113 N.M. 51, 53, 822 P.2d 1134, 1136 (Ct. App. 1991) and Frappier v. Mergler, 107 N.M. 61, 65, 752 P.2d 253, 257 (1988)).  "Nor does actual notice under Section 41-4-16(B) require that the notice of a claim indicate that a lawsuit will in fact be filed against the state, but rather that the state must be given notice of a likelihood that litigation may ensue, in order to reasonably alert the state to the necessity of investigating the merits of the potential claim." Callaway v. N.M. Dep't of Corr.,  117 N.M. 637, 640, 875 P.2d 393, 396 (Ct. App. 1994).

2.      <u>**Colorado's Governmental Immunity Act**</u>.

Colorado's Governmental Immunity Act ("GIA"), Colo. Rev. Stat. § 24-10-109 provides:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

Colo. Rev. Stat. § 24-10-109(1).

The Colorado Governmental Immunity Act does not apply to breach-of-contract actions. In <u>Ebke v. Julesburg School Dist. No. RE-1, in Sedgwick County</u>, 550 P.2d 355 (Colo. Ct. App. 1976), the Court of Appeals of Colorado explained: "Thus, even though the contract in the case at bar is created by statute, the violation is a contractual one and not covered by the GIA.  Therefore, plaintiffs were not required to give the notice provided for in § 24-10-109, C.R.S.1973." 550 P.2d at 356.

The Colorado Governmental Immunity Act must be strictly construed, because it is in derogation of the common law.  See <u>Bertrand v. Bd. of County Com'rs of Park County</u>, 872 P.2d 223, 227 (Colo. 1994)(stating that "the immunity created by the GIA is in derogation of the common law . . . and must be strictly construed."); <u>City of Aspen v. Meserole</u>, 803 P.2d 950, 955 (Colo. 1990)("Because the Governmental Immunity Act is in derogation of the common law of Colorado, legislative grants of immunity must be strictly construed."); <u>Stephen v. City and County of Denver</u>, 659 P.2d 666, 668 (Colo. 1983)("Thus, the Colorado Governmental Immunity Act is in derogation of the common law, and the legislative grants of immunity must be strictly construed.").  The purpose of the GIA's notice provision is to "give the municipal authorities prompt notice of the need

-22-

to investigate the matter, to allow for immediate abatement of dangerous conditions, to foster prompt settlement of meritorious claims, as well as to allow a knowledgeable compliance with the statutory requirements for budgeting and tax levies."  State Personnel Bd. v. Lloyd, 752 P.2d 559, 564-65 (Colo. 1988).

### NEW MEXICO LAW REGARDING THE ANTI-DONATION CLAUSE OF THE NEW MEXICO CONSTITUTION

Article IX, Section 14 of the New Mexico Constitution provides:

Neither the state nor any county, school district or municipality, except as otherwise provided in this constitution, shall directly or indirectly lend or pledge its credit or make any donation to or in aid of any person, association or public or private corporation or in aid of any private enterprise for the construction of any railroad except as provided.

N.M. CONST. Art. IX, § 14.  "The Anti-Donation Clause . . . prohibits the use of state or local governmental funds to benefit private organizations."  H. Stratton & P. Farley, Office of the Attorney General, State of New Mexico, History, Powers & Responsibilities, 1846-1990 at 125 (Univ. of N.M. Printing Servs. 1990).   In the context of New Mexico's Anti-Donation Clause, the Supreme Court has explained that it "think[s] it fair to say from a review of the cases cited dealing with the term 'donation,' as found in this proviso of the Constitution, that the word has been applied, in its ordinary sense and meaning, as a 'gift,' an allocation or appropriation of something of value, without consideration to a 'person, association or public or private corporation.'" Village of Deming v. Hosdreg Co., 62 N.M. 18, 28, 303 P.2d 920, 926-27 (1956).

The Supreme Court of New Mexico has stricken transactions under the Anti-Donation Clause in circumstances involving an outright gift of money or property to a private entity with no exchange of adequate consideration.  See Chronis v. State ex rel. Rodriquez, 100 N.M. 342, 348, 670 P.2d 953, 959 (1983)(holding that a tax credit to liquor licensees against taxes owed to the state was

an unconstitutional subsidy of the liquor industry);  State ex rel. Mechem v. Hannah, 63 N.M. 110,

118, 314 P.2d 714, 720 (1957)(holding that an appropriation to pay state's share of emergency feed

certificates issued to livestock owners for the purchase of hay was an unconstitutional subsidy of

the livestock industry); Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462 (1940)(finding a statute

unconstitutional that authorized counties to issue bonds, repaid by taxes, to fund the building of

public auditoriums to be used by a private corporation during a celebration of the 400th anniversary

of Coronado's exploration).

       In City of Clovis v. Southwest Public Service Co., 49 N.M. 270, 161 P.2d 878 (1945), the

Supreme Court of New Mexico found that the Anti-Donation Clause did not prohibit a public entity

from selling a utility system to a company that sells electricity to third parties.  See 49 N.M. at 275,

161 P.2d at 881.  The Supreme Court of New Mexico held that the agreement of a company to pay

to the City of Clovis $130,000.00 in twenty-four annual payments as part of its purchase of Clovis'

light-and-water system was not "the lending or pledging of credit of the City of Clovis to any person

for the benefit of the . . . Company, within the constitutional prohibition."  Id. at 275, 161 P.2d at

881.  There was no lending or pledging of credit, because "[t]he debts and liabilities of the City, and

the burden on its taxpayers, were not increased."  Id. at 275, 161 P.2d at 881.  The Supreme Court

of New Mexico explained:

> Nothing in this phase of the transaction possessed any element of guaranty,
> suretyship or pledge by the City of Clovis whereby the City became liable to do or
> perform any act or thing, or to incur any obligation, or pay any sum of money, in
> behalf of, or for the benefit  of, the utility company, or to be come liable for, or
> assure the performance of, any obligation, or the discharge of any liability of the
> utility to any third person.

