# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CITY OF RATON, a municipal corporation
and political subdivision of the State of New
Mexico,

        Plaintiff,

vs.                                        No. CIV 08-26 JB/WDS

ARKANSAS RIVER POWER AUTHORITY,
a public power corporation and political sub-
division of the State of Colorado,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Counts

Three and Five of the Amended Complaint, filed June 27, 2008 (Doc. 29)("Motion").  The Court

held a hearing on November 19, 2008. The primary issues are: (i) whether the Court should apply

Colorado's Governmental Immunity Act; (ii) whether Colorado's Governmental Immunity Act, if

applicable, bars the City of Raton's claims for rescission based on misrepresentation or mistake, (iii)

whether Colorado's Governmental Immunity Act bars the City of Raton's claim that ARPA

breached the covenant of good faith and fair dealing that is implicitly part of the contract between

the City of Raton and ARPA; and (iv) whether the Court should dismiss the City of Raton's

rescission claim based on unilateral mistake.  Because the Court finds that the Colorado Government

Immunity Act applies, and because the rescission claim could have been brought in tort, the Court

will dismiss the rescission claim.  The Court also dismisses the claim for damages for breach of the

covenant of good faith and fair dealing that are grounded in ARPA's misrepresentations.  The Court

will not dismiss the portion of the claim for breach of the covenant of good faith and fair dealing that

is based purely in contract. The Court does not foreclose the possibility of the City of Raton seeking leave from the Court to amend its Complaint to show that it meets the requirements for rescission as a remedy for unilateral mistake of fact.[1]

## PROCEDURAL BACKGROUND

The facts giving rise to this lawsuit have been set forth elsewhere. See Memorandum Opinion and Order, entered September 17, 2008 (Doc. 49)("Sept. 17 MOO"). ARPA previously moved to dismiss the City of Raton's negligent-misrepresentation claim. See Motion to Stay, or in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) at 19-20, filed February 15, 2008 (Doc. 5). At the hearing on ARPA's first motion to dismiss, held on May 2, 2008, the Court indicated that it was inclined to dismiss the City of Raton's negligent-misrepresentation claim based on the Colorado Governmental Immunity Act, Colo. Rev. Stat. §§ 24-10-101 to 24-10-120. See Transcript of May 2, 2008 Hearing at 102:16-103:15 (the Court)(Doc. 27)("May 2 Tr."). Since the May 2, 2008 hearing, the Court has formally dismissed the City of Raton's negligent-misrepresentation claim. See Sept. 17 MOO at 2.

On June 13, 2008, in light of the Court's inclination to dismiss the negligent-misrepresentation claim, the City of Raton filed an Amended Complaint asserting two new claims for relief: (i) a claim for rescission of the parties' contracts based on certain alleged misrepresentations; and (ii) a claim for breach of the implied covenant of good faith and fair dealing based on the same alleged misrepresentations. See First Amended Complaint for Declaratory

---

[1] At the December 5, 2008 hearing, the Court orally informed the parties that the City of Raton would be allowed to seek leave to amend its Complaint to include a claim for mutual mistake, but not for unilateral mistake. On further review of New Mexico law, however, the Court will allow the City of Raton to seek leave to amend its Complaint to add a claim for unilateral mistake of fact. The Court's analysis, as set forth below, more fully clarifies the reasons for the Court's finding regarding unilateral mistake.

Judgment, Breach of Contract, Rescission, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Permanent Injunctive Relief, ¶¶ 76-87, at 95-99, filed June 13, 2008 (Doc. 23)("First Amended Complaint").

ARPA contends that the misrepresentations upon which these new claims are based are the same alleged misrepresentations upon which the City of Raton based its tort claim for negligent misrepresentation in its original Complaint. <u>See</u> Motion at 1. ARPA argues that Colorado's Governmental Immunity Act applies to this lawsuit, and that the Governmental Immunity Act bars claims based in tort. <u>See id.</u> at 8. According to ARPA, the New Mexico Joint Powers Agreements Act, NMSA 1978 § 11-1-6, allows ARPA to rely on its immunity under the Governmental Immunity Act. <u>See</u> Motion at 9. ARPA maintains that, if the New Mexico Joint Powers Agreements Act does not apply, the Governmental Immunity Act should apply as a matter of comity. <u>See</u> Motion at 9.

ARPA cites § 24-10-106 of the Governmental Immunity Act, which provides: "A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." Motion at 9 (quoting § 24-10-106). ARPA therefore characterizes the City of Raton's new counts for rescission and breach of the covenant of good faith and fair dealing as part of an attempt to avoid the application of the Governmental Immunity Act by shoe-horning the City of Raton's defunct tort claim into claims based in contract theories. <u>See</u> Motion at 8.

In its response, the City of Raton asks the Court to decline to extend immunity based on Colorado's Governmental Immunity Act to ARPA. <u>See</u> City of Raton's Response to Motion to Dismiss Counts Three and Five of the Amended Complaint, filed July 11, 2008 (Doc.

30)("Response").  The City of Raton argues that the New Mexico Joint Powers Agreements Act does not compel application of the foreign immunity statute.  See id.  The City of Raton also argues that, under principles of comity, Colorado's Governmental Immunity Act should not apply to the City of Raton's claims against ARPA.  See id.  Under the four factors that New Mexico courts use to determine whether to extend comity, the City of Raton maintains: (i) the scope of immunity under New Mexico and Colorado law are different, and Colorado would afford immunity under circumstances where New Mexico would not; (ii) it is unclear whether the state sued – in this case, Colorado – would be likely to extent immunity to other states; and (iii) New Mexico, as the forum state, has a strong interest in litigating this matter, because the lawsuit impacts the "economic and fiscal integrity of a small New Mexico mountain town that is more than 100 years old," and because extending comity would offend New Mexico's strong public policy of recognizing the implied covenant of good faith and fair dealing, and allowing rescission of contracts entered into based on misrepresentations and false promises.  Response at 4-7.

Alternatively, the City of Raton argues that Colorado's Governmental Immunity Act would not bar its claims for rescission and breach of the covenant of good faith and fair dealing.  See id. at 7.  The City of Raton argues that the Court must "look to the nature of the alleged injury and the relief sought in order to determine, on a case-by-case basis, if a claim 'could lie in tort' for purposes of the [Governmental Immunity Act]."  Id. (quoting CAMAS Colorado, Inc. v. Board of County Commissioners, 36 P.3d 135, 138 (Colo. App. 2001)).  Under such an analysis, the rescission claim lies in contract.

The City of Raton also argues that it has stated a claim for rescission based on unilateral mistake.  See Response at 13.  The City of Raton maintains that its rescission claim is predicated on information that ARPA presented to members concerning the cost and description of the project

and its economic feasibility that was "<u>actually and demonstrably false</u>" at the time the information was given.  Response at 13 (emphasis in original).

In its reply, ARPA reiterates that the City of Raton's rescission and breach of covenant claims arise from factual allegations that are virtually identical to those in the misrepresentation claim, and that the new claims "appear to have largely been 'cut and pasted' from the initial Complaint and simply 'relabeled' as contract-based claims."  Defendant's Reply in Support of Motion to Dismiss Counts Three and Five of the Amended Complaint at 2, filed July 28, 2008 (Doc. 33)("Reply").

ARPA also counters the City of Raton's argument that the Governmental Immunity Act would violate New Mexico's public policy intended to permit recovery in equity and damages for the other contracting party's bad-faith conduct by pointing out that the New Mexico Tort Claims Act bars claims against public entities unless those claims are expressly waived.  <u>See</u> Reply at 3.  ARPA argues that there is no such express waiver for bad-faith claims.  <u>See</u> <u>id.</u>  ARPA also cites New Mexico cases holding that: (i) public entities are not liable for bad-faith conduct, <u>see</u> <u>El Dorado Util. Inc. v. El Dorado Area Water and Sanitation District</u>, 109 P.3d 305, 312, 137 N.M. 217, 224 (2005); and (ii) New Mexico law provides public entities immunity from claims that are implied from a contract, such as claims for breach of the implied covenant of good faith and fair dealing, <u>see</u> <u>Campos de Suenos Ltd. v. County of Bernalillo</u>, 28 P.3d 1104, 1109, 130 N.M. 563, 568 (2001)(holding that "the legislature placed the risk of loss on a party who transacts business with a governmental entity").  Reply at 4.

ARPA states that, given that <u>Robinson v. Colorado State Lottery Division</u> 179 P.3d 998 (Colo. 2008), bars claims against state entities which could be pled alternatively in tort, not only could the allegations underlying counts three and five be pled in tort, but the City of Raton has

previously pled them in tort.  See Reply at 5.  ARPA distinguishes CAMAS Colorado, Inc. v. Board of County Commissioners, upon which the City of Raton relies.  See Reply at 5-6.  In ARPA's view, the rescission claim in that case was characterized as purely contractual, because it "ar[ose] from the parties' contract" and was the result of a mutual mistake of fact rather than one party's misrepresentations.   Reply at 6 (quoting CAMAS Colorado, Inc. v. Board of County Commissioners, 36 P.3d 135).