Id. at 275-76, 161 P.2d at 881.  The Supreme Court of New Mexico held that "[t]he most that [the

City of Clovis] did was to give time to the [Company] for the payment of an obligation owed by the

. . .  Company to the City of Clovis for part of the purchase price for the light and water system."
Id. at 276, 161 P.2d at 881.  The Supreme Court of New Mexico found that this was "an entirely
different matter" from Clovis lending or pledging its credit, because giving time for the payment of
the purchase price did not create any liability whereby Clovis "was liable to be called upon to
discharge any direct, indirect or contingent, liability whatsoever."  Id. at 276, 161 P.2d at 881.  Thus,
"[c]onstitutional provisions prohibiting a municipality from making donations or lending its credit
to, or subscribing to the stock of, private corporations do not operate to forbid a municipality to
construct, own, sell, or lease a public utility."  Id. at 283, 1621 P.2d at 886 (internal quotation marks
omitted).

The Supreme Court noted that the purpose of the  Anti-Donation Clause is "a constitutional
limitation" and to correct "evils."  Id. at 276, 161 P.2d at 881.  The Supreme Court stated:

> The significance of the inhibition is found in the evil which it was intended to
> remedy. The demand for improved transportation facilities had developed a mania
> for extending public aid to private corporations. In order to aid in the construction
> of railroads, municipalities were subscribing for stock, issuing negotiable bonds as
> a means of paying the subscriptions, and taxing the inhabitants or the property within
> their limits to pay the indebtedness thereby incurred. While in specific cases it might
> be successfully contended that the public good will be served if the city can aid in
> the extension or improvement of transportation facilities, the poisonous by-products
> of such partnership arrangements have in the past far outweighed the temporary
> benefits.

Id. at 276, 161 P.2d at 881-82 (internal quotation marks omitted).  The Supreme Court of New
Mexico distinguished the agreement of the company to pay Clovis $130,000.00 in annual
installments, because the agreement did not "place any burden or charge against any of the revenues
of the City, current or otherwise, and did not bring about any liability of the citizens of the City for
the levy of any taxes, or bring about any burden of any kind whatsoever upon the City of Clovis or
its citizens, and, therefore, does not come within the purpose of the constitutional inhibition."  Id.

at 276-77, 161 P.2d at 881.  See Chronis v. State ex rel. Rodriguez, 100 N.M. 342, 347-48, 670 P.2d 953, 958-59 (1983)(holding that legislative diminishment of tax obligation constituted an unconstitutional subsidy to the liquor industry in violation of the Anti-Donation Clause).

Likewise, the Attorney General of New Mexico has concluded that, so long as the governmental entity receives valuable consideration in return for its money, there is not a violation of the Anti-Donation Clause.  The Attorney General has identified two components prohibited by the Anti-Donation Clause: (i) "the state may not make any donation to or in aid of any private corporation;" and (ii) the state is prohibited against "lending or pledging of the state's or municipality's credit."  N.M. Attorney General Opinion No. 85-27 at 3, 1985 WL 204889 (October 22, 1985).  In its Opinion No. 02-02, the Attorney General of New Mexico concluded that there was no violation of the Anti-Donation Clause where Rio Rancho, a municipality,"clearly receiv[ed] valuable consideration in return for its money," because the agreement it had with the private entity stated that the entity agreed to "dedicate and convey the public infrastructure and the land associated therewith to the City upon completion of the public infrastructure improvements."  N.M. Attorney General Opinion No. 02-02 at 4, 2002 WL 1477799 (June 13, 2002).  Under those circumstances, Rio Rancho could reimburse a developer without violating the Anti-Donation Clause.  See id.

In 1992, the Attorney General concluded that the New Mexico Legislature could provide news media space in the State Capitol Building without charge, and provide free space in public buildings for newspaper vending machines and similar devices, without violating the Anti-Donation Clause.  See N.M. Attorney General Opinion No. 92-03 at 1, 1992 WL 528475 (May 5, 1992). The Attorney General reasoned that, because the New Mexico Constitution requires legislative sessions to be open to the public, the Legislature provided direct public access and indirect access via the news media.  See id. at 2.  The Attorney General noted that the "conclusion is different, however,

as to the year-round occupancy of office space in the building by newspapers, television stations or other media entities." Id.  "By providing a news entity with permanent Capitol space at no charge, the state would violate the antidonation clause because it would bestow a valuable benefit on a private entity without receiving the countervailing benefit of obtaining public access to legislative sessions."  Id.  The Attorney General found that the Legislature should receive rent or other consideration in return for providing permanent space to the media without charge.  See id.; N.M. Attorney General Opinion No. 90-13 at 1, 1990 WL 509583 (May 8, 1990)(finding that the Department of Public Safety could not provide use of its dormitory and meals to a Boy Scouts of America troop at a substantially reduced cost because the proposed reduction would be a violation of the Anti-Donation Clause that is applicable to both for-profit and non-profit corporations).

### NEW MEXICO LAW REGARDING NEGLIGENT MISREPRESENTATION

The Supreme Court of New Mexico stated in Ledbetter v. Webb, 103 N.M. 597, 711 P.2d 874 (1985), that "[n]egligent misrepresentation is not, of course, a lesser included cause of action within a claim for deceit or fraud."  103 N.M. at 602, 711 P.2d at 879 (internal quotation marks omitted).  The Supreme Court noted in Ledbetter v. Webb that, "negligent misrepresentation differs from [the] tort of deceit in [the] that basis for liability in [the] latter is intent to mislead," and that in Sims v. Craig, 96 N.M. 33, 627 P.2d 87 (1981), the Supreme Court explained that "[a]n action for misrepresentation differs from the tort of deceit wherein plaintiff must prove intent on the part of the defendant to mislead or defraud."  Sims v. Craig, 96 N.M. at 35, 627 P.2d at 877.  "The theory of liability for this tort[, negligent misrepresentation,] is one of negligence rather than of intent to mislead."  Sims v. Craig, 96 N.M. at 35, 627 P.2d at 877.  The tort of negligent misrepresentation is available to a plaintiff that "'cannot or does not wish to rescind, and cannot meet the proof required for the tort of fraud or deceit (as a) . . . remedy for damages caused by misrepresentation

short of fraud.'"  <u>Sims v. Craig</u>, 96 N.M. at 35, 627 P.2d at 879 (quoting <u>Maxey v. Quintana</u>, 84

N.M. 38, 41, 499 P.2d 356, 359 (Ct. App. 1972)).  <u>See</u> <u>Sims v. Craig</u>, 96 N.M. at 35, 627 P.2d at 879

(holding that the plaintiff could bring an action for negligent misrepresentation although the plaintiff

could not sue on the contract because the contract was void).