ARPA also distinguishes Berg v. State Board of Agriculture, 919 P.2d 254 (Colo. 1996), explaining that, in that case, the Supreme Court of Colorado found that the facts supporting the plaintiff's claim could not have supported a tort cause of action because the plaintiff did not argue that there was any misrepresentation, and because her "claim could not support a claim for fraud or misrepresentation."  Reply at 7 (quoting Berg v. State Board of Agriculture, 919 P.2d at 259).

ARPA also argues that the City of Raton's breach-of-covenant claim would not only be barred under the Governmental Immunity Act, but also under New Mexico's Tort Claims Act.  See Reply at 10.  ARPA argues that the City of Raton's reliance on Denny Construction v. Denver ex. rel. Board of Water Commissioners, 170 P.3d 733 (Colo. App. 2007) is misplaced.  According to ARPA,  Denny Construction v. Denver ex. rel. Board of Water Commissioners was not based on alleged misrepresentations or other tortious conduct, but on breaches arising out of the contract itself.  See Reply at 10.

Finally, ARPA contends that the City of Raton's claim for rescission based on the alternative ground of unilateral mistake fails as a matter of law.  See Reply at 11.  The basis of ARPA's argument is that rescission for unilateral mistake is allowed only where the mistake relates to facts as they existed at the time of the contract's execution, whereas the City of Raton seeks to predicate its rescission for unilateral mistake claim on ARPA's "failure to accurately predict the future costs

-6-

of [the] project." Id. at 11.

At the November 19, 2008 Hearing, ARPA argued that the Court's previous ruling – that New Mexico would extend comity to the Governmental Immunity Act to the City of Raton's negligent-misrepresentation claims – also applies to the City of Raton's rescission and breach-of-covenant claims. See Transcript of Hearing at 10:13-15 (taken November 19, 2008)(Johnson)("Nov. 19 Tr.").[2] Specifically, ARPA argued that the finding that New Mexico would extend immunity to ARPA under the Governmental Immunity Act applies to the entire case rather than to specific claims in the case. See id. at 11:25-12:8 (Johnson); 13:10-14:3.[3]

The City of Raton countered that the comity analysis should apply on a claim-by-claim basis, and that a determination that New Mexico would extend immunity to the negligent-misrepresentation claim does not mean that it would do so on the rescission and breach-of-covenant claims. See id. at 23:12-15 (Sanchez). The City of Raton also contended that, at the core of the comity inquiry, is a "public policy analysis." Id. at 30:1-2 (Sanchez). According to the City of Raton, the public-policy questions that were present in the Court's analysis of the negligent-misrepresentation claim are not present on these claims, because in its September 17 MOO, the Court dealt with the different notice provisions of the New Mexico Tort Claims Act and of Colorado's Governmental Immunity Act. See id. at 30:12-20 (Sanchez).

The City of Raton maintains that, even under the Governmental Immunity Act, its rescission

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

[3] Although ARPA initially argued that the Court's comity analysis from the Sept. 17 MOO was law of the case, it later conceded that law of the case was inapplicable, and that the earlier ruling was interlocutory. See Nov. 19 Tr. at 10:13-11:16 (Johnson, the Court). Thus, ARPA's argument is that the Court's earlier analysis should either apply to the entire case, or that it should inform the application of the Sam v. Sam factors to the claims at issue in this motion.

claim would survive because it is born out of ARPA's "contractual duty to provide accurate and full information to its members on which they can make a decision." Id. at 26:14-16 (Sanchez). The City of Raton states that rescission is an alternative remedy for damages arising out of breach of contract. See id. at 41:11-17 (Sanchez).

ARPA argues that, even under New Mexico law, rescission does not sound in contract, but rather in tort, because rescission is a remedy for misrepresentation. See id. at 37:12-20 (Johnson). ARPA explains that the remedy of rescission is available for misrepresentations that induce a party to enter a contract, and that rescission is not available for failure to perform. See id. at 42:1-5 (Johnson). ARPA also concedes that New Mexico law would govern the existence of the claim for rescission. See id. at 34:22-24.

The claim for breach of the covenant of good faith and fair dealing, according to ARPA, derives from the same allegations as the rescission claim. See id. at 45:1-5 (Johnson). Thus, ARPA contends that Robinson v. Colorado State Lottery Division, compels a finding that a rescission claim such as the one that the City of Raton brings could sound in tort, and is therefore barred under the Governmental Immunity Act. See Nov. 19 Tr. at 45:4-8 (Johnson). According to ARPA, the breach of the covenant of good faith and fair dealing sounds in tort. See id. at 46:2-6 (Johnson).

The City of Raton argues that the breach of the covenant of good faith and fair dealing is rooted in contract, and that its claim under Count 5 of the First Amended Complaint is not based only in misrepresentations, but also in a "wrongful use of the organic contract" on the part of ARPA to the City's detriment. Nov. 19 Tr. at 47:5-14 (Sanchez). ARPA concedes that breach-of-the-covenant-of-good-faith claims can arise of out specific contract provisions, but maintains that, under the Governmental Immunity Act, a court must look at the facts to determine whether a claim could be brought as a tort. See id. at 55:13-17 (Johnson).

## LAW REGARDING MOTIONS TO DISMISS

Pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move for dismissal for lack of subject-matter jurisdiction. The United States Court of Appeals for the Tenth Circuit has explained:

> First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations . . . .

E.F.W. v. St. Stephen's Indian High School, 264 F.3d 1297, 1303 (2001)(internal quotation marks and citations omitted).

Parties may also move to dismiss claims as a matter of law under rule 12(b)(6) of the Federal Rules of Civil Procedure. In evaluating such a motion, a court must determine "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1967, 1969 (2007)). "The [Supreme ] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974.)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

In resolving a motion to dismiss brought under rule 12(b)(6), the court must determine

whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1965 (internal quotation marks omitted).

## LAW REGARDING RESCISSION

Under New Mexico law, "[a]s a general proposition, rescission is allowed where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on." Prudential Ins. Co. of America v. Anaya, 78 N.M. 101, 104, 428 P.2d 640, 643 (1967). "Further, rescission may be allowed in certain cases of non-fraudulent, but material, nondisclosure." McElhannon v. Ford, 134 N.M. 124, 129, 73 P.3d 827, 832 (Ct. App. 2003). "Rescission is an equitable remedy which seeks to restore the status quo ante," and "[t]he defrauded party must return or offer to return that which has been received under the contract as a condition precedent to maintaining a suit for rescission." Ledbetter v. Webb, 103 N.M. 597, 600-01 711 P.2d 874, 877-78 (1985).

The Supreme Court of New Mexico has also suggested that, under certain circumstances, a party might be able to "avoid" or "rescind" a contract "'[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances.'" State ex rel. State Highway and Transp. Dept. v. Garley, 111 N.M. 383, 385, 806 P.2d 32, 34 (1991)(quoting RESTATEMENT (SECOND) OF CONTRACTS § 152 (1979)).

Besides being available for reliance on material misrepresentations and for mistake at the time of contracting, the New Mexico courts have allowed rescission in certain breach-of-contract scenarios. The Supreme Court of New Mexico has stated:

It is not every breach of a contract or failure exactly to perform – certainly not every

> partial failure to perform – that entitles the other party to rescind. A breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom. A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement. Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract or the failure to perform the contract must be in respect of matters which would render the performance of the remainder a thing different in substance from that which was contracted for.

Samples v. Robinson, 58 N.M. 701, 705, 275 P.2d 185, 187-88 (1954)(citations and internal quotation marks omitted).  See Wood v. Cunningham, 140 N.M. 699, 702, 147 P.3d 1132, 1135 (Ct. App. 2006)("To warrant rescission, there must be a 'substantial failure' of consideration."); Morgan v. Thompson, 46 N.M. 282, 285, 127 P.2d 1037, 1040 (N.M. 1942)("A mere breach of the contract, without a provision therein for its termination upon such breach, does not authorize its cancellation."); Bank of New Mexico v. Northwest Power Products, Inc., 95 N.M. 743, 749, 626 P.2d 280, 286 (Ct. App. 1980)("A rescission is not warranted by a mere breach of contract that is not so substantial and fundamental as to defeat the object of the parties. The breach must be prejudicial and go to the root of the contract.").