**ANALYSIS**

The Court does not believe that transfer of venue to the United States District Court for the

District of Colorado is appropriate under 28 U.S.C. § 1404(a).  The Court will also not abstain from

deciding this case.  The Court will permit ARPA to withdraw its motion to dismiss Count I of the

City of Raton's Complaint.  Count III of the City of Raton's Complaint, for negligent

misrepresentation, fails to state a claim, because New Mexico courts would likely extend immunity

to ARPA under the principle of comity.  Count V of the City of Raton's Complaint, for violation of

the Anti-Donation Clause of the New Mexico Constitution, fails to state a claim, because the City

of Raton is not gifting electricity to third parties to whom ARPA sells energy.

I.     **TRANSFER OF VENUE UNDER 28 U.S.C. § 1404(a) IS NOT APPROPRIATE.**

ARPA argues that the Court should transfer venue to the United States District Court for the

District of Colorado under 28 U.S.C. § 1404(a).  An application of the factors that the Tenth Circuit

identified in <u>Chrysler Credit Corp. v. County Chrysler, Inc.</u> and in <u>Texas Gulf Sulphur v. Rutter</u>

demonstrates that this action should remain in New Mexico.  Judge Kane noted in his Order granting

ARPA's motion to dismiss:

> The New Mexico action is, therefore, a better and more effective forum for fully
> resolving the controversy between the parties . . . .  In addition, I find that the public
> intent of the citizens and governmental agencies of New Mexico in this dispute, on
> balance outweighs that of the citizens and governmental agencies of Colorado.

Kane Order at 3.

While the Court is not prepared to go so far as to say that New Mexico will be a better or more effective forum than Colorado for resolving the controversy, the Court need not make that finding.  The Court believes that New Mexico is as good a forum.  Moreover, the Court believes that the factors, on balance, favor the Court keeping the case.

The Court believes that the focus of the lawsuit appears to be on the acts done in New Mexico and on the impact of those acts on New Mexico residents.  The parties do not have a good sense, at this time, who will be witnesses in this case.  Accordingly, the Court does not know what witnesses will appear, or where those witnesses will be residents.  The Court will, therefore, deny the motion to transfer without prejudice to ARPA renewing if, later on in the litigation, it appears that most of the witnesses will be coming from Colorado, are beyond the Court's subpoena power, or some other future ocurrence not obvious today makes transfer of the case advisable.

## II.    THE COURT WILL NOT ABSTAIN FROM DECIDING THIS CASE.

The Supreme Court of the United States has set forth factors for the Court to consider when determining whether to abstain from deciding a case.  These factors are:

> (i) whether either court has assumed jurisdiction over property; (ii) whether the federal forum is inconvenient; (iii) the avoidance of piecemeal litigation; (iv) the order in which the courts obtained jurisdiction and the progress of the two cases; (v) which forum's substantive law governs the merits of the litigation; and (vi) the adequacy of the state forum to protect the rights of the parties.

See Colo. River Conservation Dist. v. United States, 424 U.S. at 819.  The Court must be mindful, however, that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."

Colo. River Conservation Dist. v. United States, 424 U.S. at 813.

### A.    WHETHER EITHER COURT HAS ASSUMED JURISDICTION OVER THE PROPERTY.

The parties agree that this factor is not relevant here, because the action does not involve

jurisdiction over property.  See Motion at 12; Response at 7.

### B.   WHETHER THE FEDERAL FORUM IS INCONVENIENT.

ARPA contends that New Mexico is an inconvenient forum, because "the vast majority of witnesses are located in Colorado."  Motion at 12.  ARPA argues that it is a Colorado municipal entity, and the Organic Contract and Power Sales Agreement were intended to be governed by Colorado law.  See id.  Indeed, the City of Raton "does not dispute that this matter has some contact with Colorado."  Response at 7.  On the other hand, the City of Raton contends that there are more significant contacts with New Mexico.  See id. at 7-8.  It argues that "[t]he majority of the relevant events and communications underlying the dispute occurred in New Mexico."  Id. at 8.  The City of Raton contends that "many, if not a majority, of witnesses reside in New Mexico."  Id.

The parties do not appear to have a good sense, at this time, of what witnesses will be called in the case, so it is difficult for the Court to assess the inconvenience of the parties in securing witnesses.  At this time, it is unclear whether the parties will have problems bringing witnesses to trial.  Although it will take hours to drive from Denver to Albuquerque, the Court does not believe that the convenience of the parties is the overriding factor in this case -- especially when it is not clear that there will be any problems with securing witnesses for the trial.

### C.   THE AVOIDANCE OF PIECEMEAL LITIGATION.

ARPA argues that resolution of the parties' issues in the Colorado lawsuit "would obviate the need to consider the claims asserted in this action."  Motion at 13.  ARPA asserts that, "to the extent the City of Raton has additional claims in this action, any such claims may be asserted in the pending Colorado action as counterclaims or affirmative defenses, thereby eliminating the concern over duplicative or piecemeal litigation."  Id.

Judge Kane has dismissed the Colorado action because he found that the action in Colorado

> would not settle the controversy between the parties and that the New Mexico action
> provides a better opportunity for a complete and efficient resolution of the parties'
> dispute.  In addition, [he found] that the public interest of the citizens and the
> governmental agencies of New Mexico in [that] dispute, on balance, outweighed that
> of the citizens and governmental agencies of Colorado.

Kane Order at 3.  Because Judge Kane dismissed the Colorado action, this factor appears to be

inapplicable, or favors the Court exercising its jurisdiction over this lawsuit, because the only

pending action at this time is in the District of New Mexico.

### D.   THE ORDER IN WHICH THE COURTS OBTAINED JURISDICTION AND THE PROGRESS OF THE TWO CASES.

This Court obtained jurisdiction over this case before the lawsuit was filed in the District of

Colorado.  See Motion at 13 ("It is undisputed that the instant case was filed two days before the

Colorado Lawsuit."); Response at 8 (stating that "the City filed this action before ARPA filed its

declaratory-judgment action.").  ARPA contends that this factor favors absention, because "[b]oth

the Colorado Lawsuit and the instant lawsuit are in their early phases and neither has progressed

significantly more than the other."  Motion at 13-14.  ARPA argues that "'simply because a court

is the first to obtain jurisdiction does not necessarily mean that it should decide the merits of the

case.'"  Motion at 13 (quoting Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1164 (10th

Cir. 1982)).  ARPA contends that it served its Complaint for the Colorado action before the City of

Raton served its complaint in the District of New Mexico.  See Motion at 13.  Nevertheless, this

factor favors the Court exercising jurisdiction over this case, because the City of Raton selected the

District of New Mexico before ARPA filed its lawsuit in Colorado.