## LAW REGARDING THE COVENANT OF GOOD FAITH AND FAIR DEALING

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement."  Watson Truck & Supply Co., Inc. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1993) (citations omitted).  "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement."  Id., 801 P.2d at 642 (internal quotation marks omitted).  The Supreme Court of New Mexico has expressed reluctance, however, to use the covenant of good faith and fair dealing "under

circumstances where . . . it may be argued that from the covenant there is to be implied in fact a term or condition necessary to effect the purpose of a contract." Id., 801 P.2d at 642.

Both New Mexico and Colorado have recognized a cause of action for breach of the covenant of good faith and fair dealing sounding in contract. In Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994), the Supreme Court of New Mexico noted its agreement with the Supreme Court of Arizona that, "[t]he duty to not act in bad faith or deal unfairly becomes part of the contract and the remedy for its breach is on the contract itself." Id. at 439, 872 P.2d at 857 (quoting Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370, 710 P.2d 1025 (Ariz. 1985)). The Supreme Court of New Mexico also explained that tort recovery for breach of the covenant of good faith and fair dealing would be permissible only where a special relationship existed, such as between insurer and insured. See 117 N.M. at 439, 872 P.2d at 857. The "relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position." Id., 872 P.2d at 857 (internal quotation marks and citations omitted). Similarly, the New Mexico Court of Appeals held that "[t]he claim for breach of good faith and fair dealing sounds in contract, at least when no 'special relationship' such as that between an insured and insurer exists." Heimann v. Kinder-Morgan CO2 Co., 140 N.M. 552, 558, 144 P.3d 111, 117 (Ct. App. 2006).

The Supreme Court of Colorado in Goodson v. American Standard Ins. Co., 89 P.3d 409 (Colo. 2004) stated: "In most contractual relationships, a breach of [the covenant of good faith and fair dealing] will only result in damages for breach of contract and will not give rise to tort liability." 89 P.3d at 414. Like the New Mexico courts, however, the Supreme Court of Colorado has explained that, "an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." Id.; see State Farm Mutual Automobile Ins. Co. v. Brekke, 105 P.3d

177, 188 (Colo. 2004)("Unlike the breach of implied duty of good faith and fair dealing in an ordinary contract, breach in an insurance contract gives rise to a separate cause of action in tort.").

## COLORADO IMMUNITY LAW

The Governmental Immunity Act bars any claims that could potentially lie in tort, even if such claims are framed as contractual in nature. The Governmental Immunity Act provides express immunity from such claims: "A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." COLO. REV. STAT. § 24-10-106 (emphasis added).

The Supreme Court of Colorado recently interpreted the reach of § 24-10-106 in Robinson v. Colorado State Lottery Division. The plaintiff in Robinson v. Colorado State Lottery Division alleged that the Colorado State Lottery Division was "selling instant scratch game tickets for a significant period of time after all of the represented or advertised prizes [were] awarded or claimed." 179 P.3d at 1002. The plaintiff filed several claims against the Lottery, which, among others, included: (i) breach of express contract; (ii) breach of express warranty under the Colorado Uniform Commercial Code ("UCC"); (iii) breach of implied warranty under the UCC; (iv) breach of the implied covenant of good faith and fair dealing; and (v) restitution and unjust enrichment. See Robinson v. Colorado State Lottery Division, 179 P.3d at 1002. In analyzing whether the Governmental Immunity Act would bar these claims, the Supreme Court of Colorado explained that a court must consider the nature of the injury and the relief sought, rather than labels. See id. at 1003. Thus, "[w]hen the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury, the claim likely lies in tort or could lie in tort for purposes of the [Governmental Immunity

-13-

Act]." Id.

Given that analysis, the plaintiff's contractual claims in <u>Robinson v. Colorado State Lottery Division</u> against the state entity, while framed in terms of contract law, could have been brought under a tort theory because they were based on alleged misrepresentations.  <u>See id.</u> at 1005. According to the Supreme Court of Colorado, the Governmental Immunity Act is "less concerned with what the plaintiff is arguing and more concerned with what the plaintiff could argue."  <u>Id.</u> Regarding the plaintiff's contractual claims, the Supreme Court of Colorado observed that a "review of the factual allegations supporting [the plaintiff's] claims for relief reveals that the underlying injury [was] based on the Lottery's alleged misrepresentations . . . regarding the availability of the represented prizes, which induced the purchase of the scratch tickets."  <u>Id.</u>

The Supreme Court of Colorado in <u>Robinson v. Colorado State Lottery Division</u> addressed the Governmental Immunity Act's applicability to rescission claims:

> For example, a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for a tort claim asserted by a party detrimentally relying on such negligent misrepresentations. . . .  Thus, the plaintiff who has been fraudulently induced to enter into a contract may either sue to rescind the contract or affirm the contract and sue in tort for the damages cased by the fraudulent act.

<u>Id.</u> at 1004.  According to the Supreme Court, "where there is such overlap, claims that could arise in both tort and contract are barred by the [Governmental Immunity Act], while claims arising solely in contract are not subject to the [Governmental Immunity Act]."  <u>Id.</u>

In <u>CAMAS Colorado, Inc. v. Board of County Commissioners</u>, the Colorado Court of Appeals stated: "In determining whether a claim is contractual or lies in tort, a court should examine whether the claim and the duty allegedly breached arise from the terms of the contract itself."  36 P.3d at 138.  In <u>CAMAS Colorado, Inc. v. Board of County Commissioners</u>, a contractor had

entered into a contract with the Board of Commissioners of Jefferson County for a roadway construction project.  See 36 P.3d at 137.  After starting construction, the contractor encountered significant delays, allegedly because certain utilities facilities materially interfered with the construction, and because of alleged errors and omissions in the contract plans.  See id.

In the ensuing lawsuit, the contractor asserted claims for breach of contract, quantum meruit, fraud, negligent misrepresentation, rescission and restitution, and interference with future contracts. See id.  The trial court found that the Governmental Immunity Act barred the contractor's claims and dismissed all claims for lack of subject-matter jurisdiction.  See 36 P.3d at 137.  Noting that the determination whether an action lies in tort or could lie in tort must be made on a "case-by-case" basis, the Colorado Court of Appeals in CAMAS Colorado, Inc. v. Board of County Commissioners affirmed the district court's finding that the fraud, negligent misrepresentation, and interference-with-future-contracts claims sounded in tort.  See 36 P.3d at 138.  The Supreme Court of Colorado reversed the district court, however, on the breach-of-contract claim and found that it was not grounded in tort, because the focus of the claim was on parts of the contract that the county allegedly breached, and because the contractor was seeking damages resulting from delays attributable to the county's alleged breaches.  See id.

The Colorado Court of Appeals in CAMAS Colorado, Inc. v. Board of County Commissioners also found that the rescission claim was based solely in contract.  See id. The Colorado Court of Appeals reasoned that

> [r]escission is an equitable remedy that may be allowed upon a showing that an agreement is founded on mutual mistake of facts. . . .  The equitable relief sought here, as well as the alleged damages, arise from the parties' contract.  Because this claim is again not one that lies, or could lie, in tort, the trial court erred in finding it was barred by the [Governmental Immunity Act].

CAMAS Colorado, Inc. v. Board of County Commissioners, 36 P.3d at 139 (citation omitted).

## LAW REGARDING GOVERNMENTAL IMMUNITY

A state is not required to follow the governmental immunity laws of another state.  See Franchise Tax Bd. of Cal. v. Hyatt, 538 U.S. 488, 497 (2003)(holding that a forum is not required to extend sovereign immunity to other states sued in its courts, but may extend immunity under the principle of comity unless doing so would violate the forum's public policies); Nevada v. Hall, 440 U.S. 410, 424 (1979)(holding that the Full Faith and Credit Clause does not require a forum to apply the sovereign-immunity doctrine of another state, if such an application would violate the forum's legitimate public policies).  While a state need not apply the sovereign-immunity doctrine of another state, New Mexico law has indicated it will extend immunity as a matter of comity if doing so does not offend  the state's public policies.

The Supreme Court of New Mexico has articulated a number of factors for a court to consider in deciding whether to apply immunity provisions of a foreign state, including: "(1) whether the forum state would enjoy similar immunity under similar circumstances. . . (2) whether the state sued has or is likely to extend immunity to other states. . .  (3) whether the forum state has a strong interest in litigating the case. . .  and (4) whether extending immunity would prevent forum shopping."  Sam v. Sam, 2006-NMSC-022, ¶ 22, 134 P.3d 761, 767.  The  New Mexico courts "likewise consider each of these factors when determining whether recognizing the sovereign immunity of a sister state would be contrary to the public policy of New Mexico."  Id., 134 P.3d at 767.