### E.   WHICH FORUM'S SUBSTANTIVE LAW GOVERNS THE MERITS OF THE LITIGATION.

ARPA contends that Colorado substantive law will govern this dispute.  See Motion at 14.

It contends that the Organic Contract and the Power Sales Agreement were "intended to be governed

-31-

by Colorado law." Id.  City of Raton notes, however, that "the Organic Contract does not contain a choice-of-law provision selecting Colorado law, making it unclear that Colorado in fact applies." Response at 11.  The City of Raton also notes that it has asserted claims under New Mexico law. See id.  The City of Raton argues "[b]ecause issues of New Mexico law predominate, the fact that matters governed by Colorado law may also be at issue does not warrant abstention." Id. at 11-12.

ARPA conceded at the hearing, that it had not briefed or throughly researched the choice-of-law issue.  See Tr. at 37:6-9 (Johnson).  It is not clear if this dispute will all be governed by Colorado law.  Because it is not clear that Colorado law will govern this action, this factor is neutral or favors the Court's exercise of jurisdiction over this matter.

### F.    THE ADEQUACY OF THE STATE FORUM TO PROTECT THE RIGHTS OF THE PARTIES.

The Court is not convinced that New Mexico is necessarily a better and more effective forum for resolving the controversy between the parties.  It is also unclear that Colorado is a better or more effective forum than New Mexico.  The Court notes that Judge Kane found that  "the public interest of the citizens and governmental agencies of New Mexico . . . on balance, outweighs that of the citizens and governmental agencies of Colorado."  Kane Order at 3.  Although the Court is not prepared to adopt the breadth of Judge Kane's findings, it also believes that this factor does not favor abstention.  The public interest is difficult to evaluate.  Although New Mexico's public interest may outweigh Colorado's public interest on some claims, it may be that, as this case evolves, this factor will change.  The Court agrees that New Mexico's public interest outweighs Colorado's public interest on the Anti-Donation Clause claim and the Declaratory Judgment Claim under the New Mexico Joint Powers Agreement Act.  It is unclear that Colorado's public interest is less than New Mexico's public interest on other claims.

On balance, the Court believes that the factors favor the Court exercising jurisdiction over this case, at least for the present time.  The City of Raton chose this forum, and the district court in the District of Colorado dismissed the Colorado action.  Judge Kane's dismissal is a significant factor, and the Court will give weight to it.  The Court also believes that there is a significant impact on New Mexico because the City of Raton is located in New Mexico.  Finally, the focus of the lawsuit appears to be what was done in New Mexico, the impact on New Mexico residents, and the representations made to a New Mexico municipality.

Thus, the Court will not abstain from deciding this case.  At this time, the factors do not override the City of Raton's choice of forum and the significant public interest that New Mexico retains in the case because one of the parties is from the State of New Mexico.  Moreover, there is no longer a pending case in Colorado to which the Court should defer.

**III.   THE COURT WILL ALLOW ARPA TO WITHDRAW ITS MOTION TO DISMISS COUNT I OF THE CITY OF RATON'S COMPLAINT.**

ARPA withdrew its motion to dismiss Count I of the City of Raton's Complaint, because of the likelihood that the arguments involve disputed issues of fact.  See Tr. at 83:23-84:4 (Johnson).  The City of Raton did not object to ARPA's withdrawal of its 12(b)(6) motion on Count I of the Complaint. See id. at 84:5-7 (Court & Winter).  The Court will thus permit ARPA to withdraw its motion on Count I of the Complaint.

**IV.   THE CITY OF RATON'S CLAIM FOR NEGLIGENT MISREPRESENTATION (COUNT III) FAILS TO STATE A CLAIM FOR WHICH THE COURT MAY GRANT RELIEF.**

ARPA has argued that the Court should dismiss the City of Raton's negligent misrepresentation claim because it is not plead with particularity as rule 9(b) requires and because Colorado's Government Immunity Act bars the claim. The City of Raton's claim for negligent

misrepresentation is a tort claim.  Because it is not a claim for fraud, rule 9(b) does not impose heightened pleading requirements.

Although ARPA had actual notice of the City of Raton's claim against it and that notice is likely to be sufficient under N.M.S.A. 1978, § 41-4-16(A) and (B), the Court believes that New Mexico courts would extend governmental immunity to ARPA under the principle of comity.  Under Colorado governmental immunity law, the City of Raton failed to give adequate, formal notice. Because the City of Raton's notice to ARPA was insufficient under Colorado governmental immunity law, and because the City of Raton's negligent misrepresentation claim is not for breach of contract, the City of Raton fails to state a claim in Count III of its Complaint.

### A.   COUNT III OF THE CITY OF RATON'S COMPLAINT IS NOT A BREACH-OF-CONTRACT CLAIM AND IS NOT A CLAIM OF FRAUD.

Count III of the City of Raton's Complaint is a claim for negligent misrepresentation.  <u>See</u> Complaint  ¶¶ 77-84, at 12-13.  The City of Raton alleges that ARPA "made misrepresentations concerning the costs of the Project, the progress of the Project, its economic feasibility, and its superiority to other alternatives available to the City and Member Municipalities for acquiring power."  <u>Id.</u> ¶ 78, at 12.  The City of Raton further alleges that it "has suffered damages as a proximate result of its reliance on ARPA's misrepresentations and/or failures to disclose."  <u>Id.</u> ¶ 84, at 13.  At the May 2, 2008 hearing, the City of Raton stated that its "original draft had a fraud count in it and [it] took it out."  Tr. at 93:15-16 (Winter).  The City of Raton requested that it did not take out the fraud count because of the tort notice issue; rather, it took out the fraud claim because the claim "is simply seeking a recission of the contract."  <u>Id.</u> at 93:17-25 (Court & Winter).