In Sam v. Sam, the Supreme Court of New Mexico discussed the issue "whether the New Mexico courts should apply Arizona's statute of limitations or extend New Mexico's statute of limitations to an Arizona public employee based on the principles of comity, not whether it is compelled to do so."  Id. ¶ 20, 134 P.3d at 767.  "Comity refers to the spirit of cooperation in which

a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." Id. ¶ 19, 134 P.3d at 766.  The Supreme Court of New Mexico noted that there are several factors that "assist in determining whether extending immunity through comity would violate the forum state's public policy." Id. ¶ 22, 134 P.3d at 767.  After listing the four factors, the Supreme Court of New Mexico stated that, although it was unclear whether Arizona courts would extend immunity to New Mexico, it believed that New Mexico has a interest in extending immunity by comity to "encourage Arizona to extend immunity to a New Mexico governmental entity in the future." Id. ¶ 24, 134 P.3d at 767.

The Supreme Court of New Mexico in Sam v. Sam also stated that it would refuse to extend immunity only if doing so would "offend a sufficiently strong public policy."  Sam v. Sam, 2006-NMSC-022, ¶ 21, 134 P.3d at 767.  Indeed, in Sam v. Sam, which deals  with the question of recognizing a neighboring state's sovereign immunity,  the Supreme Court of New Mexico relied on a case dealing with whether New Mexico would recognize, under the principle of comity, an uncle-niece marriage[4] entered into in Costa Rica.  See id. 134 P.3d at 766-677 (relying on Leszinske v. Poole, 110 N.M. 663, 668, 798 P.2d 1049, 1054 (Ct. App. 1990)).  Although the marriage "undoubtedly offended the public policy of New Mexico to some degree," it did not do so sufficiently to prevent the Supreme Court of New Mexico from recognizing the Costa Rican marriage under comity.  Sam v. Sam, 2006-NMSC-022, ¶¶ 19-21, 134 P.3d at 766-67.  Although Leszinske v. Poole did not deal with sovereign immunity, the Supreme Court of New Mexico in Sam v. Sam believed that Leszinske v. Poole appropriately illustrated the high value New Mexico places

---

[4] The uncle-niece couple went to Costa Rica specifically to obtain a valid marriage, which was not available to them in New Mexico. See Leszinske v. Poole, 110 N.M. 663, 668, 798 P.2d 1049, 1054 (Ct. App. 1990).

on comity.[5]  If New Mexico is willing to go to such lengths,  in the name of comity between itself and a foreign state, that it will even recognize legal rights that "offend the public policy of New Mexico to some degree," it is not likely to refuse to grant immunity in this case, where New Mexico and Colorado have similar sovereign immunity statutes that further the same policy goals.

In Sam v. Sam, the Supreme Court of New Mexico recognized Arizona's sovereign immunity, but not on terms completely consistent with Arizona's law.  See Sam v. Sam, 2006-NMSC-022, ¶ 27, 134 P.3d at 768.  Arizona had a one-year statute of limitations for tort claims, while New Mexico allowed two years, and the Supreme Court of New Mexico decided to apply its own two-year statute of limitations on policy grounds.  See id., 2006-NMSC-022, ¶ 26, 134 P.3d at 768 ("New Mexico has a particular interest in providing compensation or access to the courts to residents of the state.").  Because of New Mexico's particular interest in extending two years to potential claimants against the state, the Supreme Court of New Mexico determined that it would honor Arizona's sovereign immunity, subject to a two-year, rather than one-year statute of limitations.

## ANALYSIS

Having carefully considered the arguments that both parties have proffered, the Court determines that New Mexico would, as a matter of comity, recognize and apply Colorado's Governmental Immunity Act to ARPA's claims for rescission and breach of covenant.  Because both

---

[5] The Supreme Court of New Mexico in Sam v. Sam did not discuss the extent to which comity would be a more compelling value when dealing state-to-state, as opposed to state-to-foreign nation, as was the case in Leszinske v. Poole.  Compare Nevada v. Hall, 440 U.S. at 425 ("The intimate union of these states, as members of the same great political family; the deep and vital interests which bind them so closely together; should lead us, in the absence of proof to the contrary, to presume a greater degree of comity, and friendship, and kindness towards one another, than we should be authorized to presume between foreign nations.")(quotations omitted).

of those claims, as pled in the City of Raton's First Amended Complaint, could also be pled in tort, the Court finds that the Governmental Immunity Act bars those claims. The Court will accordingly dismiss both claims to the extent that they are predicated on misrepresentations.

I. **THE COURT WILL APPLY NEW MEXICO LAW TO CHARACTERIZE THE CITY OF RATON'S RESCISSION AND BREACH-OF-COVENANT CLAIMS AND TO EVALUATE THE EXISTENCE OF THOSE CAUSES OF ACTION IN TORT OR IN CONTRACT.**

A federal court applies the choice-of-law rules of the forum state in which it sits. See Memorial Hosp. of Laramie County v. Healthcare Realty Trust Inc., 509 F.3d 1225, 1229 (10th Cir. 2007). The Court therefore applies New Mexico choice-of-law principles. The Court notes that, in its Sept. 17 MOO, it determined that New Mexico law would be used to characterize the tort of negligent misrepresentation. See Sept. 17 MOO at 37. The Court stated that, in tort cases, the law of the place of the injury controls for choice-of-law purposes. See Valencia v. Colorado Casualty Insurance Co., 560 F. Supp. 2d 1080, 1085 (D. N.M. 2007)("In determining which jurisdiction's law should apply to a tort action, New Mexico courts follow the doctrine of lex loci delicti commissi – that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred.")(quoting Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 12, 140 N.M. 293, 142 P.3d 374, 377).

This case presents the difficulty that one party is characterizing the claims at issue as contract claims, while the other argues that those claims are based in tort. Moreover, the Organic Contract at issue in this case does not contain a choice-of-law provision. In New Mexico, the general rule for contracts is lex loci contractus – the law of the place of contracting controls. See Ferrel v. Allstate Insurance Co., 144 N.M. 405, 421, 188 P.3d 1156, 1172 (2008)(citing RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 311, at 395). "A contract is made 'at the time when the last act

necessary for its formation is done, and at the place where the final act is done.' Merriman v. Harter, 59 N.M. 154, 280 P.2d 1045 (1955). The place where the final act is done determines the applicable law for the interpretation of the contract." Eichel v. Goode, Inc., 101 N.M. 246, 251, 680 P.2d 627, 632 (Ct. App. 1984).

The Organic Contract does not contain a choice-of-law provision, while the Power Sales Agreement contains a clause stating that Colorado law will govern.  The Power Sales Agreement states: "This agreement shall be interpreted, governed, and construed under the laws of the State of Colorado."  See Exhibit 2 to FAC, Power Sales Agreement ¶ 24, at 15, filed June 13, 2008 (Doc. 23-6).  New Mexico normally honors choice-of-law provisions.  See Fiser v. Dell Computer Corporation, 144 N.M. 464, 467 188 P.3d 1215, 1218 (N.M. 2008).  Moreover, the Court believes that this clause, fairly interpreted, would require that the Court apply Colorado law to breach of contract or other contract claims rising out of the Power Sales Agreement.  The remaining issue is whether Colorado or New Mexico law applies to the extant claims under the Organic Contract.

Given that the City of Raton seeks to rescind and recover damages for breach of the covenant of good faith on the Organic Contract, the Court is faced with the dilemma whether to parse out the portions of the claims that, if based in contract, arise out of the Organic Contract, and apply Colorado law to claims arising out of the Organic Contract, or to apply the law determined by New Mexico choice-of-law rules for claims arising out of the Organic Contract.  The Court finds various factors counsel in favor of applying New Mexico contract law to the Organic Contract for the limited purpose of determining the existence and character of rescission and breach-of-covenant causes of action.

Although ARPA has argued that it was intended that Colorado law should apply to the Organic Contract, the Court must, in the absence of a choice-of-law provision, apply New Mexico's

choice-of-law rules for that contract.  Furthermore, counsel for ARPA conceded at the hearing that New Mexico law applies to the existence and characterization of the rescission claim.  <u>See</u> Nov. 19 Tr. at 34:10-25 (Court, Johnson).

The Court agrees that New Mexico law should apply because, while the potential tort aspects of the City of Raton's rescission claim compel the court to apply the law of the place of the harm – which is New Mexico – the parties have not given evidence regarding where contract formation occurred.  In other words, the facts necessary to establish where the contract occurred have not been established.  The fact that such evidence has not been presented, however, does not deter the Court from applying New Mexico law because, on the issues present on this motion, New Mexico and Colorado law appear to lead to a similar result.

"The false conflict doctrine allows a court to avoid a choice of law question when the laws of the involved states would produce identical results."  <u>Fowler Brothers, Inc. v. Bounds</u>, 144 N.M. 510, 514, 188 P.3d 1261, 1265 (Ct. App. 2008).  The New Mexico Court of Appeals has explained that "the focus of the doctrine is not on whether the laws are superficially identical as written, but whether the effect of laws would be identical as applied to a particular case . . . .  The purpose of the doctrine is to avoid complicated choice-of-law questions when the answer to those questions would not make a difference."  <u>Id.</u>, 188 P.3d at 1265 (internal quotation marks and citations omitted).