Under New Mexico law, a claim for negligent misrepresentation does not sound in fraud. <u>See</u> <u>Ledbetter v. Webb</u>, 103 N.M. at 602 711 P.2d at 879 (internal quotation marks omitted)(stating

that "[n]egligent misrepresentation is not, of course, a lesser included cause of action within a claim for deceit or fraud."). A claim for negligent misrepresentation is a tort, and not a contractual claim. See Sims v. Craig, 96 N.M. at 35, 627 P.2d at 877 ("The theory of liability for this tort[, negligent misrepresentation,] is one of negligence rather than of intent to mislead."). Negligent misrepresentation is available to a plaintiff who is "so circumstanced that he cannot or does not wish to rescind, and cannot meet the proof required for the tort of fraud or deceit (as a) ... remedy for damages caused by a misrepresentation short of fraud." Id. (internal quotation marks omitted). Moreover, because the City of Raton's claim is not a "lesser included cause of action within a claim for fraud or deceit," it does not have to be pled with specificity under rule 9(b). See Fed. R. Civ. P. 9(b)("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). The City of Raton's negligent misrepresentation claim thus appears to be, from the face of its Complaint, a tort claim.

### B.   NEW MEXICO WOULD LIKELY EXTEND GOVERNMENTAL IMMUNITY TO ARPA.

A foreign jurisdiction is not compelled to follow the governmental immunity laws that protect a municipal corporation in its own state. In Franchise Tax Board of California v. Hyatt, the Supreme Court held that a forum is not required to give full faith and credit to a sister state's sovereign immunity statutes when that sister state is sued in the forum's courts, although it may do so as a matter of comity. The Supreme Court of New Mexico has articulated a number of factors for a court to consider in deciding whether to apply immunity provisions of a foreign state, including: "(1) whether the forum state would enjoy similar immunity under similar circumstances. . . (2) whether the state sued has or is likely to extend immunity to other states. . .  (3) whether the

forum state has a strong interest in litigating the case. . . and (4) whether extending immunity would prevent forum shopping." <u>Sam v. Sam</u>, 2006-NMSC-022, ¶ 22, 134 P.3d at 767.

      **1.**    <u>**Whether New Mexico Would Enjoy Similar Immunity as Colorado Under Similar Circumstances.**</u>

The City of Raton contends that New Mexico's Tort Claims Act notice requirement is different than the notice requirement in Colorado.  The City of Raton also argues that, because ARPA had actual notice of the City of Raton's intention to file this lawsuit, it would not enjoy immunity if N.M.S.A. 1978, § 41-4-16(B) were applied.

The notice requirement of the Colorado GIA provides:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, <u>shall file a written notice</u> as provided in this section within one hundred eighty days after the date of the discovery of the injury, <u>regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.  Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.</u>

Colo.Rev.Stat. § 24-10-109(1)(emphasis added).  ARPA contends that the City of Raton never provided it with the notice required under the Colorado GIA.  <u>See</u> Motion at 21; Brunelli Aff. ¶¶ 23, 24 at 7-8.  Moreover, the City of Raton does not plead, in its Count III, that it provided ARPA with actual notice of its intent to sue ARPA.

The City of Raton argues that ARPA knew that the City of Raton "was likely to initiate litigation as early as December 12, 2007."  Response at 20 (citing Motion at 6).  The City of Raton asserts that "[t]he purposes behind the [GIA] have therefore been satisfied."  Response at 20.  ARPA states in its motion that, "[o]n or about December 12, 2007, [it] learned that the City of Raton City Commission and the City of Raton Public Service Board met in executive session to discuss the possibility of litigation against the Authority over the increased cost of the Repowering Project."

Motion at 7.

In Colorado, negligent misrepresentation sounds in tort.  Thus under Colorado law, the GIA applies to its claim in Count III of its Complaint.  See Patzer v. City of Loveland, 80 P.3d 908, 912 (Colo. App. 2003)("[I]f we assume plaintiffs stated a claim for negligent misrepresentation. . . such a claim would sound in tort and is thus barred by the GIA because it does not fall within one of the statutory provisions waiving a public entity's immunity from suit.")(citations omitted)(emphasis added); Ebke v. Julesburg Sch. Dist. No. RE-1, in Sedgwick County, 550 P.2d at 356 (stating that the GIA does not apply to contractual claims and thus plaintiffs are not required to provide notice under the GIA for breach-of-contract claims).

The Supreme Court of New Mexico in Ledbetter v. Webb labeled the cause of action of negligent misrepresentation a tort, and to the extent the cause of action arose in New Mexico, New Mexico's characterization of its tort should control.  See Valencia v. Colorado Casualty Insurance Co., 560 F. Supp. 2d 1080, 1085 (D. N.M. 2007)("In determining which jurisdiction's law should apply to a tort action, New Mexico courts follow the doctrine of lex loci delicti commissi – that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred.")(quoting Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 12, 140 N.M. 293, 142 P.3d 374, 377). Moreover, other jurisdictions have labeled the cause of action as one in tort and not in contract.

There are also good reasons to find that the Colorado courts would draw a distinction between contract claims and negligent misrepresentation claims under the GIA.  While GIA's express language does not specifically except contract claims from the GIA's notice requirements, it is understandable why Colorado courts would allow contract claims against the state.  Few people might be willing to contract with the state if they knew there was no remedy for breach of contract,

and the state arguably waives sovereign immunity when it affirmatively contracts with another party. On the other hand, Colorado might be reluctant to treat negligent misrepresentation claims the same way.  Oral contracts against a state entity are rarely enforced.  New Mexico, for example, has an elaborate system in place to ensure that public contracts are written, after requiring multiple signatures and elaborate checks.  Allowing oral contracts and negligent misrepresentation claims against the state might be too great of a risk to the public fisc.

Under the Colorado GIA, the City of Raton was required to file a written notice within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.  Colo.Rev.Stat. § 24-10-109(1).  In full,  § 24–10–109(1) states:

> Any person claiming to have suffered an injury by a public entity . . . shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.

Moreover, courts in Colorado have interpreted the statute strictly, so that a government entity's actual notice of a claim does not vitiate the notification requirement.  See Stone Environmental Engineering Services, Inc. v. Colorado Dept. of Health, 762 P.2d 737, 740 (Co. App. 1988)("Actual knowledge by the governmental entity of the incidents giving rise to a claim, or knowledge of the claim itself, does not constitute substantial compliance with the notice of claim requirement and does not relieve a plaintiff of his duty to provide formal notice."). The City of Raton did not provide the written notice of its claim to ARPA as the GIA requires.