In this case, the Court finds that New Mexico and Colorado case law define the rescission and breach-of-covenant claims in similar fashion.  Both New Mexico and Colorado allow rescission for misrepresentations upon which a party relies in entering a contract, and for mutual mistake under some circumstances.   <u>See State ex rel. State Highway and Transp. Dept. v. Garley</u>, 111 N.M. at 385, 806 P.2d at 34 (discussing the circumstances under which mutual mistake can give rise to rescission); <u>CAMAS Colorado, Inc. v. Board of County Commissioners</u>, 36 P.3d at 139 (noting that

rescission is a remedy available for mutual mistake).

Similarly, both jurisdictions recognize a cause of action for breach of the covenant of good faith and fair dealing under similar terms.  The New Mexico Court of Appeals held that "[t]he claim for breach of good faith and fair dealing sounds in contract, at least when no 'special relationship' such as that between an insured and insurer exists."  Heimann v. Kinder-Morgan CO2 Co., 140 N.M. at 558, 144 P.3d at 117.  The Supreme Court of Colorado in Goodson v. American Standard Ins. Co., stated: "In most contractual relationships, a breach of [the covenant of good faith and fair dealing] will only result in damages for breach of contract and will not give rise to tort liability."  89 P.3d at 414.  The Supreme Court of Colorado also recognized that, where there is an insurer-insured relationship, a cause of action for breach of the covenant of good faith and fair dealing could also arise in tort.

Thus, both states appear to treat the substantive law on both Counts Three and Five similarly.  Moreover, the Court is convinced, as set forth more completely below, that similar results would flow from an attempt to bring these claims against a state entity in either Colorado or New Mexico.  The Court therefore finds a false conflict where these claims are concerned, and will therefore apply New Mexico law to both.

The similarity between Colorado and New Mexico law suggests that a separate endeavor to analyze the segment of the claims that speak to the Organic Contract – and the FAC does not give guidance regarding how the separate segments should be parsed – would be duplicative, and  would not render a result different from the one reached using New Mexico characterizations.

The Court emphasizes that it is not applying New Mexico law to interpret or construe the Organic Contract.  Instead, the Court finds good reason to apply New Mexico law to determine whether certain causes of action might exist, and to characterize them as tort or contract.  The Court

finds that, in light of the false conflict with regard to the two claims at issue on this motion, and the potential difficulties latent in separating out not only the aspects of these claims that are tort and contract, but also the aspects that go to the Organic Contract, it makes sense to consider the claims' existence and character as to that contract under a single body of law. That body of law is New Mexico law.

## II.   BOTH COLORADO AND NEW MEXICO WOULD TREAT THE RESCISSION AND BREACH-OF-WARRANTY CLAIMS IN A SIMILAR MANNER.

The Court finds that New Mexico and Colorado would consider the rescission claim in Count Five to be rooted partially in tort and partially in contract. New Mexico and Colorado also consider claims for breach of the covenant of good faith and fair dealing to exist primarily in contract, and in tort only under limited circumstances not present in this case. Specifically, both states recognize a cause of action for tort damages for breach of the covenant of good faith and fair dealing in cases involving parties with an insurer-insured relationship.

### A.   THE RESCISSION CLAIM IS BASED PARTLY IN TORT.

New Mexico courts have not explicitly stated whether rescission can be considered a tort remedy, or whether rescission is strictly a remedy arising out of contracts. A contract must exist to be rescinded, but, as the Colorado case law illustrates, the conduct upon which a rescission remedy is sought can sometimes be tortious in nature and sometimes based on contract. The Court believes that Robinson v. Colorado State Lottery Division is helpful to determining how New Mexico law would characterize the cause of action, because it points out that rescission based on misrepresentation reflects an overlap in tort and contract principles. See Robinson v. Colorado State Lottery Division, 179 P.3d at 1004 (discussing the "overlap" of contract and tort principles that exists on rescission claims for misrepresentation").

An examination of New Mexico's cases on rescission lead the Court to the conclusion that, like Colorado, rescission claims based on misrepresentation are grounded, at least partially, in tort. As the Supreme Court of New Mexico explained in Prudential Ins. Co. of America v. Anaya, rescission is an equitable remedy, and is available when a contracting party reasonably relies on the material misrepresentations of the other party in entering into a contract.  See 78 N.M. at 104, 428 P.2d at 643.  Such a claim is not grounded in breach of a duty arising out of the contract.  In contrast, rescission based on breach of contract or mistake – inherently contract-based theories – is available only under the limited circumstances.  See State ex rel. State Highway and Transp. Dept. v. Garley, 111 N.M. at 385, 806 P.2d at 34.  The Court therefore believes that rescission for misrepresentation sounds, at least in part, in tort in New Mexico.

The Supreme Court of Colorado has been more explicit in explaining that rescission based on misrepresentation is a mixture of tort and contract:

> For example, a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for a tort claim asserted by a party detrimentally relying on such negligent misrepresentations. . . .  Thus, the plaintiff who has been fraudulently induced to enter into a contract may either sue to rescind the contract or affirm the contract and sue in tort for the damages cased by the fraudulent act.

Robinson v. Colorado State Lottery Division, 179 P.3d at 1004.  Thus, in both New Mexico and Colorado, rescission based on misrepresentation sounds partly in tort.

## B.   BREACH OF THE COVENANT OF GOOD FAITH IS SIMILAR UNDER NEW MEXICO AND COLORADO LAW.

Both New Mexico and Colorado permit a cause of action for breach of the covenant of good faith and fair dealing sounding in contract.  Both states also limit the ability to recover in tort for the breach of the covenant of good faith to narrow circumstances where a special relationship between the parties arises, because of the unbalanced and adhesive nature of the contract between the parties.

The paradigm case for a relationship giving rise to a tort action for breach of the covenant of good faith is the contract between insurer and insured.

Stated differently, a cause of action for breach of the covenant of good faith can normally arise only out of a contract. A cause of action based on the breach of tort duties of good faith does not lie in either state. See Goodson v. American Standard Ins. Co., 89 P.3d at 414 ("In most contractual relationships, a breach of [the covenant of good faith and fair dealing] will only result in damages for breach of contract and will not give rise to tort liability."); Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857 (explaining that "[t]he duty to not act in bad faith or deal unfairly becomes part of the contract and the remedy for its breach is on the contract itself").

## III.   THE GOVERNMENTAL IMMUNITY ACT BARS THE RESCISSION CLAIM AND THE PORTION OF THE BREACH-OF- COVENANT CLAIM THAT IS BASED ON TORTIOUS CONDUCT.

The Court finds that the City of Raton's rescission claim based on misrepresentation could be grounded in tort, and the Court will therefore dismiss Count Three under the Governmental Immunity Act. The Court will, however, allow the City of Raton to amend its complaint to establish that it meets the prerequisites for its alternative rescission claim based on mutual mistake of fact. The Court also finds that the portion of the City of Raton's claim for breach of the covenant of good faith and fair dealing that is grounded in allegations of misrepresentation is similarly capable of being pled in tort. The Governmental Immunity Act therefore bars the portions of the claim that arise out of the alleged misrepresentations. The Court finds, however, that the City of Raton may proceed with the portion of its claim for breach of the covenant of good faith and fair dealing that arises out of alleged breach of contractual obligations. See FAC ¶ 97, at 15.

**A.      THE GOVERNMENTAL IMMUNITY ACT BARS THE CITY OF RATON'S RESCISSION CLAIM BASED ON MISREPRESENTATION.**

"A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section."  COLO. REV. STAT. § 24-10-106.  Count Three of the FAC is predicated, at least in part, on allegedly tortious conduct, i.e., misrepresentations.  The Court will dismiss these portions of Count Three for lack of subject-matter jurisdiction under rule 12(b)(1) of the Federal Rules of Civil Procedure.

The rescission claim is largely predicated on misrepresentations and failure to disclose which induced the City of Raton to rely and contract with ARPA.  See FAC ¶¶ 76-84, at 12-13.  Under Colorado law, such a claim could lie in tort, given that the alleged conduct – misrepresentation – is tortious conduct.  Robinson v. Colorado State Lottery Division is illustrative of how rescission can lie, at least partially, in tort.  Regarding certain rescission claims, the Supreme Court of Colorado stated:

> [A] contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for a tort claim asserted by a party detrimentally relying on such negligent misrepresentations. . . .  Thus, the plaintiff who has been fraudulently induced to enter into a contract may either sue to rescind the contract or affirm the contract and sue in tort for the damages cased by the fraudulent act.