Under the New Mexico notice provision, a tort victim must provide notice of its intent to sue the public tortfeasor within ninety days of its injury, see N.M.S.A. 1978, § 41-4-16(A), unless the public tortfeasor had "actual notice of the occurrence,"  N.M.S.A. 1978, § 41-4-16(B)(emphasis

added).[2]

"[D]efendants have the burden of proving that the notice requirement was not met."  Dutton v. McKinley County Bd. of Com'rs, 113 N.M. at 53, 822 P.2d at 1136.  Awareness that an accident involved a state employee is insufficient to put a governmental entity on notice under the Tort Claims Act.  See Powell v. N.M. State Highway and Transp. Dep't, 117 N.M. at 419, 872 P.2d at 392 (stating "where virtually every employee was aware of occurrence, but not of likelihood of litigation, such knowledge held insufficient to comply with notice requirement of Section 41-4-16" and "where both mayor and chief of police were aware of occurrence, but not that litigation might result, or that the plaintiff considered accident to be fault of the defendants, actual notice held not provided.").  "[A]ctual notice under Section 41-4-16(B) [does not] require that the notice of a claim indicate that a lawsuit will in fact be filed against the state, but rather that the state must be given notice of a likelihood that litigation may ensue, in order to reasonably alert the state to the necessity of investigating the merits of the potential claim."  Callaway v. N.M. Dep't of Corr., 117 N.M. at 640, 875 P.2d at 396.

ARPA's concession regarding its knowledge of the City of Raton's potential suit demonstrates that it may have had actual notice under New Mexico law.  See Motion at 7 (stating that, "[o]n or about December 12, 2007, [it] learned that the Raton City Commission and the Raton

_____

[2]   The Supreme Court of New Mexico has not adopted a literal interpretation of "occurrence," as it appears in Section 41-4-16(B).  Instead, the Supreme Court interprets the language as being concerned with notice of the likelihood of a lawsuit arising out of the occurrence. See Marrujo v. New Mexico State Highway Transportation Dept., 118 N.M. 753, 761, 887 P.2d 747, 756 (1994)("Mere notice of an accident will not necessarily put the government entity on notice that it may become the defendant in a lawsuit.") (citations omitted); New Mexico State Highway Commission v. Ferguson, 98 N.M. 680, 682, 652 P.2d 230, 232 (1982) ("The purpose of the notice provisions of the Tort Claims Act is to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit. . . .  We will construe a statute to give it its intended effect.")(citations omitted).

-39-

Public Service Board met in executive session to discuss the possibility of litigation against the Authority over the increased cost of the Repowering Project.").   ARPA knew that there was a possibility the City of Raton was going to litigate against it regarding the increased cost of the Repowering Project.  See Motion at 7.  Thus, ARPA had sufficient information to alert it to the necessity of investigating the merits of the City of Raton's potential claim.  Under New Mexico law, because ARPA had actual notice, the City of Raton might have been excused from providing written notice to ARPA of its claim.

"Compliance with [GIA's notice requirements] shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action."  Colo. Rev. Stat. § 24-10-109(1).  ARPA might have had sufficient notice under New Mexico law.  ARPA's concession that it had knowledge of the City of Raton's potential suit suggests such a finding, because New Mexico's notice requirement can be met when the state or state entity has actual notice of a potential suit.  See New Mexico State Highway Commission v. Ferguson,  98 N.M. 680, 682, 652 P.2d 230, 232 (1982) ("The purpose of the notice provisions of the Tort Claims Act is to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit. . . .  We will construe a statute to give it its intended effect.")(citations omitted).  At the same time, the notice to ARPA under Colorado law would be insufficient. ARPA enjoys immunity under Colorado law, while under New Mexico law, the City of Raton's notice to ARPA would likely have been sufficient.  Nevertheless, both New Mexico and Colorado enjoy similar immunity under similar circumstances, although not under exactly the same circumstances.  While the immunity statutes in both states are not identical, they are similar, aiming at protecting the state's treasury from similar claims without full notice to investigate before suit.  Moreover, while the exact circumstances here might result in different immunities in the two states, similar circumstances

should produce similar results in most cases.

   **2.**   <u>Whether the State Sued Has or is Likely to Extend Immunity to Other States.</u>

   ARPA acknowledges that "it is unclear whether Colorado would apply New Mexico's immunity statute." Motion at 22; Response at 21.  The Court believes, however, that New Mexico would likely extend immunity and apply Colorado's GIA statute.  New Mexico "has an interest in according immunity by comity in this instance in order to encourage [Colorado] to extend immunity to a New Mexico governmental entity in the future." <u>Sam v. Sam</u>, 2006-NMSC-022, ¶ 24, 134 P.3d at 767.

   There is no indication that New Mexico would not extend comity in this situation.  Indeed, the case law indicates that New Mexico would extend immunity under comity in this case.  The Supreme Court of New Mexico has stated that it would refuse to extend immunity only if doing so would "offend a sufficiently strong public policy." <u>Sam v. Sam</u>, 2006-NMSC-022, ¶ 21, 134 P.3d at 767.  Indeed, in <u>Sam v. Sam</u>, which deals with the question of recognizing a neighboring state's sovereign immunity, the Supreme Court relied on a case dealing with whether New Mexico would recognize, under the principle of comity, an uncle-niece marriage[3] entered into in Costa Rica. <u>See id</u>. 2006-NMSC-022, ¶¶ 19- 21, 134 P.3d at 766-677 (relying on <u>Leszinske v. Poole</u>, 110 N.M. 663, 668, 798 P.2d 1049, 1054 (N.M. App. 1990).  Although the marriage "undoubtedly offended the public policy of New Mexico to some degree," it did not do so sufficiently to prevent the court from recognizing the Costa Rican marriage under comity. <u>Sam v. Sam</u>, 2006-NMSC-022, ¶¶ 19- 21, 134 P.3d at 766-67.  Although <u>Leszinske v. Poole</u> did not deal with sovereign immunity, the Supreme

---

   [3] The uncle-niece couple went to Costa Rica specifically to obtain a valid marriage, which was not available to them in New Mexico. <u>See</u> <u>Leszinske v. Poole</u>, 110 N.M. 663, 668, 798 P.2d 1049, 1054 (N.M. App. 1990).

Court in <u>Sam v. Sam</u> believed that <u>Leszinske v. Poole</u> appropriately illustrated the high value New Mexico places on comity.[4]   If New Mexico is willing to go to such lengths,  in the name of comity, that it will even recognize legal rights that "offend the public policy of New Mexico to some degree," it is not likely to refuse to grant immunity in this case, where New Mexico and Colorado have similar sovereign immunity statutes that further the same policy goals.