179 P.3d at 1004.  According to the Supreme Court of Colorado, "where there is such overlap, claims that could arise in both tort and contract are barred by the [Governmental Immunity Act], while claims arising solely in contract are not subject to the [Governmental Immunity Act]."  Id. The City of Raton's rescission claim implicates such an overlap of contract and tort principles.  Under such circumstances, the Governmental Immunity Act applies to bar the claim.

The City of Raton relies heavily on CAMAS Colorado v. Board of County Commissioners,

in which the Colorado Court of Appeals found that a rescission claim was based purely in contract and thus allowed under the Governmental Immunity Act.  See 36 P.3d at 139.  The Court finds that CAMAS Colorado v. Board of County Commissioners is not applicable.  An examination of the principles governing rescission in both New Mexico and Colorado illuminate why Robinson v. Colorado State Lottery Division is the applicable precedent in this case.

CAMAS Colorado v. Board of County Commissioners cites the following rule for rescission: "Rescission is an equitable remedy that may be allowed upon a showing that an agreement is founded on a mutual mistake of fact."  36 P.3d at 139.  On the other hand, the Colorado Supreme Court in Robinson v. Colorado State Lottery Division discussed misrepresentation or failure to disclose as grounds for rescission.  179 P.3d at 1004.  These two cases illustrate the existence of at least two methods for rescinding a contract.

New Mexico law recognizes a similar distinction.  According to the Supreme Court of New Mexico, "[a]s a general proposition, rescission is allowed where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on." Prudential Ins. Co. of America v. Anaya, 78 N.M. at 104, 428 P.2d at 643.  "Further, rescission may be allowed in certain cases of non-fraudulent, but material, nondisclosure."  McElhannon v. Ford, 134 N.M. at 139, 73 P.3d at 832.  At the same time, contrary to what ARPA has argued, rescission is also available as a result of certain breaches or mistakes.  Rescission is available "'[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances.'"  State ex rel. State Highway and Transp. Dept. v. Garley, 111 N.M. at 385, 806 P.2d at 34 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 152 (1979)).  In Samples v. Robinson, the Supreme Court of New Mexico also recognized that rescission is available:

> Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract or the failure to perform the contract must be in respect of matters which would render the performance of the remainder a thing different in substance from that which was contracted for.

Samples v. Robinson, 58 N.M. at 705, 275 P.2d at 187-88.

These two brands of rescission – that which is based on misrepresentation, and that which is based upon mistake or breach – are each grounded in different theories.  Rescission for misrepresentation relies on allegations of tortious conduct.  Rescission for mistake, however, arises out of the contract claim, rather than on another party's tortious conduct.  Similarly, rescission for breach, where such rescission is allowed, arises out of another party's failure to perform a contractual obligation.  As CAMAS Colorado v. Board of County Commissioners illustrates, such claims, being grounded in a contract, may properly lie outside the scope of the Governmental Immunity Act.

The City of Raton's rescission claim for misrepresentations, unlike the claim discussed in CAMAS Colorado v. Board of County Commissioners, is based on allegations of misrepresentation.  Thus, Robinson v. Colorado State Lottery Division controls and compels a finding that the Governmental Immunity Act bars Count Three of the City of Raton's FAC.  The Court will therefore dismiss the claim to the extent that it is based on misrepresentation.

The City of Raton might be able, however, to state a claim for rescission based on unilateral mistake of fact.  New Mexico courts have stated that rescission is allowed for mutual mistake of fact under some circumstances.  See State ex rel. State Highway and Transp. Dept. v. Garley, 111 N.M. at 386, 806 P.2d at 35.  Moreover, in Twin Forks Ranch, Inc. v. Brooks, 120 N.M. 832, 907 P.2d 1013 (Ct. App.,1995.), the New Mexico Court of Appeals assumed the existence of a cause of action for rescission based on unilateral mistake.  120 N.M. at 835-36, 907 P.2d at 1016-17.  In analyzing

a claim for rescission based on unilateral mistake, the New Mexico Court of appeals stated:

> Plaintiffs sought to rescind the deeds pursuant to the RESTATEMENT (SECOND) OF CONTRACTS § 153 (1981), which provides for rescission if: (1) unilateral mistake is established; (2) the party requesting relief does not bear the risk of mistake; and (3) among other grounds, enforcement of the contract would be unconscionable. Because we find the second element to be dispositive, we restrict our analysis to a discussion of the allocation of risk. . . .

120 N.M. at 835-36, 907 P.2d at 1016-17.

Thus, the Court believes that New Mexico would allow a cause of action based on unilateral mistake, and because such a claim might be grounded solely in contract, and not on the tortious conduct of the other party, the Governmental Immunity Act would not apply to the claim.  That claim for rescission, however, has certain procedural predicates that do not appear to be present in this case.  Most important, a party seeking rescission must return what it received under the contract, and may not enforce the contract and receive contract damages.  In other words, rescission is a remedy that is alternative to contract damages.  This Memorandum Opinion and Order leaves open the possibility that the City Raton may seek leave to amend its Complaint to demonstrate that it meets the requirements for rescission of the contract.

**B.  THE GOVERNMENTAL IMMUNITY ACT BARS THE PORTIONS OF THE CITY OF RATON'S BREACH-OF-COVENANT CLAIM BASED ON MISREPRESENTATION.**

Count Five of the FAC is predicated, at least in part, on allegedly tortious conduct, i.e., misrepresentations.  The Court will dismiss these portions of Count Five for lack of subject-matter jurisdiction under rule 12(b)(1) of the Federal Rules of Civil Procedure for substantially the same reasons for which it dismisses the portions of the rescission claim grounded in misrepresentations.

As the Colorado Supreme Court noted in Robinson v. Colorado State Lottery Division, a claim that is "based on the misrepresentation of facts" is "fundamentally a tort theory."  179 P.3d

at 1004.  See id. at 1005 (noting that "a claim that is supported by allegations of misrepresentation or fraud is likely a claim that could lie in tort").  The City of Raton's claim for damages based on an alleged breach of the implied covenant of good faith and fair dealing is based on ARPA's alleged "misrepresent[ation] [of] the costs of the Project, the progress of the Project, its economic feasibility and its superiority to other alternatives available to the City and Member Municipalities for acquiring power."  FAC ¶ 96, at 15. Given the Colorado case law on point, it is difficult to escape the conclusion that, like the rescission claim based on misrepresentation, the claim for breach of the covenant of good faith and fair dealing, when based on the same misrepresentation, does, or at least could, sound in tort, and is therefore barred under the Governmental Immunity Act.

The Court emphasizes that, under the Governmental Immunity Act, a court focuses not on the form of a claim, but on whether it could be pled in tort.  While causes of action for breach of the covenant of good faith and fair dealing are recognized as contract remedies, the City of Raton has attempted to frame the claim up in terms of a contract theory, but has articulated a harm arising out of misrepresentation, which is tortious conduct.[6]

Nevertheless, the City of Raton also contends that ARPA breached the covenant of good faith and fair dealing by "intentionally and wrongfully using the Organic Contract and Power Supply Agreement to the detriment of the City by seeking to hold the City responsible for massive cost overruns and additional bond issues that the City never approved."  FAC ¶ 96, at 15.  Such allegations arise out contractual duties, rather than duties recognized in tort law.  The Supreme Court

----

[6] Even if it Governmental Immunity Act did not bar the claim for breach of the covenant of good faith that is based on misrepresentation, the Court would dismiss the tort-based aspect of the claim under rule 12(b)(6), because New Mexico and Colorado do not allow a cause of action in tort for breach of the covenant of good faith except in insurance contracts, or possibly contracts that are adhesive in nature.  The complaint contains no allegations that would suggest that such a relationship exists between ARPA and the City of Raton.

of New Mexico has explained: "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Watson Truck & Supply Co., Inc. v. Males, 111 N.M. at 60, 801 P.2d at 642 (citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." Id. Colorado law similarly recognizes "that every contract contains an implied duty of good faith and fair dealing." Amoco Oil Co., v. Ervin, 908 P.2d 493, 498 (Colo. 1995). Moreover, "violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract." City of Golden v. Parker, 138 P.3d 285, 292 (Colo. 2006).

Noting that, in determining whether a claim lies in tort, a court must disregard labels and examine the nature of the harm and the relief sought, the Court finds that a claim for breach of the covenant of good faith and fair dealing may survive governmental immunity as long as it is not based on factual allegations that would make it capable of being pled as a tort. As part of Count Five of its FAC, the City of Raton lists a breach of contractual duty that arises out of the good faith performance doctrine. The remaining question, therefore, is whether the City of Raton has pled that aspect of its breach-of-covenant claim sufficiently to survive dismissal under rule 12(b)(6) of the Federal Rules of Civil Procedure. Under rule 12(b)(6), a court must determine "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969). Accepting the City of Raton's allegations as true, the Court finds that it has stated a claim based in contract. The Court will therefore not dismiss that portion of the claim.