The Court recognizes that in <u>Sam v. Sam</u>, the Supreme Court of New Mexico recognized Arizona's sovereign immunity, but not on terms completely consistent with Arizona's law.  <u>See Sam v. Sam</u>, 2006-NMSC-022, ¶ 27, 134 P.3d at 768.  Arizona had a one-year statute of limitations for tort claims, while New Mexico allowed two years, and the Supreme Court of New Mexico decided to apply its own two-year statute of limitations on policy grounds.  <u>See id.</u>, 2006-NMSC-022, ¶ 26, 134 P.3d at 768 ("New Mexico has a particular interest in providing compensation or access to the courts to residents of the state.").  Because of New Mexico's particular interest in extending two years to potential claimants against the state, the Court determined that it would honor Arizona's sovereign immunity, subject to a two-year, rather than one-year statute of limitations.

Even in light of the facts of <u>Sam v. Sam</u>, the Court believes that, in this case, New Mexico would apply Colorado's notice provision.  The notice provisions in both states' statutes are congruent, such that applying Colorado's would not offend New Mexico public policy.  In <u>Sam v. Sam</u>, the particular policy value at issue was the ability of claimants to get into court and receive

_____

[4] The Supreme Court in <u>Sam v. Sam</u> did not discuss the extent to which comity would be a more compelling value when dealing state-to-state, as opposed to state-to-foreign nation, as was the case in <u>Leszinske</u>.  <u>Compare</u> <u>Nevada v. Hall</u>, 440 U.S. at 425 ("The intimate union of these states, as members of the same great political family; the deep and vital interests which bind them so closely together; should lead us, in the absence of proof to the contrary, to presume a greater degree of comity, and friendship, and kindness towards one another, than we should be authorized to presume between foreign nations.") (quotations omitted).

compensation.  The Supreme Court of New Mexico viewed the ability of claimants to get into court and receive compensation as a particular interest – an interest that the one year statute of limitations in Arizona substantially offended.  In this case, both Colorado and New Mexico have expressed the same interest motivating their notice provisions: apprising the state or state entity of the potential claims against it so that it can begin an investigation of its potential liability.  While Colorado arguably has a more strict means of pursuing this, because it does not have a proviso for actual notice, New Mexico interprets the actual notice provision narrowly.  New Mexico also provides a much shorter time frame than Colorado, so New Mexico is more liberal in some respects and more stringent in other respects. In sum,  although the provisions ultimately may be somewhat different, they both substantially further the same goal.  The Court therefore finds that New Mexico would likely recognize the Colorado Immunity statute and apply it in this case.

### 3.    Whether the Forum State has a Strong Interest in Litigating the Case.

Judge Kane found that "the public interest of the citizens and governmental agencies of New Mexico in this dispute, on balance, outweighs that of the citizens and governmental agencies of Colorado."  Kane Order at 3.  As the Court has noted,  the public interest of Colorado and New Mexico in this case is difficult to evaluate at this early stage of the case.  Although New Mexico's public interest may outweigh Colorado's public interest on some claims, as this case evolves, it may be that this factor will change.

For the present time, it is sufficient to find that New Mexico's interest clearly outweighs Colorado's on some claims, and that Colorado's will probably remain the same throughout these claims' lives.  The Court agrees that New Mexico's public interest outweighs Colorado's public interest on the Anti-Donation Clause claim and the Declaratory Judgment Claim under the New Mexico Joint Powers Agreement Act.  While it is unclear that Colorado's public interest is less than

New Mexico's public interest on other claims, these two New Mexico claims constitute one half of the current claims.

### 4.   Whether Extending Immunity Would Prevent Forum Shopping.

The Supreme Court of New Mexico has held that, as a general rule, applying New Mexico's statute of limitations when it is longer than a foreign state's statute of limitations would prevent forum shopping to some degree, although it would not completely eliminate forum shopping.  In Sam v. Sam, the Supreme Court stated:

> While we have decided not to recognize Arizona's one-year statute of limitations because it is not in accordance with New Mexico's public policy, we are extending New Mexico's two-year statute of limitations instead of the general three-year statute of limitations. Although this solution may not completely eliminate forum shopping, we believe it will prevent forum shopping to some degree.

2006-NMSC-022, ¶ 28, 134 P3d at 768. Extending Colorado's GIA to this claim would probably prevent forum shopping, because litigants would be aware that the more stringent notice requirements contained in Colorado's GIA may bar their claims if they do not formally put governmental entities on notice.  On the other hand, applying New Mexico's N.M.S.A. 1978, § 41-4-16(B) would likely result in more litigants selecting New Mexico as a forum over Colorado and would probably encourage forum shopping.

In considering all of the factors, the Court believes that New Mexico courts would, in this situation, extend governmental immunity to ARPA under the principle of comity.  Although the City of Raton might be excused for not formally putting ARPA on notice of its claims under the New Mexico Tort Claims Act because ARPA had actual notice of the pending litigation, it would not be excused under Colorado's GIA because GIA has no actual-notice escape.  New Mexico state interests seem to outweigh, or are at least as strong as, Colorado's, up to this point.  Although it is unclear that Colorado's public interest is less than New Mexico's public interest on some claims,

New Mexico's interests seem to be more largely implicated overall.  Extending governmental immunity to ARPA would encourage Colorado to extend governmental immunity to New Mexico governmental entities in the future.  The Court finds that the factors favor application of Colorado's GIA to the City of Raton's claim for negligent misrepresentation as a matter of comity.  Thus, the City of Raton's Count III for negligent misrepresentation fails to state a claim, because it is barred under Colorado's GIA.

## V.   THE CITY OF RATON'S ALLEGATIONS OF VIOLATIONS OF NEW MEXICO'S ANTI-DONATION CLAUSE (COUNT V) FAIL TO STATE A CLAIM.

At the May 2, 2008 hearing, ARPA contended that the City of Raton's Anti-Donation Clause claim should be dismissed, because:

> [A]t this point no power has been sold, no price has been set, and, in fact, the plant is not yet complete, so what Raton is really seeking here is an advisory opinion about what might happen in the future if the power plant is completed and the . . . surplus power is sold at a given amount.  It's not entirely clear that that will ever happen. It is projected that may happen, and that was what was put out in disclosure documents, but it's not a certainty, and until that occurs, we're deal with a question that I would submit is not ripe.