## IV.   NEW MEXICO COURTS WOULD EXTEND COMITY AND APPLY THE GOVERNMENTAL IMMUNITY ACT TO COUNTS THREE AND FIVE OF ARPA'S FIRST AMENDED COMPLAINT.

ARPA contends that the Governmental Immunity Act applies to the City of Raton's claims

for rescission and breach of the covenant of good faith and fair dealing.  ARPA maintains that the

Governmental Immunity Act applies to these claims, either because the Court's analysis in its Sept.

17 MOO applies to the entire case, or because the factors articulated in <u>Sam v. Sam</u> lead to the same

result when applied to these two claims.  The Court concludes that its earlier analysis does not

obviate the need to consider and apply the <u>Sam v. Sam</u> factors, although after applying the factors

the Court reaches the same result.

      **A.**    **THE COURT FINDS IT NECESSARY TO APPLY THE <u>SAM V. SAM</u> FACTORS ON A CLAIM-BY-CLAIM BASIS.**

The Court disagrees with ARPA's argument that the analysis from the Sept. 17 MOO applies

to the entire case.  The Court instead finds that it is necessary to apply the <u>Sam v. Sam</u> factors on

a claim-by-claim basis to determine whether New Mexico would recognize Colorado's sovereign

immunity principles and shield ARPA from liability for each claim.[7]  The necessity of using the

claim-by-claim approach appears appropriate when the Court considers New Mexico's comity

analysis.  In <u>Sam v. Sam</u>, the Supreme Court of New Mexico stated that it would refuse to extend

immunity only where doing so would "offend a sufficiently strong public policy."  134 P.3d at 767.

In a lawsuit involving many claims grounded in various theories, one state's sovereign immunity

law might allow some claims that another state's would preclude.  In some instances, the differences

in scope of sovereign immunity coverage might reflect different strong public policy choices by the

---

[7] In its Motion, ARPA raised the possibility that the New Mexico Joint Powers Agreement Act, NMSA 1976 § 11-1-6, compelled a finding that the Court should extent immunity to ARPA under the terms of the Governmental Immunity Act.  ARPA did not elaborate on the argument and cited no case law to support the proposition that the Joint Powers Agreement Act, by itself, obligates New Mexico to recognize the sovereign immunity statute of another state.  The Court has independently reviewed the New Mexico Joint Powers Agreement Act and cannot find a basis in the Act for Colorado Immunity in this case.  In any case, because the Court has found it appropriate to apply the Governmental Immunity Act under principles of comity, the Court finds it unnecessary to speculate about the effect of the Joint Powers Agreement Act on cases such as this one.

respective states.  For example, in <u>Sam v. Sam</u>, the Supreme Court of New Mexico recognized Arizona's sovereign immunity, but to a limited degree.  <u>See</u> 134 P.3d at 768.  Arizona had a one-year statute of limitations on tort claims, whereas New Mexico allowed two years for such suits to be brought against a state entity.  <u>See</u> 134 P.3d at 768.  Noting New Mexico's strong policy of "providing compensation or access to the courts to residents of the state," the Supreme Court of New Mexico in <u>Sam v. Sam</u> extended sovereign immunity to Arizona, subject to New Mexico's two-year statute of limitations.  <u>See</u> 134 P.3d at 768.

Sam v. Sam illustrates the flexible manner in which the Supreme Court of New Mexico applies its policy analysis.  Rather than all-or-nothing, a court must assure that, for each claim for which it applies another state's sovereign immunity rules, the application of the other state's rules does not offend the state's public policy in a substantial way.  Furthermore, one state may recognize a cause of action that another does not, or may have different requirements to sustain an analogous cause of action.  Differences such as these, just like differences in sovereign-immunity statutes, may be born out of important policy goals.  The Court is convinced that the case-by-case approach to the comity analysis better enables a court to account for such possibilities.  The Court will accordingly test each claim to determine whether New Mexico would extend comity and apply Colorado's sovereign immunity law.

**B.  NEW MEXICO WOULD RECOGNIZE THE GOVERNMENTAL IMMUNITY ACT WITH REGARD TO ARPA'S RESCISSION CLAIM.**

Under <u>Sam v. Sam</u>, a court must consider various factors in determining whether to recognize another state's sovereign immunity law.  Those factors include: "(1) whether the forum state would enjoy similar immunity under similar circumstances. . . (2) whether the state sued has or is likely to extend immunity to other states. . .  (3) whether the forum state has a strong interest

in litigating the case. . .  and (4) whether extending immunity would prevent forum shopping."

Sam v. Sam, 2006-NMSC-022, ¶ 22, 134 P.3d 761, 767.   Applying those factors, the Court

concludes that New Mexico courts would apply the Governmental Immunity Act to the rescission

and breach-of-covenant claims that the City of Raton raises in this case.

### 1.   New Mexico Public Entities Would Enjoy Similar Immunity Under Similar Circumstances.

Under the first factor, the City of Raton argues that the Governmental Immunity Act defines

its coverage more broadly than the New Mexico Tort Claims Act.  See Response at 4.[8]  Under the

Tort Claims Act, New Mexico grants its public entities  immunity against claims "based on

traditional tort concepts of duty and the reasonably prudent person's standard of care in the

performance of that duty."  NMSA 1978 § 41-4-2.  Similarly, Colorado affords immunity for actions

that "lie in tort or could lie in tort."  COLO. REV. STAT. § 24-10-106.

The Court need not determine, for purposes of this motion, whether the Colorado law would

grant more immunity to its state entities than New Mexico would.  As the Court noted in its Sept.

17 MOO, however, New Mexico and Colorado state entities would enjoy similar immunity under

similar circumstances, though the protection may not be identical.  See Sept. 17 MOO at 40.  Like

New Mexico, Colorado waives immunity for contract claims and shields the state from immunity

for tort claims except to the extent that the statutory requirements are met.  The New Mexico

Legislature has expressly stated its policy reasons for enacting the Tort Claims Act and retaining a

presumption of sovereign immunity except where that immunity has been waived:

---

[8] The Court notes that the City of Raton's argument on this point comes close to being a concession that, if the Governmental Immunity Act applies in this case, it would bar the rescission claim based on misrepresentations.  See Response at 5.  The Court will not, however, treat the City of Raton's argument as a concession, given that the City of Raton is arguing in the alternative.

-34-

> The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity. On the other hand, the legislature recognizes that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done. Consequently, it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act.

NMSA 1978 § 41-4-2(A). Similarly, Colorado's Governmental Immunity Act is designed to protect the state treasury from excessive tort liability. See City of Aspen v. Meserole, 803 P.2d 950, 951 (Colo. 1990)("In 1986, the General Assembly substantially amended the Governmental Immunity Act partially in response to both case law and to a growing problem of excessively high municipal insurance rates."). Thus, both states' statutes are grounded in similar policy concerns – restricting tort liability against the state.

The Court is not persuaded that both states define tort liability so differently that the application of Colorado's statute would lead to substantially different results. The Colorado statute and the case law interpreting it suggest a concern that parties will frame up tort claims in terms of contract as a means of avoiding the reach of the Governmental Immunity Act. Thus, when parties attempt to sue the state for violations of tort duties, the Governmental Immunity Act will apply, regardless of the labels used in the complaint. Similarly, the New Mexico Legislature has expressed a desire to limit liability for breaches based on "traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." NMSA 1978 § 41-4-2. While the Court cannot say that Colorado and New Mexico would give the public entities the same immunity under precisely the same circumstances, the Court can say that the states are likely to give similar immunity under similar circumstances. Given such similarities in the states' respective

sovereign-immunity statutes, the Court finds that the first factor – whether New Mexico public entities enjoy similar immunity as that which Colorado public entities enjoy – weighs in favor of granting comity.

       2.      **Whether the State Sued Has or is Likely to Extend Immunity to Other States.**

In an earlier pleading, ARPA conceded that "it is unclear whether Colorado would apply New Mexico's immunity statute." Defendant's Motion to Stay, or in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed February 15, 2008 (Doc. 5). At the same time, the Court notes that Colorado, like New Mexico, has expressed a general approval of granting comity in the appropriate case: "It is conducive to mutual good will between states, necessary to law enforcement, and promotive of like respect exercised between states that observe such neighborly amenities. It implies mutuality and reciprocity." Mosko v. Matthews, 284 P. 1021, 1023 (Colo. 1930).