Tr. at 104:9-18 (Johnson).  The City of Raton countered that it is not alleging that ARPA's conduct may violate the Anti-Donation Clause, but that the City of Raton's "donation" of overage power is an impermissible donation to either another municipality or some third party. Id. at 108:2-7 (Winter & Court).  The City of Raton argued that, implicit in the rate-making structure, there will be below-cost sale of excess energy, which did not exist before the implementation or completion of the power-plant project, to third parties.  See id. at 112:12-15 (Winter).

"The Anti-Donation Clause . . . prohibits the use of state or local governmental funds to benefit private organizations."  H. Stratton & P. Farley, Office of the Attorney General, State of New Mexico, History, Powers & Responsibilities, 1846-1990 at 125 (Univ. of N.M. Printing Servs.

1990).  "[T]he term 'donation,' as found in this proviso of the Constitution, that the word has been applied, in its ordinary sense and meaning, as a 'gift,' an allocation or appropriation of something of value, without consideration to a 'person, association or public or private corporation.'"  Village of Deming v. Hosdreg Co., 62 N.M. at 28, 303 P.2d at 926-27.   The Attorney General of New Mexico has identified two components prohibited by the Anti-Donation Clause: (i) "the state may not make any donation to or in aid of any private corporation;" and (ii) the state is prohibited against "lending or pledging of the state's or municipality's credit."  N.M. Attorney General Opinion No. 85-27 at 3, 1985 WL 204889 (October 22, 1985).

New Mexico courts, and the New Mexico Attorney General's Office, have generally, in analyzing the state's Anti-Donation Clause, scrutinized contracts for consideration.  If the courts or the Attorney General's office finds consideration, the courts and the Attorney General's office generally end their review.  Courts and third-party lawyers are reluctant to wade into the thicket of determining whether the consideration is adequate or fair.  Generally, where the consideration is an obvious sham, the New Mexico courts and the New Mexico Attorney General's office have been reluctant to find that a contract violates the anti-donation clause.

Unlike cases in which the Supreme Court of New Mexico has stricken transactions as violating the Anti-Donation Clause, this lawsuit does not involve an outright gift of money or property to a private entity with no exchange of adequate consideration.  See Chronis v. State ex rel. Rodriquez, 100 N.M. at 348, 670 P.2d at 959 (holding that a tax credit to liquor licensees against taxes owed to the state was an unconstitutional subsidy of the liquor industry);  State ex rel. Mechem v. Hannah, 63 N.M. at 118, 314 P.2d at 720 (holding that an appropriation to pay state's share of emergency feed certificates issued to livestock owners for the purchase of hay was an unconstitutional subsidy of the livestock industry); Hutcheson v. Atherton, 44 N.M. at 144, 99 P.2d

at 462 (finding a statute unconstitutional that authorized counties to issue bonds, repaid by taxes, to fund the building of public auditoriums to be used by a private corporation during a celebration of the 400th anniversary of Coronado's exploration).  The City of Raton is not gifting electricity overage to ARPA subscribers.  ARPA and the City of Raton, as a member of ARPA, have every incentive to charge as much as possible for the excess energy, and the fact that this energy, on the open, competitive market, may not cover costs does not mean the City of Raton is donating energy. Recovering as much cost as possible, even if the sale is at a loss, is often a rational business decision, and it is likely that a New Mexico court and the New Mexico Attorney General's office would use the common meaning of gift or donation to describe such a commercial relationship.

The agreement between ARPA and the City of Raton is similar to the agreement in City of Clovis v. Southwest Public Service Co.  In that case, the Supreme Court of New Mexico found that the Anti-Donation Clause did not prohibit a public entity from selling a utility system to a company that sells electricity to third parties.  See 49 N.M. at 275, 161 P.2d at 881.  Thus, "[c]onstitutional provisions prohibiting a municipality from making donations or lending its credit to, or subscribing to the stock of, private corporations do not operate to forbid a municipality to construct, own, sell, or lease a public utility."  Id. at 283, 1621 P.2d at 886 (internal quotation marks omitted).

The Court also notes that it does not have any contract between ARPA and other third-party purchasers to scrutinize, so it cannot be sure that any donation has been made that it could declare unconstitutional under the Anti-Donation Clause.  What the consideration will be at the time of those contracts is speculation.  In that sense, the claim is premature.

In any case, the Court does not believe that the City of Raton is donating now, or planning to donate in the future, power to the third parties to which ARPA is selling energy.  The Court does not believe that the Anti-Donation Clause is intended to scrutinize such arms-length commercial

transactions accompanied by considerable consideration, and to prohibit ARPA from recouping its costs or selling its product at a fair market price. This case does not present a situation where the City of Raton is being taxed, or a levy placed on it, in such a way to demonstrate that ARPA is giving away energy to corporations or public foundations that it prefers. The City of Raton does not appear to be making a "donation to or in aid of any private corporation," and is not "lending or pledging the state's or municipality's credit." N.M. Attorney General Opinion No. 85-27 at 3, 1985 WL 204889 (October 22, 1985).

Finally, there is no indication that the contract which does exist – between ARPA and the City of Raton – violates the Anti-Donation Clause. The Court does not believe that the Anti-Donation Clause is implicated when there is true consideration – money exchanged for a real product. The City of Raton conceded at the May 2, 2008 hearing that it received, in exchange for its consideration to ARPA, "[m]utual covenants and conditions contained herein is the consideration indicated. There was no  monetary consideration. . . . [and] power at 5.5 cents." Tr. at 62:12-24 (Court & Winter). The Court does not believe it should evaluate whether the agreement was a good or bad deal under the Anti-Donation Clause, but merely check for adequate consideration. The Anti-Donation Clause does not exist to get New Mexico's public entities out of bad commercial agreements, but to preclude them from making gifts or donations disguised as business transactions. There is no indication that the City of Raton has entered into such an arrangement with ARPA or that ARPA is about to enter into such an arrangement with another third-party purchaser. Thus, the City of Raton fails to state a claim in Count V of its Complaint.

**IT IS ORDERED** that the Motion to Stay, or in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6) is granted in part and denied in part.  The motion to transfer is denied without prejudice to the Defendant renewing if

circumstances indicate a transfer is appropriate.  The motion to dismiss the Third and Fifth Claim

for Relief is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Nannette M. Winter
Sheehan, Sheehan & Stelzner, P.A.
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Craig N. Johnson
Kutak Rock, LLP
Denver, Colorado

-- and --

Lynn H. Slade
Erin E. Langenwalter
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

      *Attorneys for the Defendant*