While the Court cannot be certain whether Colorado would grant similar immunity to other states, the Court believes that New Mexico would likely extend immunity by comity, given that New Mexico "has an interest in according immunity by comity in this instance in order to encourage [Colorado] to extend immunity to a New Mexico governmental entity in the future." Sam v. Sam, 134 P.3d at 767. The Supreme Court of New Mexico has stated: "As a general rule, comity should be extended. Only if doing so would undermine New Mexico's own public policy will comity not be extended." Id. Given that New Mexico, as a rule, will extend comity, unless doing so offends New Mexico's public policy, public policy constitutes the heart of the comity analysis, with the other concerns being secondary.

As the Court noted in the Sept. 17 MOO:

> [T]he Supreme Court [in <u>Sam v. Sam</u>] relied on a case dealing with whether New Mexico would recognize, under the principle of comity, an uncle-niece marriage entered into in Costa Rica.  <u>See id</u>. 2006-NMSC-022, ¶¶ 19- 21, 134 P.3d at 766-677 (relying on  <u>Leszinske v. Poole</u>, 110 N.M. 663, 668, 798 P.2d 1049, 1054 (N.M. App. 1990).  Although the marriage "undoubtedly offended the public policy of New Mexico to some degree," it did not do so sufficiently to prevent the court from recognizing the Costa Rican marriage under comity.  <u>Sam v. Sam</u>, 2006-NMSC-022, ¶¶ 19- 21, 134 P.3d at 766-67.  Although <u>Leszinske v. Poole</u> did not deal with sovereign immunity, the Supreme Court in <u>Sam v. Sam</u> believed that <u>Leszinske v. Poole</u> appropriately illustrated the high value New Mexico places on comity.

Sept. 17 MOO at 41-42.  Given that New Mexico places such a high value on granting comity in other cases, the Court does not find that doing so in this case would substantially offend New Mexico public policy.  Ultimately, the two states' sovereign immunity statutes both aim to control public entities' tort liability by restricting such claims.  In other words, both states attempt to limit claims against the state that are grounded in tort law.  At the same time, both states give individuals the ability to have a day in court against public entities under certain circumstances.  <u>See</u> <u>Sam v. Sam</u>, 134 P.3d at 768 ("New Mexico has a particular interest in providing compensation or access to the courts to residents of the state.").  The Court does not believe that applying Colorado's statute, which might bar some claims or remedies that New Mexico law would allow – and it has not been established that Colorado's statute would have such an effect – would so restrict claims against the state of Colorado that such application would offend New Mexico public policy.  The Court notes that both states adopted their sovereign immunity statutes for similar reasons: to protect the public treasury from excessive tort liability, given the vast scope of the states' responsibility for many aspects of their citizens' lives.

The Court is also unconvinced that New Mexico's approach to rescission claims against state entities is more expansive than Colorado's, or that Colorado's approach to determining whether rescission claims are subject to its sovereign immunity statute is inimical to New Mexico public

policy.  Colorado does not have a per se rule under which rescission is never available as a remedy against public entities.  Rather, under Colorado case law, a rescission claim will lie against the state if it is grounded in contract, see CAMAS Colorado, Inc. v. Board of County Commissioners, 36 P.3d at 139, whereas rescission claims are barred if they are predicated upon tortious conduct, see Robinson v. Colorado State Lottery Division, 179 P.3d at 1004.  In other words, the focus, in determining whether the Governmental Immunity Act covers a cause of action, is on whether the plaintiff is suing for tortious conduct rather than under a contract.  While New Mexico courts have not dealt squarely with the issue, the Court observes that the New Mexico Tort Claims Act expressly applies to claims based on breaches of tort duties.  In light of the similar goals of both states' sovereign immunity statutes, the Court believes that New Mexico would extend comity here.

### 3.        Whether the Forum State Has a Strong Interest in Litigating the Case.

Given that the third factor of the Sam v. Sam analysis makes reference to the forum's interest in litigating the case, rather than just individual claims, the Court believes its analysis of this factor in the Sept. 17 MOO applies to the claims at issue in this motion.  In the Sept. 17 MOO, the Court observed that the relative public interest of Colorado and New Mexico in litigating this case is difficult to evaluate, and that Colorado's interest may be greater on some claims, and New Mexico's may be greater on others.  See Sept. 17 MOO at 43.  While the Court may not be able to say definitely which state has the greatest interest in litigating this case, the Court can say, however, that, because New Mexico law governs both claims, and because the City of Raton is a New Mexico entity, New Mexico has a strong interest in litigating the case.  Moreover, the Court does not believe that circumstances have changed in the succeeding three months to suggest  a different analysis at this stage in the litigation.  This factor therefore continues to weigh in favor of granting comity.

### 4.   Whether Extending Immunity Would Prevent Forum Shopping.

The parties have not dedicated significant argument to whether applying Colorado's Governmental Immunity Act would discourage forum shopping.  It is telling, however, that the City of Raton sought to keep the case in New Mexico, and has strenuously sought to escape Colorado's Governmental Immunity Act, presumably because Colorado's sovereign immunity law might bar more of its claims than the New Mexico Tort Claims Act would bar.  The Court has not determined that such an assessment is true.  Nevertheless, if plaintiffs perceive Colorado's law to be more restrictive in allowing claims against the state, those plaintiffs may seek other fora in which to bring their claims.  Thus, extending comity has some effect of eliminating one incentive for forum shopping.  While the Court cannot with certainty conclude that extending immunity in this case will discourage forum shopping, it is sufficient to note that the fourth factor is, at most, neutral.  It does not outweigh the general presumption that New Mexico courts have in favor of comity.  Thus, considering all of the factors, the Court believes that New Mexico would extend immunity to ARPA under Colorado's Governmental Immunity Act with respect to the City of Raton's rescission claim.

### B.   NEW MEXICO WOULD RECOGNIZE THE GOVERNMENTAL IMMUNITY ACT WITH REGARD TO ARPA'S BREACH-OF-COVENANT CLAIM.

Much of the analysis regarding the City of Raton's rescission claim applies to the breach of covenant claim.  A significant portion of the claim for breach of the covenant of good faith and fair dealing derives from the same set of allegations upon which the rescission claim is founded.  The claims are therefore related to each other.  Thus, the Court focuses its analysis on whether there is anything unique about the breach-of-covenant claim, or anything that sets it apart from the rescission claim, to the degree that it is necessary to refuse comity.  The Court finds, however, that there is nothing about the breach-of-covenant claim to compel the Court not to extend Colorado's

Governmental Immunity Act to that claim.

The City of Raton argues that New Mexico has a significant public policy of permitting parties to a contract to recover in equity and damages for the other party's bad-faithconduct.  See Response at 6.  New Mexico recognizes that its law implies a covenant of good faith and fair dealing in every contract .  See Spencer v. J.P. White Building, 92 N.M. 211, 215, 585 P.2d 1092, 1096 (1978).  The Court agrees that New Mexico public policy supports the notion that contracting parties must act in good faith and deal fairly.  Nevertheless, there is no indication that Colorado does not have a similar policy.  Nor has the City of Raton demonstrated that Colorado's Governmental Immunity Act would offend New Mexico's policy of implying such a covenant in all of its contracts. Under the New Mexico Tort Claims Act, "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."  NMSA § 37-1-23(A). This "written contract" exception to New Mexico's sovereign immunity allows the state to control its amenability to suits by the terms of its written agreements.  ARPA argues that, in light of that principle, the New Mexico Tort Claims Act would bar an implied, unwritten claim for breach of the covenant of good faith and fair dealing.  See Reply at 9.  The Court need not make such a finding. The Court agrees, however, with the implication that New Mexico has not imbued the implied covenant of good faith and fair dealing with a special status, based on public policy, that would make it offensive for such a claim to be barred, in whole or in part, by another state's sovereign-immunity statute.

The Court therefore concludes that the Governmental Immunity Statute applies to the breach-of-covenant claim as well as to the rescission claim.  In light of that determination, the Court will apply the Governmental Immunity Act to both claims to determine whether the Act bars either claim.

**IT IS ORDERED** that the Defendant's Motion to Dismiss Counts Three and Five of the Amended Complaint is granted in part and denied in part.  The Court will dismiss the rescission claim based on misrepresentation.  The Court will also dismiss the rescission claim for unilateral mistake. The City of Raton may seek leave to amend its Complaint to re-plead its claim for rescission for unilateral mistake and to show that it meets the requirements for rescission for unilateral mistake.  The Court will also dismiss the portion of the claim for breach of the covenant of good faith and fair dealing that is predicated on misrepresentation, but will allow the portion grounded in contract to proceed.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Luis Stelzner
Nannette M. Winter
Sheehan, Sheehan & Stelzner, P.A.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Lynn H. Slade
Erin E. Langenwalter
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

– and –

Craig N. Johnson
Kutak Rock LLP
Denver, Colorado

     *Attorneys for the Defendant*