## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CITY OF RATON, a municipal corporation
and political subdivision of the State of
New Mexico,

        Plaintiff,

vs.                                      No. CIV 08-0026 JB/WDS

ARKANSAS RIVER POWER AUTHORITY,
a public power corporation and political
subdivision of the State of Colorado,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the City of Raton's Motion for Leave to Amend the First Amended Complaint, filed January 9, 2009 (Doc. 100).  The Court held a hearing on February 26, 2009.  The primary issues are: (i) whether Plaintiff City of Raton's Motion should be denied because of undue delay or prejudice to Defendant Arkansas River Power Authority ("ARPA"); and (ii) whether the City of Raton has pled cognizable theories of rescission for unilateral mistake, mutual mistake, and substantial breach.  The issue whether the City of Raton has pled cognizable theories of rescission gives rise to several sub-issues that the Court must address.  Those issues are: (i) whether the agreements that the City of Raton wishes to rescind are valid contracts amenable to rescission; (ii) whether the Court should analyze the rescission-of-contract claims under Colorado law or under New Mexico law; (iii) whether there is a cause of action for rescission based on unilateral mistake; (iv) whether the misapprehension about the cost of the Lamar Repowering Project constitutes a mistake that would give rise to rescission under either a unilateral mistake or mutual mistake theory; and (v) whether the rescission claim based on any one of the three

theories – unilateral mistake, mutual mistake, or substantial breach – would otherwise survive a motion to dismiss such that allowing an amendment to add the claim would not be futile. The Court finds that there has been no undue delay or prejudice in seeking the amendment. The Court finds that Colorado law applies to the evaluation of the proposed rescission claims and that the City of Raton would be able to survive a motion to dismiss on any one of its three contract-based rescission theories. The Court will therefore grant the Motion and permit the City of Raton to amend its Complaint to add the rescission claim.

## FACTUAL BACKGROUND

ARPA is a political subdivision of the State of Colorado, formed by six Colorado municipalities and the City of Raton to provide wholesale electric power to its member municipalities. See Motion at 1. The City of Raton entered into the Organic Contract and the Power Sales Agreement forming ARPA in 1979. See Complaint for Declaratory Judgment, Breach of Contract, Misrepresentation, Violation of the New Mexico Constitution and Permanent Injunctive Relief ¶ 10, at 2, filed January 9, 2008 ("Complaint"). Pursuant to the Organic Contract and the Power Sales Agreement, the City of Raton agreed to "purchase and obtain all [of its] wholesale power and energy requirements from [ARPA]." Complaint ¶ 13, at 3 (internal quotation marks omitted). The New Mexico Department of Finance and Administration ("DFA") approved the Organic Contract on October 31, 1979. See Complaint ¶ 11, at 2. While the Power Sales Agreement has a choice-of-law provision, the Organic Contract does not. The Power Sales Agreement states: "This agreement shall be interpreted, governed, and construed under the laws of the State of Colorado." See Exhibit 2 to First Amended Complaint, Power Sales Agreement ¶ 24, at 15, filed June 13, 2008 (Doc. 23-6).

The Organic Contract provides a mechanism for approving projects that ARPA chooses to

undertake.  See Organic Contract § 2.4, at 7.  The Organic Contract states: "[T]he Authority, prior

to issuing any bonds in connection with a Project or a Reliability Project, as hereinafter defined, will

request the approval of the Municipalities for the financing of the Project or the Reliability Project

from the proceeds of bonds."  Organic Contract § 2.4, at 7.  Before the issuance or sale of bonds to

provide funds for a project, the Organic Contract requires ARPA to submit a written notice to each

Municipality.  See id. § 2.4.2, at 10.  The written notice

> shall contain a description of the Project or Reliability Project, the projected sources
> and uses of funds for all aspects of the construction and testing of the Project or
> Reliability Project, and a statement that, in the opinion of the Authority, the Project
> or Reliability Project is economically feasible and is necessary for the Authority to
> meet its commitment to supply the wholesale power and energy requirements of the
> Municipalities, together with an explanation of the Authority's basis for this opinion.

Organic Contract  § 2.4.2, at 10-11.  Unless an extension of time applies, the municipalities are

required to give notice of approval or disapproval of a project within sixty days after receiving

written notice as described in § 2.4.2.  See Organic Contract § 2.4.3, at 11.  The Organic Contract

deems as approval a municipality's failure to provide the written notice of approval or disapproval

within the sixty-day time period.  See id.

If a municipality disapproves a project, ARPA can proceed with the project and with the

issuance of bonds, provided that certain procedures outlined in the Organic Contract are met.  See

id. § 2.4.4(b)(outlining the manner in which ARPA may proceed with a project where one or more

municipalities has disapproved of a project).  If ARPA continues with a project that a municipality

has disapproved, ARPA must notify the disapproving municipality of its intent to move forward and

to issue bonds for the project.  See id. § 2.4.4(c), at 12.  A disapproving municipality then has two

options:

> (i)      Option One.  If a Municipality elects Option One, it will continue to remain
>          a constituent member Municipality of the Authority and it will be entitled to

participate in all future Projects or Reliability Projects approved by the Authority, subject, however, to the provisions of this Section 2.4. A Municipality selecting Option One will continue to be obligated to pay to the Authority its proportionate share of all expenses incurred by the Authority, including debt service, for all Projects, Reliability Projects, Planning, Operation, and Maintenance Expenditures and all other proper and appropriate expenses for which the Authority has become obligated up to the time of the effective date of the selection by the Municipality of Option One. Further, the disapproving Municipality electing Option One shall be obligated to pay its proportionate share of all other expenses incurred by the Authority subsequent to its selection of Option One, except those costs, including debt service, directly allocated to the disapproved Project or Reliability Project, as determined by generally accepted accounting principles and the Uniform System of Accounts.

(ii)      Option Two. If a Municipality elects Option Two, it will sever its future relationship with the Authority and will not be entitled to participate in any future Projects or Reliability Projects approved by the Authority. A Municipality Selecting Options Two will be entitled to receive power from any Project or Reliability Project that it participated in prior to the selection of Option Two and will continue to be obligated to pay the Authority its proportionate share of all expenses incurred by the Authority, including debt service, for all Projects, Reliability Projects, Planning, Operation and Maintenance Expenditures and all other proper and appropriate expenses for which the Authority has become obligated up to the time of the effective date of the selection by the Municipality of Option Two. Notwithstanding the foregoing, in the event that all other Municipalities unanimously agree to assume the pre-existing obligations as described above, the disapproving Municipality shall be relieved of any other financial obligations to the Authority.

Organic Contract § 2.4.4(c)(i)-(ii).

In 2004, ARPA's board unanimously approved a plan to "repower" an existing natural gas generation facility in Lamar, Colorado, changing the facility into a coal-fired plant and increasing its capacity to 38.5 megawatts. See Exhibit 3 to Motion, Notice of Intent to Commit Funds to Acquire, Construct, and Install the Lamar Repowering Project at 1, dated July 23, 2004 (Doc. 100-7)("First Notice of Intent to Commit Funds"). ARPA decided to fund the Lamar Repowering Project through "external means ('permanent financing') by the issuance of revenue bonds." Id.

-4-

As required under the Organic Contract, the First Notice of Intent to Commit Funds provided a projection of the costs for the Lamar Project: "Estimated Capital Costs. It is presently contemplated that the engineering, procurement, and construction cost of the project (exclusive of interest during construction and bond issuance costs) will be in the range between $61 and $66 million."  First Notice of Intent to Commit Funds at 3.

In response to the terms of the First Notice of Intent to Commit Funds, the City of Raton passed two city ordinances approving the Project and the issuance of bonds that ARPA proposed. In accordance with the ordinances and with the City of Raton's approval, the Organic Contract was amended to reflect the approval of the Lamar Repowering Project and the issuance of bonds for up to $66 million to fund it.  See Exhibit 4 to Motion, Third Amendment to Organic Contract Creating and Establishing the Arkansas River Power Authority as a Separate Governmental Entity, dated November 18, 2004 (Doc. 100-8)("Third Amendment").

Nearly a year late, on October 17, 2005, ARPA issued a second notice of intent to commit funds for the Lamar Repowering Project, requesting the municipalities' approval of up to $10 million in additional funds.  See Exhibit 6 to Motion, Second Supplemental Notice of Intent to Commit Funds to Acquire, Construct, and Install the Lamar Repowering Project at 2, dated October 17, 2005 (Doc. 100-10)("Second Notice of Intent to Commit Funds").  In the Second Notice of Intent to Commit Funds, ARPA informed the municipalities that the cost of completing the Lamar Repowering Project might exceed the original cost estimates despite ARPA's best efforts to manage costs.  See id. at 1.  As reasons for the possible increases in costs, ARPA cited, among other things, escalating steel prices driven by worldwide demand, recent unforeseen hurricane disasters in the Gulf Coast region, and a global shortage of concrete which created unexpected cost increases.  See id.  ARPA also stated that the "single most critical cost associated with development of the

Repowering Project is the interest rate on the Bonds.  Current long-term municipal bond interest rates are at or near forty-year lows." Id.  On January 27, 2006, the City of Raton adopted a city ordinance authorizing the $10 million increase that ARPA requested in the Second Notice of Intent to Commit Funds.  See Motion at 5.

After the City of Raton had approved the Lamar Repowering Project and the $10 million in additional funding for the project, the cost estimates continued to increase.  Consequently, ARPA issued two more notices – one on March 12, 2007, and another on May 5, 2008 – requesting authorization for issuance of bonds to generate, respectively, $18 million and $20 million to fund the Lamar Repowering Project.  See Exhibit 7 to Motion, Third Supplemental Notice of Intent to Commit Funds to Acquire, Construct, and Install the Lamar Repowering Project, dated March 12 2007 (Doc. 100-11)("Third Notice of Intent to Commit Funds"); Exhibit 8 to Motion, Fourth Supplemental Notice of Intent to Commit Funds to Acquire, Construct, and Install the Lamar Repowering Project, dated May 5, 2008 (Doc. 100-12)("Fourth Notice of Intent to Commit Funds"). Although the other municipalities approved the additional funds, the City of Raton rejected the proposals contained in the last two notices.  See Defendant Arkansas River Power Authority's Response to City of Raton's [Second] Motion for Leave to Amend the First Amended Complaint at 7, filed January 30, 2009 (Doc. 110)(brackets in original)("Response").

## PROCEDURAL BACKGROUND

In the Court's Memorandum Opinion and Order, entered December 5, 2008 (Doc. 83) ("MOO"), the Court dismissed Count III of the City's Amended Complaint, which asserted a claim for rescission based on misrepresentation and, alternatively, unilateral mistake.  See MOO at 41. The primary basis for the Court's decision was that the City of Raton's claim was grounded on misrepresentations and non-disclosures by ARPA that could have been pleaded in tort, and therefore

the Colorado Governmental Immunity Act ("CGIA") barred this claim.  See MOO at 26-29.  The

Court also suggested that the City of Raton's rescission claim based on unilateral mistake failed to

satisfy "certain procedural predicates."  Id. at 29.

The Court also stated, however, that the City of Raton might seek leave to amend its

rescission claim.  In the MOO, the Court reminded the parties that, at the hearing on ARPA's

Motion to Dismiss Counts 3 and 5, the Court had informed the parties that the City of Raton could

seek leave to amend to include a claim for rescission based on mutual mistake, but not for unilateral

mistake.  See MOO at 2 n.1.  The Court stated in its MOO, however, that, "on further review of New

Mexico law," the Court would allow the City of Raton to seek leave to amend to add a claim for

unilateral mistake of fact.  MOO at 2 n.1.  See id. at 28 ("Raton might be able, however, to state a

claim for rescission based on unilateral mistake of fact.  New Mexico courts have stated that

rescission is allowed for mutual mistake of fact under some circumstances.").  The Court also stated

that the City of "Raton may seek leave to amend its Complaint to re-plead its claims for rescission

for unilateral mistake and to show that it meets the requirements for rescission for unilateral

mistake."  MOO at 41.  In addition, the Court noted that rescission may be based on one party's

breach of the contract, as long as the breach goes to the root of the contract and renders the

performance substantially different than for what the parties contracted.  See id. at 11.

Before the City of Raton filed this motion, the City of Raton's counsel contacted ARPA's

counsel.  ARPA did not respond to the City of Raton's request for ARPA's position, so the City of

Raton deemed this motion as opposed.

Pursuant to rule 15(a)(2) of the Federal Rules of Civil Procedure, the City of Raton submits

a motion for leave to amend the First Amended Complaint.  In its Motion, the City of Raton argues

that it seeks to rescind three contractual agreements that were entered into either as a result of the

City of Raton's unilateral mistake of fact, or of Raton's and ARPA's mutual mistake of fact.  See Motion at 2.  Alternatively, the City of Raton seeks to rescind the three agreements because of ARPA's substantial and fundamental breach of the terms of those agreements.  See id.  According to the City of Raton's Motion, the three agreements it wishes to rescind are: (i) the contract that resulted from ARPA's First Notice of Intent to Commit Funds and the city ordinances that the City of Raton adopted authorizing the Lamar Repowering Project with $66 million in funding; (ii) the contract that resulted from ARPA's Second Notice of Intent to Commit Funds and the city ordinances that the City of Raton passed approving an additional $10 million in funding; and (iii) the Third Amendment to the Organic Contract, dated November 18, 2004, which amended the Organic Contract to accommodate the issuance of bonds for the Lamar Repowering Project as described in the First Notice of Intent to Commit Funds.  See Motion at 3.

ARPA asserts that the Court should deny the City of Raton's Motion as untimely.  See Response at 11.  ARPA also contends that the proposed amendment would make the City of Raton's rescission claim a moving target and would unduly prejudice ARPA.  See id. at 13.  ARPA argues that the City of Raton has attempted to recharacterize its rescission claim multiple times after the Court has dismissed the claim.  See id.  ARPA also argues that the Court should deny the amendment on the grounds of futility.  See id. at 15.

ARPA's futility argument rests on the contention that the rescission claim that the City of Raton seeks to add would fail as a matter of law.  ARPA insists that the City of Raton made no mistake of fact, unilateral or otherwise, sufficient to support a rescission claim.  ARPA argues that the City of Raton's member on the ARPA board testified that he expected cost overruns, and that his expectation of cost overruns belies any contention that the City of Raton approved the Lamar Repowering Project based on a mistake of fact.  See id. at 16-17; Exhibit A to Response, Deposition

of Glenn Fisher at 126:16-127:16 (taken December 12, 2008)(Doc. 110-2)("Fisher Depo."); id. at 129:4-15.

ARPA also contends that, even if the City of Raton approved the Lamar Repowering Project and the bond issuances based on a mistaken understanding of what the actual costs would be, such a mistake involves a mistaken belief about future events rather than a mistake of fact.  See Response at 17.  ARPA cites New Mexico case law standing for the proposition that rescission for mistake of fact is appropriate only where the mistake relates to facts as they exist at the time of a contract's execution and not to facts arising from the contract's performance.  See id. (citing State Ex rel Highway and Transportation Dept. v. Garley, 111 N.M. 387, 806 P.2d 32, 36 (1991), and Quintana v. Motel 6, Inc., 102 N.M. 229, 693 P.2d 597, 599 (Ct. App. 1984)).  Lastly, ARPA argues that the City of Raton failed to allege a breach of contract which would warrant rescission.  See Motion at 19.  ARPA insists that the ordinary remedy for breach of contract is damages and not rescission. See id. at 21.  ARPA argues that, even if ARPA breached in the manner City of Raton asserts – i.e., by not completing the Lamar Repowering Project on time within the original cost estimates – such a breach of contract is not one that undercuts the fundamental purpose of any contract that exists between ARPA and the City of Raton.  See Motion at 22.  ARPA asserts that the fundamental purpose of the Lamar Repowering Project was to meet the long-term electricity needs of ARPA's member-municipalities and that the Lamar Repowering Project's purpose has not been thwarted because of the cost overruns.  See id.  ARPA maintains that an increase in cost on a large, capital construction project is not a "substantial failure" of consideration that would give rise to a right of rescission as a matter of law.  Id. at 23.

The City of Raton replies that there was no undue delay in its request to amend its Complaint to add a rescission claim, given that it brought this Motion based on the Court's MOO, which stated

that the City of Raton would be permitted to seek leave to amend its Complaint to plead rescission based on contract theories.  See City of Raton's Reply on its Motion for Leave to Amend the First Amended Complaint at 3, filed February 13, 2009 (Doc. 116)("Reply").  The City of Raton also contends that no prejudice would result from its proposed amendment, given that the discovery deadline has been extended, that only one deposition has been taken, and that the factual allegations underlying the original Complaint and the proposed amendment are similar.  See Reply at 6. Finally, the City of Raton contends that its Motion is not futile, because there were mistakes of fact, and those mistakes of fact were made at the time of contracting.  See Reply at 6.  The City of Raton also maintains that ARPA is in breach, and that its breach is substantial and fundamental, given that the costs are now twice what was originally projected, and that the project is long overdue and yet to be completed.  See id. at 10.

At the hearing, the Court prompted the City of Raton to clarify its position regarding contract it wished to rescind and what, ultimately, it was seeking from this lawsuit.  The City of Raton explained that what it wished to rescind was the Third Amendment to the Organic Contract. See Transcript of Hearing at 62:7-9 (February 26, 2008)(Winter)("Tr.").[1]  The City of Raton also wants rescinded any indication that it approved the Lamar Repowering Project.  See id. at 62:1-2 (Winter).  The City of Raton argued at the hearing that ARPA breached the Third Amendment to the Organic Contract by continually sending notices requesting approval of additional funds to the point that the project appeared fundamentally different than to what the City of Raton originally agreed.  See Tr. at 62:12-22 (Winter).

After the hearing, the City of Raton and ARPA submitted letters to the Court containing legal

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

authorities and arguments regarding partial rescission.  See Letter From Nann Wilson to the Court, dated March 4, 2009 (Doc. 125); Letter from Craig N. Johnson to the Court, dated March 10, 2009 (Doc. 129).  The Court has considered the arguments and authorities raised in these letters and treated the letters as supplemental briefing.

## THE LAW REGARDING MOTIONS TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

> Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay.  Furthermore, where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.

Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)(internal citations, quotation marks, and bracket omitted).  See Duncan v. Manager, Dep't of Safety, City & County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(quoting Frank v. U.S. West, Inc. and stating that resolving the issue whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court").  "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Schools, No. CIV 05-1165 JB/RLP, 2007

WL 1306814 at * 2 (D.N.M. 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)).  "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim."  Burleson v. ENMR-Plateau Tel. Co-op., No. CIV 05-0073 JB/KBM, 2005 WL 3664299 at * 2 (D.N.M. 2005)(Browning, J.)(citing Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)).

### LAW REGARDING RESCISSION FOR UNILATERAL MISTAKE

The RESTATEMENT (SECOND) OF CONTRACTS recognizes that a contract may be voided when one of the parties has made a mistake regarding a basic assumption about the contract.  Some old Colorado cases, however, state that, to void a contract, any mistake must be mutual.  Later cases, however, suggest that the Colorado Supreme Court allows rescission for unilateral mistake under narrow circumstances.

### 1.    The RESTATEMENT (SECOND) OF CONTRACTS.

The RESTATEMENT (SECOND) OF CONTRACTS states that, when a party makes a mistake regarding basic assumption of the contract and the mistake has an adverse effect, the contract may be voidable if the party does not bear the risk of the mistake.  See RESTATEMENT (SECOND) OF CONTRACTS § 153, at 394 (1981).  The party can void the contract when  "(a)the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) [when] the other party had reason to know of the mistake or his fault caused the mistake."  Id. (emphasis added).

The comment section states that courts have traditionally been reluctant to allow a party to avoid a contract on the grounds of mistake if the other party did not share the mistake, even if the mistake goes to a basic assumption in the contract.  See id. § 153 cmt. a, at 394.  Courts are more likely to grant relief when the other party knew or had reason to know of the mistake, or when the other party's fault caused the mistake.  See id.  Courts have also  increasingly been more willing to

allow avoidance of the contract when the consequences of the mistake are so grave that enforcement of the contract would be unconscionable.  See id.

### 2.    Colorado Law on Unilateral Mistake.

The Supreme Court of Colorado has stated that, "to avoid a contract on the ground of mistake, it must be a mutual mistake." Kuper v. Scroggins, 257 P.2d 412 (Colo. 1983).  While there is no indication that Kuper v. Scroggins has been overturned, and while Colorado courts have not expressly held that Colorado recognizes a cause of action for unilateral mistake, there is some indication in other case law that Colorado might recognize such a cause of action.   For example, in In re Marriage of Manzo, 659 P.2d at 672, the Supreme Court of Colorado noted: "[T]raditionally a contract may not be rescinded because one party has made a unilateral mistake as to value unless the other party knew or had reason to know of the error." Id. (emphasis added).   Another Colorado case, Powder Horn Constructors v. Florence, 754 P.2d 356, 364 (1988), cites RESTATEMENT (SECOND) OF CONTRACTS § 153, which suggests an expansion of the availability of rescission for unilateral mistake.   In Powder Horn Constructors v. Florence, the Supreme Court of Colorado analyzed a claim of unilateral mistake in a contract dispute where a contractor sought to withdraw an accepted bid after discovering that the low bid was a result of a relatively costly omission on the part of the contractor.  See 754 P.2d at 358.  The Supreme Court of Colorado  decided the case under a rule limited to public construction projects, stating:

> [A] bidder for a public construction contract who submits a bid containing a mistake may rescind the bid prior to its acceptance if the bidder establishes by a preponderance of the evidence that the mistake is of a clerical or mathematical nature, that the mistake was made in good faith and relates to a material aspect of the bid, and that the public authority did not rely to its detriment on the mistaken bid.

Powder Horn Constructors v. Florence, 754 P.2d at 363. In other words, the Supreme Court of Colorado in Powder Horn Constructors v. Florence relied on a rule specific to public-construction

-13-

contracts to reach its holding.   Nevertheless, the Supreme Court of Colorado also cited

RESTATEMENT (SECOND) OF CONTRACTS § 153 and explained that its holding was consistent with

RESTATEMENT (SECOND) OF CONTRACTS § 153.  See Powder Horn Constructors v. Florence, 754

P.2d at 363 n. 7.  The Supreme Court of Colorado noted:

> The Restatement (Second) of Contracts § 153 (1979) states that where a mistake of
> one party occurs as to a basic assumption the contract is voidable only if enforcement
> of the contract would be unconscionable or the other party had reason to know of the
> mistake. The requirement of unconscionability or reason to know assists in ensuring
> that avoidance of the contract will not unreasonably disappoint the expectations of
> the party not causing the mistake.  See Restatement (Second) of Contracts § 153
> comment c (1979); see also 2 G. Palmer, The Law of Restitution § 12.20 (1978)
> (observing that the courts have a tendency to find that the offeree had reason to know
> of the mistake when the size of the error is substantial).  In this case the evidence
> indicates the City's representative was aware of the probability that a mistake had
> been made as soon as the bids were tabulated; in fact, the representative notified
> Powder Horn of the problem immediately thereafter.

Powder Horn Constructors v. Florence, 754 P.2d at 363 n. 7.  Thus, the Supreme Court of Colorado

appears to recognize the general principle, as laid out in RESTATEMENT (SECOND) OF CONTRACTS

§ 153, that there is such a thing as rescission for unilateral mistake – even if the difference between

a unilateral and a mutual mistake might be difficult to determine at times – and that the

RESTATEMENT (SECOND) OF CONTRACTS § 153 reflects the considerations that should govern such

a cause of action.

**3.      New Mexico Law on Unilateral Mistake.**

New Mexico courts have not gone much further than the Colorado courts in explaining the

contours of rescission for unilateral mistake.  The New Mexico courts, however,  appear to follow

RESTATEMENT (SECOND) OF CONTRACTS § 153 for their understanding of rescission for unilateral

mistake.  In Twin Forks Ranch, Inc. v. Brooks, 120 N.M. 832, 907 P.2d 1013 (Ct. App. 1995), the

New Mexico Court of Appeals assumed the existence of a cause of action for rescission based on

-14-

unilateral mistake.  See 120 N.M. at 835-36, 907 P.2d at 1016-17.  In analyzing a claim for

rescission based on unilateral mistake, the New Mexico Court of Appeals stated:

> Plaintiffs sought to rescind the deeds pursuant to the RESTATEMENT (SECOND) OF
> CONTRACTS § 153 (1981), which provides for rescission if: (1) unilateral mistake is
> established; (2) the party requesting relief does not bear the risk of mistake; and (3)
> among other grounds, enforcement of the contract would be unconscionable.
> Because we find the second element to be dispositive, we restrict our analysis to a
> discussion of the allocation of risk. . . .

120 N.M. at 835-36, 907 P.2d at 1016-17.

### 4.    What Constitutes a Mistake.

The Supreme Court of Colorado has explained that a mistake in contract law must be "truly

one of an existing fact, and one not relating to a misapprehension as to what the future might bring."

Hailpern v. Dryden, 389 P.2d 590, 593 (1964).  The Supreme Court of Colorado also stated: "The

Restatement of the Law of Contracts, § 500 defines 'mistake', as that word is used in the field of

contracts, as 'a state of mind that is not in accord with the facts.'"  Hailpern v. Dryden, 389 P.2d at

592.

### 5.    Unconscionability.

Courts in Colorado discuss the determination of unconscionability in terms of a list of

factors.  The Supreme Court of Colorado has explained that:

> Factors which have been found relevant to the unconscionability determination
> include: a standardized agreement executed by parties of unequal bargaining strength
> . . .; lack of opportunity to read or become familiar with the document before signing
> it . . .; use of fine print in the portion of the contract containing the provision . . .;
> absence of evidence that the provision was commercially reasonable or should
> reasonably have been anticipated . . .; the terms of the contract, including substantive
> unfairness . . .; the relationship of the parties, including factors of assent, unfair
> surprise and notice . . .; and all the circumstances surrounding the formation of the
> contract, including its commercial setting, purpose and effect . . . .

Davis v. M.L.G. Corp., 712 P.2d 985, 991 (Colo. 1986)(citations omitted).

-15-

## RESCISSION FOR MUTUAL MISTAKE

The Colorado Court of Appeals has stated: "Rescission is an equitable remedy that may be allowed upon a showing that an agreement is founded on a mutual mistake of facts."  CAMAS Colorado, Inc. v. Board of County Commissioners, 36 P.3d 135, 139 (Ct. App. 2001).  In Carpenter v. Hill, 283 P.2d 963 (1955), the Supreme Court of Colorado allowed rescission of a contract for the sale of an encumbered piece of real property where both parties mistakenly believed that, under the terms of the loan on the land, the buyer would be able to pay off the balance with crop payments, and that the payments could be carried over if there were no fruit crop.  See 283 P.2d at 965.  The Supreme Court of Colorado reasoned:

> We believe that no principle is better settled than the equitable doctrine that an agreement founded in a mutual mistake of facts that are the very basis of the contract will void the contract. The fact concerning which the mistake was here made was the very life and substance of the transaction; and the mistake, not only clearly proven, but admitted, is so important that rescission, if sought, must follow.

Carpenter v. Hill, 283 P.2d at 965.

## RESCISSION FOR SUBSTANTIAL BREACH

In Colorado, "[g]enerally, rescission may be granted if the facts show that there is a substantial breach, that the injury caused is irreparable, or that damages would be inadequate, difficult, or impossible to assess."  Wall v. Foster Petroleum Corp., 791 P.2d 1148, 1150 (Colo. Ct. App. 1989).  In Wall v. Foster Petroleum Corp., the plaintiffs purchased a residence and made improvements on it shortly before discovering that the house was built atop soil that, when mixed with water, expanded and damaged the foundation.  See id. at 1150.  The Supreme Court of Colorado found that the breach was substantial enough to warrant rescission, given that the damage to the residence was permanent and incurable.  See id.

-16-

## ANALYSIS

After examining the arguments from both parties regarding whether to allow the City of Raton to amend its Complaint to add rescission claims, the Court determines that there was no undue delay or dilatory motive on the part of the City of Raton, and there will be no prejudice to ARPA if the Court allows the amendment.  The City of Raton's rescission claims are not futile, because the City of Raton has pled a viable rescission claim.  While there was some difficulty in establishing what contract the City of Raton seeks to rescind, the Court is satisfied, based on the City of Raton's representations at the hearing, that it seeks to rescind the Third Amendment to the Organic Contract. Furthermore, the Court believes it can treat the City of Raton's approval of the first two notices as contractual obligations, given the posture ARPA has taken regarding the City of Raton's approval of those two proposals.  Specifically, ARPA desires to hold the City of Raton to its original approval.  The Court will therefore treat the City of Raton's approval of the notices and the Third Amendment to the Organic Contract as contracts subject to a rescission claim.  Because the City of Raton states a viable claim, the Court will not hold that it would be futile for the City of Raton to plead rescission.  The Court will accordingly permit the City of Raton to Amend its Complaint to plead rescission based on unilateral mistake, mutual mistake, and substantial breach.

## I.    NO UNDUE DELAY OR PREJUDICE WOULD RESULT IF THE COURT PERMITTED THE CITY OF RATON TO AMEND ITS COMPLAINT TO ADD A RESCISSION CLAIM.

ARPA contends that an amendment to add a rescission claim at this point would cause undue delay, and that the amendment would prejudice ARPA, because ARPA would be forced to defend against a "moving target," with the City of Raton coming up with successive theories to support its rescission claim each time the Court shoots a defective one down.  The Court finds these arguments unconvincing.  Given the procedural history of this case, and that the Court told the City of Raton

-17-

that it could seek leave to add a contract-based rescission claim, it would be inappropriate to now disallow the amendment based on prejudice or delay.

The policy underlying rule 15 is to liberally allow amendments. "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Schools, No. CIV 05-1165 JB/RLP, 2007 WL 1306814 at * 2 (quoting Minter v. Prime Equip. Co., 451 F.3d at 1204). "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim." Burleson v. ENMR-Plateau Tel. Co-op., No. CIV 05-0073 JB/KBM, 2005 WL 3664299 at * 2(citing Curley v. Perry, 246 F.3d at 1284). In light of that policy, a district court should deny leave to amend only in certain circumstances. The circumstances that ARPA suggests exist here – undue delay and prejudice – are not large concerns in this case.

## A.   THE DELAY IN ADDING THE RESCISSION CLAIM IS NOT UNDUE.

The rescission claim that the City of Raton seeks to add has not been sprung on ARPA only recently, to ARPA's surprise. Rather, this motion comes as a result of the Court's express invitation in December for the City of Raton to add a contract-based rescission claim. See MOO at 29 ("This Memorandum Opinion and Order leaves open the possibility that the City Raton may seek leave to amend its Complaint to demonstrate that it meets the requirements for rescission of the contract."); id. at 41 ("The City of Raton may seek leave to amend its Complaint to re-plead its claim for rescission for unilateral mistake and to show that it meets the requirements for rescission for unilateral mistake.").

This case does not present circumstances where a plaintiff, through oversight or dilatory motive, has delayed adding a claim that it should have added originally. Rather, the City of Raton

has sought rescission from early in the case.  The Court sees no bad faith on the part of the City of

Raton or any attempt to create a moving target against which ARPA cannot defend itself.  Thus,

while the claim comes late in the case, it does not come too late, given that the case is in the early

discovery phases.  The delay in bringing the rescission claim as it now exists was not undue.

        **B.**        **THERE IS NO PREJUDICE TO ARPA IN ALLOWING THE AMENDMENT.**

        The factual allegations underlying the proposed rescission claim have been part of the record

for a long time, and ARPA has had ample opportunity to acquaint itself with and prepare to defend

against those allegations.  The City of Raton has sought to rescind from early in the case, but, in

light of complex conflict-of-laws and governmental immunity questions, it has taken some time for

the parties and the Court to demarcate the boundaries of a viable rescission claim against a Colorado

government entity.  Even so, ARPA has known that the City of Raton seeks to rescind and has had

the opportunity to formulate defenses against such a claim.  Moreover, discovery is in its early

phases, with only one deposition being completed.  There is minimal risk that ARPA will have to

engage in significant new preparation as a result of a radical change in legal theory after investing

substantial resources and preparation defending against another theory.  See 6  C. Wright & A.

Miller, FEDERAL PRACTICE AND PROCEDURE § 1487, at 611 (1990).  ARPA will still have the

opportunity to conduct discovery knowing what the legal theory is upon which the City of Raton

seeks rescission.  And if ARPA discovers, down the road, that it needs more time to conduct

discovery because of this amendment, ARPA may approach the Court for an extension of time, and

the Court will remember that it granted this amendment.  It cannot therefore be reasonably

concluded that it is prejudicial to ARPA to allow the amendment.

**II.**        **AMENDING TO ADD A RESCISSION CLAIM WOULD NOT BE FUTILE.**

        ARPA argues that allowing the City of Raton to amend its Compliant to add a rescission

claim rooted in contract theories would be futile because it cannot state a viable cause of action for rescission, given the state of the law and the circumstances of this case. The Court, however, believes that the City of Raton states a claim for rescission based on all three of the theories it has presented. The Court need not decide, at this stage, whether the City of Raton can win on the merits. At this stage, the Court believes it is sufficient that the City of Raton states a claim. See Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)("The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss."); Glick v. Koenig, 766 F.2d 265, 269 (7th Cir. 1985)(upholding a district court where "both the original and amended complaint failed to state a cognizable claim and, therefore, the original complaint was properly dismissed and the amendment was properly disallowed"); Jones v. Community Redevelopment Agency of City of Los Angeles, 733 F.2d 646, 650 (9th Cir. 1984)(noting that leave to amend was properly denied where "the proposed complaint would fail to state a . . . claim"). The proposed rescission claim is capable of surviving a motion to dismiss. The Court therefore believes that amendment is not futile.

### A.   THE THIRD AMENDMENT TO THE ORGANIC CONTRACT AND THE CITY OF RATON'S APPROVALS CONSTITUTE VALID CONTRACTS.

There is no dispute that the Third Amendment to the Organic Contract is a binding contract. The City of Raton considers it a contract and seeks to rescind it, and ARPA has requested a declaration from the Court that "[t]he Organic Contract, as amended by the Third Amendment thereto, and the Power Sales Agreement, as amended by the First Amendment thereto, are valid and enforceable contracts." Answer to Amended Complaint and Amended Counterclaim ¶ 43, at 26 (Doc. 91)("Answer"). The more difficult question is whether the approvals which the City of Raton wishes to rescind constitute valid contracts. Because the parties in this case are treating the

approvals as legally binding, the Court will do the same for purposes of this motion and will assume they constitute valid contracts.

At the hearing, the City of Raton argued that the approvals, which the City of Raton effectuated by passing city ordinances and giving its assent, constitute contracts. Specifically, the City of Raton stated:

> There was a notice submitted in each instance that ARPA requested funding, and in each instance the Organic Contract called for the City's acceptance via an ordinance or resolution and in every case the city either accepted or didn't via ordinance or resolution. So, you're absolutely correct that that is a component of the contract and that, taken together, there's an offer and acceptance and we have a contract.

Tr. at 11:11-18 (Winter). Moreover, the City of Raton asked the Court to declare that the City of Raton "never approved this project." Tr. at 62:1-2 (Winter). Thus, the City of Raton argues that its approvals constitute contracts.

ARPA also appears to treat the approvals as legally binding. In its Answer, ARPA asserts: "Based on the unanimous approval of the Repowering Project by each of its Member Municipalities, including Raton, as well as the representations of each of its Member Municipalities, including Raton, that the approvals were valid and legally binding, the Authority proceeded . . . ." Answer ¶ 26, at 21. ARPA also states: "The Organic Contract does not permit a Member Municipality to withdraw its approval once given." Answer ¶ 6, at 14. This argument, and other language in the Amended Answer, suggest to the Court that ARPA considers the approvals to be legally binding contracts. Indeed, some of ARPA's counterclaims impliedly request a holding that the approvals are binding, given that ARPA wishes for the City of Raton to remain on the hook for what the City of Raton originally approved.

Both parties therefore appear to agree that the approvals constitute binding contracts. The Court will therefore consider the approvals binding contracts for purposes of deciding whether there

is a viable claim for rescission such that the City of Raton can rescind its approvals once given.

      **B.**    **THE CITY OF RATON STATES A CLAIM FOR RESCISSION OF THE THIRD AMENDMENT TO THE ORGANIC CONTRACT, AND/OR FOR RESCISSION OF ITS APPROVALS OF THE LAMAR REPOWERING PROJECT AND BOND ISSUANCES.**

      The City of Raton has put forward three theories to support its rescission claim: (i) unilateral mistake; (ii) mutual mistake; and (iii) substantial and fundamental breach. While the Court believes that there are some weaknesses in the City of Raton's rescission claims based in one or more of these three theories, and while one or more of the City of Raton's bases for rescission might ultimately lose the day, the Court believes that, at this stage of the litigation, based on what has been pled, the City of Raton states a viable claim. Accordingly, the Court cannot hold that adding the rescission claim would be futile.

      **1.**    <u>**The Court Evaluates the Viability of the City of Raton's Rescission Theories Under Colorado Law.**</u>

      Although ARPA has consistently argued that Colorado law applies in this lawsuit, ARPA expressed its belief at the hearing that the principles governing the claims in this case are the same under either Colorado or New Mexico law. <u>See</u> Tr. at 58:12-15 (Johnson). Moreover, when the Court queried the City of Raton regarding the propriety of the Court using Colorado law to analyze the contract claims, the City of Raton stated that it saw no problem with the Court using Colorado law on the contract rescission issues. <u>See</u> <u>id.</u> at 25:15-20 (Court & Winter). The City of Raton also noted its belief that the contract principles governing the contract-rescission claim were identical in Colorado and in New Mexico. <u>See</u> <u>id.</u> at 25:1-4 (Winter). In short, the City of Raton agrees that the Court is correct to apply Colorado law to analyzing the rescission claims, and states that the it briefed the issues with citations to New Mexico law because of its belief that New Mexico and Colorado law are the same on the issue. <u>See</u> <u>id.</u>

-22-

The Court believes that Colorado law should apply on this motion.  In its December 5, 2008

MOO, the Court used New Mexico law to determine whether the rescission claim was a tort.  <u>See</u>

MOO at 22.  In its MOO, the Court explained:

> The similarity between Colorado and New Mexico law suggests that a separate
> endeavor to analyze the segment of the claims that speak to the Organic Contract –
> and the [First Amended Complaint] does not give guidance regarding how the
> separate segments should be parsed – would be duplicative, and  would not render
> a result different from the one reached using New Mexico characterizations.
>
>      The Court emphasizes that it is not applying New Mexico law to interpret or
> construe the Organic Contract.  Instead, the Court finds good reason to apply New
> Mexico law to determine whether certain causes of action might exist, and to
> characterize them as tort or contract.   The Court finds that, in light of the false
> conflict with regard to the two claims at issue on this motion, and the potential
> difficulties latent in separating out not only the aspects of these claims that are tort
> and contract, but also the aspects that go to the Organic Contract, it makes sense to
> consider the claims' existence and character as to that contract under a single body
> of law.  That body of law is New Mexico law.

MOO at 22.  Thus, the Court found good reason to apply New Mexico law to characterize the

rescission and breach-of-covenant claims as either tort or contract.  The Court did not, however,

state that it would apply New Mexico law to interpret, construe, or otherwise enforce the Organic

Contract.  At this time, the Court determines that will look to Colorado law to analyze the rescission

claim on the merits.  The Court believes there is sound reason for doing so.

> i.      **The Parties do not Know the Place of Making of the Organic
>            <u>Contract.</u>**

A federal court applies the choice-of-law rules of the forum state in which it sits.  <u>See</u>

<u>Memorial Hosp. of Laramie County v. Healthcare Realty Trust Inc.</u>, 509 F.3d 1225, 1229 (10th Cir.

2007).  The Court therefore applies New Mexico choice-of-law principles.  In New Mexico, the

general rule for contracts is lex loci contractus – the law of the place of contracting controls.  <u>See</u>

<u>Ferrel v. Allstate Insurance Co.</u>, 144 N.M. 405, 421, 188 P.3d 1156, 1172 (2008)(citing

RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 311, at 395). "A contract is made 'at the time when the last act necessary for its formation is done, and at the place where the final act is done. . . .' The place where the final act is done determines the applicable law for the interpretation of the contract." Eichel v. Goode, Inc., 101 N.M. 246, 251, 680 P.2d 627, 632 (Ct. App. 1984)(quoting Merriman v. Harter, 59 N.M. 154, 280 P.2d 1045 (1955)).

### ii.   Certain Important Policy Considerations Counsel in Favor of Applying Colorado Law.

As the Court noted in its December 5, 2008 MOO, the parties have not given evidence regarding where contract formation occurred. In other words, the place of contracting, which is the key to determining which jurisdiction's law will apply to a contract under the lex loci contractus approach, is not known in this case. Even so, the Court is aware that New Mexico courts have been willing to apply principles other than the strict lex loci contractus rule when a more flexible approach has proved necessary. For example, in Ferrel v. Allstate Insurance Co., the Supreme Court of New Mexico expressly applied the Restatement (Second) of Conflict of Law. In Ferrel v. Allstate Insurance Co., the Supreme Court of New Mexico stated:

> After comparing the Restatement (First) and the Restatement (Second), it is apparent that the rigidity of the Restatement (First) is particularly ill-suited for the complexities present in multi-state class actions. It does not allow a court to consider the competing policies of the states implicated by the suit. We conclude that the Restatement (Second) is a more appropriate approach for multi-state contract class actions.

144 N.M. at 422, 188 P.3d at 1173 (footnote omitted). In deciding that it would be inappropriate to apply the lex loci contractus rule provided in the RESTATEMENT (FIRST) OF CONFLICT OF LAWS, the Supreme Court of New Mexico also observed:

> Because of the mechanical nature of its application, the Restatement (First) has been widely criticized as being inflexible, rigid, and leading to unjust results. See Scoles et al., supra, § 2.7, at 21-22. Another criticism levied against the Restatement (First)

-24-

> is that it does not recognize choice-of-law provisions. Scoles et al., supra, § 18.14,
> at 989. Currently only eleven states, including New Mexico, continue to follow the
> choice-of-law rules set forth in the Restatement (First) with respect to contract
> claims. Scoles et al., supra, § 2.21, at 87.

144 N.M. at 422, 188 P.3d at 1173

New Mexico courts have also shown willingness to deviate from the rigid application of the

RESTATEMENT (FIRST) OF CONFLICT OF LAWS in areas of law other than contract.  For example, in

Estate of Gilmore, 124 N.M. 119, 946 P.2d 1130 (Ct. App. 1997), which was a tort case, the

Honorable Harris Hartz, then New Mexico Court of Appeals Judge and now Circuit Judge for the

United States Court of Appeals for the Tenth Circuit, explained:

> We perceive New Mexico conflict-of-law doctrine as reflecting a desire for the
> greater certainty presumably provided by more traditional approaches to
> conflict-of-laws problems, tempered by recognition that important policy
> considerations cannot be ignored. See [State Farm Mut. Ins. Co. v. Conyers, 109
> N.M. 243,] 247, 784 P.2d [860,] 990 [(1989)]; [First National Bank v.] Benson, 89
> N.M. [481,] 482-83, 553 P.2d [1288,] 1289-90 [(Ct. App. 1976)]. Therefore, we
> begin with a strong presumption in favor of application of the place-of-the-wrong
> rule, but we will not close our eyes to compelling policy arguments for departure
> from the general rule in specific circumstances.

In Estate of Gilmore, 124 N.M. at 125, 946 P.2d at 1136.  Thus, New Mexico courts recognize that,

under some circumstances, rigid adherence to the RESTATEMENT (FIRST) OF CONFLICT OF LAWS is

not appropriate, and that other considerations, such as policy, might govern a conflict-of-laws

analysis.

The Court believes that, in this case, it is not only impossible, but unwise to attempt to

rigidly apply the lex loci contractus rule to determine which state's law should govern the contract

or contracts that do not contain a choice-of-law provision.  First, while ARPA suggested at the

hearing that the City of Raton signed the Organic Contract in New Mexico, see Tr. at 57:15-17

(Johnson), the parties have not been able to definitively establish the locus of contracting.

-25-

Determining the locus of formation of the Organic Contract might not be possible, given that, while the City of Raton may have signed it in New Mexico – and that is not established – it might be a strange result to say that the place of contracting for the Organic Contract was each location where a municipality signed it. Thus, for the Colorado entities that signed the Organic Contract, Colorado would be the place of contracting, while for the City of Raton, New Mexico would be the place of contracting. Or perhaps, if the last or final act necessary to effectuate formation is the last signature, then the location where the last party to execute the Organic Contract signed might be the place of contracting. None of these possibilities is established in the record.

Furthermore, important policy considerations counsel against applying New Mexico law to interpret the Organic Contract, the Third Amendment to the Organic Contract, or the City of Raton's approvals. See In Estate of Gilmore, 124 N.M. at 125, 946 P.2d at 1136 (teaching that New Mexico courts "will not close [their] eyes to compelling policy arguments for departure from the general rule in specific circumstances"). As ARPA has persuasively argued, the Organic Contract's most basic function is to create a Colorado governmental entity. The Organic Contract also purports to govern the actions of that Colorado governmental entity. It would be odd to use New Mexico law to interpret a contract in a suit brought against a Colorado governmental entity where the contract in dispute creates the Colorado governmental entity being sued. The Court believes that this fact counsels in favor of applying Colorado law on the contract and rescission-of-contract claims.

Moreover, there are two definitive, written contracts at play in this case, one of which contains a choice-of-law provision. The First, which is perhaps most pertinent to this motion, is the Organic Contract. The Organic Contract and its Third Amendment contain no choice-of-law provision, while the Power Sale Agreement has a clause which states: "This agreement shall be interpreted, governed, and construed under the laws of the State of Colorado." Power Sales

-26-

Agreement ¶ 24, at 15.  New Mexico normally honors choice-of-law provisions.  See Fiser v. Dell Computer Corporation, 144 N.M. 464, 467, 188 P.3d 1215, 1218 (N.M. 2008).  Moreover, the Court believes that this clause, fairly interpreted, would require that the Court apply Colorado law to breach of contract or other contract claims rising out of the Power Sales Agreement.

Although the City of Raton has not made the argument, it appears that the City of Raton's desire to rescind its approval of the Lamar Repowering Project implicates both the Organic Contract and the Power Sales Agreement.  As ARPA notes in its Answer, after the municipalities unanimously approved the Lamar Repowering Project, all parties executed the Third Amendment to the Organic Contract, which was designed to facilitate the Lamar Repowering Project's financing, and which extended the municipalities' obligation to purchase wholesale electricity from ARPA through the later of December 31, 2040 or "the repayment in full of the Lamar Repowering Project Bonds if such are issued."  Answer ¶ 17, at 18.  The Power Sales Agreement was also amended to extend its terms in the same fashion.  See id.  Moreover, ARPA, in its Counterclaim, seeks to hold the City of Raton to the Organic Contract and the Power Sales Agreement, as amended, and as those two contracts relate to the Lamar Repowering Project.  See Answer ¶ 41, at 25-26.

In addition, the other contracts that the City of Raton seeks to rescind are not memorialized in writing separate from the Organic Contract.  The Court agrees with the City of Raton's statement that the approvals, to the extent they constitute legally binding contracts, are appendages to the Organic Contract.  The Organic Contract outlines the notice-approval process that ARPA and the City of Raton followed.  In other words, ARPA gained the City of Raton's approvals through the procedure set forth in the Organic Contract.  Thus, the approvals are, in a sense, children of the Organic Contract.  The law that governs the approvals should therefore be the same as the law that governs the Organic Contract.

In sum, the City of Raton seeks to rescind at least a part of the Organic Contract, and ARPA is using the amendments to the Organic Contract and the Power Sales Agreement to try to hold the City of Raton to its original approval of the project.  Thus, in the end, sorting out the contract and rescission claims that both parties have will require interpretation of multiple contracts, one of which has a choice-of-law provision mandating Colorado law.  Applying New Mexico law to the Organic Contract while applying Colorado law to the Power Sales Agreement would not make sense and would inject unneeded complexity into the lawsuit. The Court does not feel compelled to apply different law to different contracts in this case, given that other conflict-of-laws principles do not point to an application of New Mexico law to the Organic Contract.

> ### iii.    While There is a Potential False Conflict, it is More Prudent to Apply Colorado Law, Given the Policy Considerations in this Case.

The Court agrees with the parties that, despite some subtle differences between the two states' rescission-law principles, there is a possibility that either state's law would lead to a similar result on these rescission-of-contract claims.  Normally, a false conflict would weigh in favor of applying the forum state's law.  In this case, however, the Court believes that the subtle differences in some aspects of the law and the policy considerations dictate application of Colorado law and adherence to Colorado case law.

As the Court explained in its December 5, 2008 MOO,

"The false conflict doctrine allows a court to avoid a choice of law question when the laws of the involved states would produce identical results."  Fowler Brothers, Inc. v. Bounds, 144 N.M. 510, 514, 188 P.3d 1261, 1265 (Ct. App. 2008).  The New Mexico Court of Appeals has explained that "the focus of the doctrine is not on whether the laws are superficially identical as written, but whether the effect of laws would be identical as applied to a particular case . . . .  The purpose of the doctrine is to avoid complicated choice-of-law questions when the answer to those questions would not make a difference."  Id., 188 P.3d at 1265 (internal quotation marks and citations omitted).

-28-

MOO at 21.  Under both Colorado and New Mexico law, a party to a contract can plead rescission based on mistake.  See State ex rel. State Highway and Transp. Dept. v. Garley, 111 N.M. at 385, 806 P.2d at 34 (discussing the circumstances under which mutual mistake can give rise to rescission); CAMAS Colorado, Inc. v. Board of County Commissioners, 36 P.3d at 139 (noting that rescission is a remedy available for mutual mistake).  Generally speaking, the principles governing contract-based rescission claims are so similar between the two states that the Court believes it is likely the same result would obtain under either state's law.

Nevertheless, the Court is not certain that the results would be identical.  Some possible differences between Colorado and New Mexico law are worth noting.  First, the Supreme Court of Colorado has spoken of rescission for unilateral mistake in more restrictive terms than New Mexico. See Kuper v. Scroggins, 257 P.2d 412 ("In order to avoid a contract on the ground of mistake, it must be a mutual mistake."); In re Marriage of Manzo, 659 P.2d at 672 ("We note that traditionally a contract may not be rescinded because one party has made a unilateral mistake as to value unless the other party knew or had reason to know of the error.").  In contrast to Colorado courts, New Mexico courts have cited RESTATEMENT (SECOND) OF CONTRACTS § 153 – which is more expansive than the Colorado formulation of unilateral mistake – as supplying the New Mexico rule.  While Colorado courts have cited RESTATEMENT (SECOND) OF CONTRACTS § 153, which discusses the common elements of such a claim, without expressing disapproval, see Powder Horn Constructors v. Florence, 754 P.2d at 363 n. 7, the Court cannot say for certain that Colorado has adopted RESTATEMENT (SECOND) OF CONTRACTS § 153.  In other words, while New Mexico has assumed the existence of rescission for unilateral mistake with the elements being those outlined in RESTATEMENT (SECOND) OF CONTRACTS § 153, Colorado's recognition of a claim for rescission based on unilateral mistake is more hesitant and may be more restricted.  Thus, the most the Court

can say at this stage is that there is a possibility that it may be more difficult to prevail on a rescission claim based on unilateral mistake under Colorado law. Even so, the Court does not believe that Colorado would preclude such a claim, at least under certain circumstances.

The Court also notes that, in the same dictum in Powder Horn Constructors v. Florence, the Supreme Court of Colorado suggested that unconscionability might be an important factor in allowing rescission based on unilateral mistake. See id. ("The requirement of unconscionability [in RESTATEMENT (SECOND) OF CONTRACTS § 153] or reason to know assists in ensuring that avoidance of the contract will not unreasonably disappoint the expectations of the party not causing the mistake."). This dictum suggests that Colorado might approve of an expansion of its unilateral mistake rule to accommodate unconscionability as an alternative to the requirement that the non-mistaken party knew or had reason to know of the mistake. Given that New Mexico has quoted RESTATEMENT (SECOND) OF CONTRACTS § 153 as listing the elements of rescission for unilateral mistake, it appears both states would have similar concerns about granting rescission based on unilateral mistake where doing so would unreasonably disappoint the expectations of the party who did not cause the mistake. Moreover, the determination of unconscionability is similar under New Mexico and Colorado law.

> In evaluating unconscionability, Colorado courts consider the following factors:
>
> [A] standardized agreement executed by parties of unequal bargaining strength . . .; lack of opportunity to read or become familiar with the document before signing it . . .; use of fine print in the portion of the contract containing the provision . . .; absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated . . .; the terms of the contract, including substantive unfairness . . .; the relationship of the parties, including factors of assent, unfair surprise and notice . . .; and all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect . . . .

Davis v. M.L.G. Corp., 712 P.2d at 991. New Mexico courts divide a determination of

unconscionability into two prongs, but the ultimate concerns raised in the Colorado courts' Davis factors are the same.  The Supreme Court of New Mexico has explained: "The classic articulation of unconscionability is that it is comprised of two prongs: substantive unconscionability and procedural unconscionability."  Fiser v. Dell Computer Corporation, 144 N.M. 464, 470, 188 P.3d 1215, 1221 (2008)(citing 7 J. Perillo, CORBIN ON CONTRACTS § 29.4, at 388 (2002 ed.)). "Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair."  Fiser v. Dell Computer Corporation, 144 N.M. at 470, 188 P.3d at 1221.  Procedural unconscionability is concerned with the absence of a meaningful choice, and is  "determined by examining the circumstances surrounding the contract formation, including the particular party's ability to understand the terms of the contract and the relative bargaining power of the parties." Guthmann v. LaVida Llena, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985) (citations omitted).

A contract will be procedurally unconscionable if it is obtained though inequality of bargaining power when the inequality is "so gross that one party's choice is effectively non-existent." Id. (citations omitted).  In analyzing whether a contract or a term in a contract is procedurally unconscionable, New Mexico courts consider several factors, including the use of high pressure tactics, the relative scarcity of the subject matter of the contract,  and the relative education, sophistication and wealth of the parties.  Id. (citations omitted).  For example, in Bowlin's, Inc. v. Ramsey Oil Co., Inc., 99 N.M. 660, at 662 P.2d at 669, the Supreme Court of New Mexico considered whether a clause requiring a retail gas company to notify its supplier of any delivery shortages within two days of taking delivery was unconscionable.  See 99 N.M. at 668, 662 P.2d at 669.  The Supreme Court of New Mexico addressed the party's understanding, the sophistication of the contract, and the possibility of coercion, and found that, because the retailer fully understood

the term in the contract, and because "the contract was entered into between "experienced and sophisticated business concerns," id., there was no reason to find unconscionability, see id.  The Supreme Court of New Mexico in Bowlin's, Inc. v. Ramsey Oil Co., Inc. also noted that courts are more likely to find unconscionability where an individual consumer is concerned and that "[t]he courts have not generally been receptive to pleas of unconscionability by one merchant against another." Id.

Overall, then, rescission for unilateral mistake might be the same in Colorado and New Mexico, and similar concerns and policies seem to be at issue when courts of either state deal with such a claim.  At the same time, Colorado case law suggests that rescission for unilateral mistake is more difficult to achieve under Colorado law than it is under New Mexico law.  The Court therefore believes that, at least on unilateral mistake theories, there is not a true false conflict.

In other areas, the Court believes the principles in New Mexico and Colorado are identical in substance, if not always in form.  For example, both states openly recognize rescission for mutual mistake, and both states adopt the general understanding of what constitutes a mistake warranting rescission.  The Supreme Court of Colorado has held that a mistake must be "truly one of an existing fact, and one not relating to a misapprehension as to what the future might bring."  Hailpern v. Dryden, 389 P.2d 590, 593 (1964).  The Supreme Court of Colorado also stated: "The Restatement of the Law of Contracts, § 500 defines 'mistake', as that word is used in the field of contracts, as 'a state of mind that is not in accord with the facts.'"  Hailpern v. Dryden, 389 P.2d at 592. Similarly, New Mexico courts have stated:

> The Restatement defines a mistake as "a belief that is not in accord with the facts." Restatement § 151. The comment makes it clear that "the erroneous belief must relate to the facts as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined here." *Id.*

State ex rel. State Highway and Transp. Dept. v. Garley, 111 N.M. at 387, 806 P.2d at 36.  Thus, both Colorado and New Mexico take care to distinguish between facts, as they exist at the time of a transaction, and expectations, future projections, expressions of hope, or recommendations.

Finally, both New Mexico and Colorado appear to view partial rescission similarly.  Namely, both states recognize that, as a general rule, a party wishing to rescind must do so in toto.  See Kaiser v. Market Square Discount Liquors, Inc., 992 P.2d 636, 642 (1999)("Also, a party may not rescind a contract in part and affirm it in part, or rescind a contract but retain some benefit arising from it."); Ford v. Norton,  N.M. 518, 522, 260 P. 411, 412 (1927)(explaining the general rule that "the right to rescind must be exercised in toto. . . .  The contract must stand in all its provisions, or fall together").  The concern in both states is that a party will try to retain the benefits of a contract while avoiding the burdens.

Overall, the Court believes that the differences between Colorado and New Mexico law for rescission are subtle.  They may or may not effect the ultimate determination of the claims.  The Court believes, however, that the differences are enough that it is not possible to say that there is a false conflict, and that the Court should consequently apply forum law.

The Court therefore concludes that it is most appropriate to apply Colorado law to evaluate the rescission-of-contract claim.  The place of making of the contracts at issue here has not been definitively established.  Even if the place-of-contracting were defined and known in this case, however, policy reasons militate against applying New Mexico law to claims rooted in these contracts. The potential false conflict is not compelling enough to override the other factors weighing in favor of applying Colorado law.

> **2.      The City of Raton May Plead Rescission Based on Unilateral or Mutual Mistake.**

The Court recognizes that a claim for rescission based on unilateral mistake has a somewhat tenuous existence under Colorado law.  While older case law states that rescission is not generally allowed for unilateral mistake, there is at least one more recent Colorado case that appears open to the existence of such a cause of action.  In Colorado, "traditionally a contract may not be rescinded because one party has made a unilateral mistake as to value unless the other party knew or had reason to know of the error."   In re Marriage of Manzo, 659 P.2d at 672.  The Court believes that, under Colorado's formulation of unilateral mistake, the City of Raton has stated allegations that would support a claim for rescission.

First, the City of Raton has alleged a mistake about the costs.  ARPA maintains that cost overruns are not the product of a mistake of fact, but rather of mistaken projections about the future.  The Court recognizes that the distinction between cost projections and genuine mistakes that could lead to false cost projections can be blurry at times.  Even so, in this case, the Court cannot say that the initial $66 million and the subsequent increases to that amount were merely projections and not definitive statements of what the project would cost.  While there is some danger in allowing rescission in large construction contracts for cost overruns, the Court can see that, at times, the cost and time line to which a party agreed might be so different from the reality that it can be fairly said that a mistake about present facts was made.  The City of Raton is making such an argument, and it has made allegations, which, if taken as true, might support such a claim.  The City of Raton, for example, has alleged that costs have doubled from what was originally proposed and that the time lines are off dramatically.  The Court cannot say that the fact-projection distinction in this case is such that the City of Raton's claim must fail for lack of a mistake.

The City of Raton has pled the remaining elements of unilateral mistake as understood under Colorado law. Importantly, the City of Raton has alleged that "ARPA knew or had reason to know of the City's mistake." Proposed Second Amended Complaint ¶ 85, at 13. This allegation satisfies the command of Colorado case law that "a contract may not be rescinded because one party has made a unilateral mistake as to value unless the other party knew or had reason to know of the error." In re Marriage of Manzo, 659 P.2d at 672. See RESTATEMENT (SECOND) OF CONTRACTS § 153 (b).

Although Colorado law mentions unconscionability in one footnote discussing, but not expressly adopting, RESTATEMENT (SECOND) OF CONTRACTS § 153, Colorado does not require unconscionability. In Powder Horn Constructors v. Florence, the Supreme Court of Colorado mentioned the unconscionability element in a way suggesting that unconscionability might serve as an alternative theory. The Supreme Court of Colorado does not, however, say that unconscionability is a requirement. See Powder Horn Constructors v. Florence, 754 P.2d at 363 n. 7. Moreover, while the dictum in Powder Horn Constructors v. Florence, 754 P.2d at 363 n. 7 has the tenor of approval for the RESTATEMENT (SECOND) OF CONTRACTS § 153, even the RESTATEMENT (SECOND) OF CONTRACTS § 153 does not require unconscionability for rescission based on unilateral mistake. Rather, RESTATEMENT (SECOND) OF CONTRACTS § 153 states that rescission is permissible for unilateral mistake if "(a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) [when] the other party had reason to know of the mistake or his fault caused the mistake." RESTATEMENT (SECOND) OF CONTRACTS § 153 (emphasis added). The RESTATEMENT (SECOND) OF CONTRACTS § 153 therefore contains a disjunctive – or – denoting that a party seeking rescission for unilateral mistake need only show one of either (a) or (b), not both. Under the RESTATEMENT (SECOND) OF CONTRACTS § 153 (b), a party can get rescission by showing

that the other party "knew or had reason to know" of the mistake.  Id.  Thus, even if Colorado has

adopted RESTATEMENT (SECOND) OF CONTRACTS § 153 – and the Court is not sure that Powder Horn

Constructors v. Florence can be read as suggesting that it has – the City of Raton has pled that

ARPA knew or had reason to know of its mistake.  Such an allegation satisfies Colorado case law

on unilateral mistake.

The Court therefore believes that, under Colorado law, the rescission claim for unilateral

mistake, as pled in the Proposed Second Amended Complaint, would survive a motion to dismiss

and that amending to add such a theory would not be futile.

### 3.    The City of Raton May Plead Rescission Based on Mutual Mistake.

The principle controversy that ARPA raises regarding mutual mistake is the fact that, in

ARPA's view, there was no mistake of fact, but only a mistake of future predictions.  The Court

believes the analysis in its discussion of unilateral mistake applies to mutual mistake as well.

Moreover, the Court notes that in this case the City of Raton has pled allegations that ARPA made

substantial mistakes related to "silo issues, coal handling, and rail issues" which impacted its overall

cost estimates.  Exhibit A to Motion, [Proposed] Second Amended Complaint for Declaratory

Judgment, Breach of Contract, Rescission, Breach of the Implied Covenant of Good Faith and Fair

Dealing, and Permanent Injunctive Relief ¶¶ 49-50, at 8-9, filed January 9, 2009 (Doc. 100-

2)(brackets in original)("Proposed Second Amended Complaint").

These allegations about mistakes regarding the silos, coal handling, and rail issues in the

Proposed Second Amended Complaint implicate facts rather than projections because, as the City

of Raton alleges, the incorrect cost estimates were based on ARPA's mistaken assumptions about

matters that would affect the ultimate cost of completing the Lamar Repowering Project.

To warrant rescission, a mutual mistake must be of facts that form the basis of the contract.

-36-

See Carpenter v. Hill, 283 P.2d at 965.  As the City of Raton has pled its claim, it alleges that the Lamar Repowering Project that it agreed to fund was ultimately fundamentally different from what has resulted.  Specifically, the City of Raton contends that the cost overruns have been so dramatic and the delays so long that the City of Raton would never have agreed to such a project had it known what the actual costs were.

The Court believes that such allegations support a rescission claim for mutual mistake.  While the Court does not, at this time, give an opinion whether the City of Raton will prevail on the claim, it is sufficient to say that the claim could survive a motion to dismiss.  It would therefore not be futile to allow the City of Raton to amend its Complaint to plead rescission based on the theory of mutual mistake.

### 4.    The City of Raton May Plead Rescission Based on Substantial and Fundamental Breach.

The final theory upon which the City of Raton wishes to rest a rescission claim is substantial breach of contract.  Colorado courts recognize that, "[g]enerally, rescission may be granted if the facts show that there is a substantial breach, that the injury caused is irreparable, or that damages would be inadequate, difficult, or impossible to assess."  Wall v. Foster Petroleum Corp., 791 P.2d at 1150.  The Court notes that it has doubts about the strength of the City of Raton's rescission claim under such a theory.  The Court wonders, for example, whether the injury that the City of Raton asserts it suffered is something that is irreparable through money damages.  The apparent weakness of the claim notwithstanding, the Court believes there is enough in the Proposed Second Amended Complaint to justify allowing the claim.

The City of Raton contends that, after approving the project and funding up to a certain amount for that project, the costs more than doubled and the project, which was supposed to be

completed in the third quarter of 2007, is still not operation in 2009.  The City of Raton maintains

that, as a result, it has yet to receive any energy generated by the Lamar Repowering Project.  The

City of Raton therefore has not enjoyed any benefit from the Lamar Repowering Project.  The Court

believes that such an allegation supports a claim for rescission.

The Court emphasizes that it is not deciding whether the City of Raton wins on these

theories.  Rather, it is deciding whether it would be futile to allow the City of Raton to plead them.

The Court sees that there could be serious problems with allowing the City of Raton to rescind the

Third Amendment to the Organic Contract, for example.  The Third Amendment to the Organic

Contract was formed with the agreement of all of ARPA's constituents.  Rescission of the Third

Amendment to the Organic Contract would therefore have a possibly dramatic impact on all the

other municipalities, given that the project is ongoing, and given that the Third Amendment to the

Organic Contract changes the parties' relationship in regards to the Lamar Repowering Project.  The

Court has not fully analyzed all of the implications if the City of Raton won on its rescission claim.

The Court's task on this motion, however, is to decide whether to allow an amendment.  The Court

does not believe that the claim is weak enough that it would be futile to add it.

**5.      The City of Raton May Seek to Partially Rescind the Third Amendment to the Organic Contract and its Approvals Without Rescinding the Organic Contract because Doing So Would Allow for the Parties to Return to Status Quo Ante.**

One concern raised at the hearing is whether it is possible to rescind only an amendment to

a contract while affirming the original contract.  The case law is uncertain on this issue, but the

Court believes that the law of partial rescission offers some useful guidance.  The Supreme Court

of Colorado in Kaiser v. Market Square Discount Liquors, Inc. has held that "a party may not

rescind a contract in part and affirm it in part, or rescind a contract but retain some benefit arising

from it." 992 P.2d at 642.  See Cole v. Smith, 58 P. 1086, 1087 (1899)("[A party] should not be allowed to take advantage of those provisions of the contract which are favorable, and reject those which are onerous.").  The Supreme Court of Colorado in Kaiser v. Market Square Discount Liquors, Inc. also explained that, "to effect mutual rescission of a contract, both parties must be restored to the status quo ante: all payments and things of value must be returned, and all benefits conferred must be adequately compensated."  Id.

In Tilbury v. Osmundson, 352 P.2d 102 (1960), the Supreme Court of Colorado implicitly recognized that severable portions of divisible contracts can be rescinded.  See id. at 105.  In Tilbury v. Osmundson, the Supreme Court of Colorado ordered complete rescission of a land contract where there was a mistake regarding what land the deed conveyed.  See id. at 104.  In ordering rescission, the Supreme Court of Colorado in Tilbury v. Osmundson stated:

> The contract between the parties was not divisible. It was one single transaction. See Barth v. Deuel, [19 P. 471, 473 (Colo. 1888)] . . ., and 109 A.L.R. 1032.  To divide the land in this case would greatly reduce the value of the parts below that of the whole. This is not in conformity with equity and does not place the parties in status quo.

Tilbury v. Osmundson, 352 P.2d at 105.

The Colorado courts have offered some insight on what constitutes a divisible contract which might be susceptible to partial rescission.  In Cole v. Smith, a plaintiff sought to rescind in part and affirm in part a contract with the defendant that required the defendant to exchange one-thousand head of cattle and twenty saddle horses for a certain amount of real estate.  See 58 P. at 1086.  The parties entered into a written contract which provided that, if the defendant could not deliver the full count of one-thousand head of cattle, he would forfeit and retransfer a portion of the real estate he was to receive.  See id.  The Supreme Court of Colorado stated:

> [A]ssuming – but not deciding – that this contract and the considerations moving

-39-

> from the defendant are susceptible of division and separate consideration, and that plaintiffs are in a condition to accept one and reject the other of the forfeitures provided, and thus affirm in part and in part disaffirm, the contract, we now proceed to demonstrate that neither the complaint, in its allegations touching the ranch, nor the evidence responsive to it, nor both combined, are sufficient to relieve plaintiffs from the obligations of their contract in its entirety.

Id. at 1088.

In a more recent case, the Colorado Court of Appeals reaffirmed the principle, articulated in Smith v. Cole, that a contract susceptible to division and separate consideration can be rescinded in part. In Destination Travel, Inc. v. McElhanon, 799 P.2d 454 (Colo Ct. App. 1990), one party sought rescission of a contract, but also sought to enforce a provision of the contract that provided that the prevailing party in a suit on the contract would receive attorney's fees. See 799 P.2d at 458. The Colorado Court of Appeals upheld the trial court's refusal to enforce the attorney's fees provision of the contract, reasoning that the

> plaintiffs' election to rescind the . . . agreement cancelled all of plaintiffs' contractual rights to the benefits of the contract, including an award of attorney's fees in the event of litigation. A contrary holding would allow plaintiffs to insist on defendant's performance of the contract insofar as the performance benefits plaintiffs, while avoiding those aspects of the contract which are burdensome to plaintiffs. Since the agreement concerning attorney fees is not separable from the contract in question or supported by independent consideration, plaintiffs cannot rescind the contract in part and at the same time affirm it in part.

Id.

Citing the Colorado cases and BLACK'S LAW DICTIONARY, ARPA argues that a divisible contract carries the same meaning as a severable contract. BLACK'S LAW DICTIONARY defines a severable contract as "[a] contract that includes two or more promises each of which can be enforced separately, so that failure to perform one of the promises does not necessarily put the promisor in breach of the entire contract." BLACK'S LAW DICTIONARY at 324 (7th ed. 1999). The Court believes ARPA's view is accurate. Contracts sometimes contain severability clauses which allow for the rest

of a contract to stand if certain parts fail.  For example, the Court has observed and, while in private practice, participated in the practice of putting a clause in settlement agreements which states that, if any portion of the settlement is found to be unconstitutional, the rest of the settlement agreement will continue to be valid.  As the Colorado courts have explained, an important clue to determining divisibility or severability is whether a purportedly severable portion of a contract is supported by separate consideration.

Colorado case law therefore teaches that it is improper to allow parties to partially rescind contracts because: (i) parties should not be allowed to reap the benefits of a contract while simultaneously disavowing the burdens; and (ii) partial rescission would defeat rescission's purpose of returning parties to the status quo ante.  Moreover, the Court believes that, given the nature of rescission as an equitable remedy, courts are empowered to fashion the remedy in the way that accomplishes rescission's underlying purpose of returning parties to the status quo ante.  See Tilbury v. Osmundson, 352 P.2d at 105.  In light of those concerns, the Court believes that, based on the claims the City of Raton seeks to add and the allegations underlying those claims, it is possible that the Court could, through rescission, return the parties to the status quo ante in the manner the City of Raton seeks.  Specifically, it is possible that the portions of the Third Amendment to the Organic Contract that involve the Lamar Repowering Project can be treated as a separate contract, given that the City of Raton could, by rescinding those portions, return to status quo ante – namely, the result of rescission would be that the Organic Contract would continue in effect, with the only changes in the relationship being those related to the Lamar Repowering Project.  The concerns counseling against allowing partial rescission would not be present, because the City of Raton would have sworn off all benefits and all burdens related to the Third Amendment to the Organic Contract's provisions pertaining to the Lamar Repowering Project, and would not be

seeking to retain some benefit from the Third Amendment to the Organic Contract while swearing off its responsibilities under the document.  In the Proposed Second Amended Complaint, the City of Raton "offers to return to ARPA the benefits, if any, that it has received as a result of entering the contracts at issue, in order to return the parties to the status quo ante."  Second Amended Complaint ¶ 94, at 15.

ARPA argues that the Third Amendment to the Organic Contract is not severable from the Contract and is thus not subject to rescission.  The Court agrees with ARPA that certain aspects of the Third Amendment to the Organic Contract are intrinsically tied to the Organic Contract.  The important question however, is not whether the entire Third Amendment to the Organic Contract need be rescinded to return the City of Raton to the position it seeks to be in – i.e., having not approved the Lamar Repowering Project.  The Third Amendment to the Organic Contract accomplishes three purposes: (i) "extending the term of the Organic Contract in order to accommodate the issuance of bonds to finance the Lamar Repowering Project . . ."; (ii) making certain clarifying revisions to commitments of the Municipalities to acquire their wholesale power supply resources from the Authority"; and (iii) "making certain housekeeping revisions to reflect changed circumstances since the original adoption of the Organic Contract."  Third Amendment to the Organic Contract § 4, at 2. The Organic Contract also contains a revision to subsection 2.4.4(c) of the Organic Contract.  The new subsection, as reflected in the Third Amendment to the Organic Contract, states:

> If any Municipality disapproves a Project or Reliability Project, and the Authority thereafter proceeds with the issuance of bonds as provided in Subsection 2.4.4.b, the all requirements purchase obligation set forth in Subsection 2.3.2 shall continue to apply to the disapproving Municipality, but those costs, including debt service, directly allocated to the disapproved Project or Reliability Project, as determined by generally accepted accounting principles and the Uniform System of Accountants, shall not be assigned to the disapproving municipality.

Third Amendment to the Organic Contract § 3, at 3.  Thus, through the revision to subsection 2.4.4(c), the Third Amendment to the Organic Contract preserves municipalities' ability to disapprove individual projects and outlines a disapproving municipality's rights and responsibilities with respect to the project it disapproved.

In other words, even the Third Amendment to the Organic Contract, through the new subsection 2.4.4(c), suggests that agreements regarding individual projects are severable from the overall Organic Contract.  Presumably, provisions of the Third Amendment to the Organic Contract would apply to municipalities who in the future might disapprove a large project.  For example, if ARPA proposes, and a municipality exercises its right to reject, a project in the future, the disapproving municipality would be able to continue as a member municipality, availing itself of the other provisions of the Third Amendment to the Organic Contract, such as the extension of the term to the year 2040.

If an agreement regarding a single project can thus be severed from the entire agreement, as reflected in the Organic Contract and the Third Amendment to the Organic Contract, it may be possible to rescind agreement to an individual project, such as the Lamar Repowering Project. Based on the City of Raton's representations at the hearing, it appears that the City of Raton wishes to affirm its participation in ARPA.  This affirmance would, by implication, apply to the extended term reflected in the Third Amendment to the Organic Contract.  At the same time, the City of Raton wants the Court to declare that it never approved the Lamar Repowering Project.  Given the severability of the aspects of the contract relating to the Lamar Repowering Project, the Court believes the City of Raton can add a claim to seek rescission of only those aspects of the Organic Contract and the Third Amendment to the Organic Contract that concern the Lamar Repowering Project.

-43-

It might be difficult to sort out what consideration supports different aspects of the Third Amendment to the Organic Contract. Nevertheless, the Court does not believe it is necessary to engage in such a task at this time. The Colorado case law does not appear to require parties seeking partial rescission of a severable contract to identify and segregate the consideration supporting the severable portion. In <u>Destination Travel, Inc. v. McElhanon</u>, the Colorado Court of Appeals rejected a partial rescission argument, stating: "Since the agreement concerning attorney fees is not separable from the contract in question <u>or</u> supported by independent consideration, plaintiffs cannot rescind the contract in part and at the same time affirm it in part." 799 P.2d at 458 (emphasis added). The Colorado Court of Appeals' use of the disjunctive suggests that, if the party seeking to rescind part of the contract and affirm part could have shown that the attorney's fees clause was either severable from the rest of the agreement or supported by separate consideration, the result might have been different. The Colorado Court of Appeals' language does not require that both separate consideration and severability be shown, nor does it necessarily imply that a demonstration of separate consideration is a prerequisite for proving severability. This disjunctive makes sense because, in the end, separate consideration is an indicator of severability, but in situations where it is difficult to partition out consideration, a party may still be able to demonstrate that a provision of a contract can either stand alone or fail without destroying the rest of the agreement. For example, in the settlement agreements the Court discussed, which contain severability clauses, a party may not be able to point to separate consideration supporting individual provisions. Nevertheless, individual provisions can be severed out and invalidated without destroying the rest of the contract.

In this case, it may be impossible to separate out what consideration supports which promises. Even so, it would be incongruous to find that the portions of the Third Amendment to the

Organic Contract dealing with the Lamar Repowering Project are indivisible, given that the Organic Contract and the Third Amendment to the Organic Contract contain a mechanism for creating separate agreements for approving projects.  If the Organic Contract and the Third Amendment to the Organic Contract consider approvals of projects to be separate agreements, and if a municipality can simultaneously disapprove of a project and conform to the rest of the Organic Contract and the Third Amendment to the Organic Contract, the agreements to projects, to the extent they are contracts, are severable.  Ultimately, the Court expresses no opinion about the likelihood of the City of Raton being able to prevail on its rescission claim except to say that, at this point, the Court cannot say there is an indivisible contract such that it would be futile for the City of Raton to add the claim for partial rescission.

Similar analysis applies to rescission of the approvals, to the extent those approvals constitute contracts.  The approvals, while fairly characterized as extensions of the Organic Contract, are separate in the sense that they alter only the terms of the Organic Contract regarding the approval of one project.  The Organic Contract contemplates that a municipality might reject a project and that it might exercise one of two options in the event that it rejects a projects.  The two specific options under the Organic Contract are:

(i)     Option One.  If a Municipality elects Option One, it will continue to remain a constituent member Municipality of the Authority and it will be entitled to participate in all future Projects or Reliability Projects approved by the Authority, subject, however, to the provisions of this Section 2.4.  A Municipality selecting Option One will continue to be obligated to pay to the Authority its proportionate share of all expenses incurred by the Authority, including debt service, for all Projects, Reliability Projects, Planning, Operation, and Maintenance Expenditures and all other proper and appropriate expenses for which the Authority has become obligated up to the time of the effective date of the selection by the Municipality of Option One.  Further, the disapproving Municipality electing Option One shall be obligated to pay its proportionate share of all other expenses incurred by the Authority subsequent to its selection of Option One, except those costs,

-45-

including debt service, directly allocated to the disapproved Project or Reliability Project, as determined by generally accepted accounting principles and the Uniform System of Accounts.

(ii)     Option Two.  If a Municipality elects Option Two, it will sever its future relationship with the Authority and will not be entitled to participate in any future Projects or Reliability Projects approved by the Authority.  A Municipality Selecting Option Two will be entitled to receive power from any Project or Reliability Project that it participated in prior to the selection of Option Two and will continue to be obligated to pay the Authority its proportionate share of all expenses incurred by the Authority, including debt service, for all Projects, Reliability Projects, Planning, Operation and Maintenance Expenditures and all other proper and appropriate expenses for which the Authority has become obligated up to the time of the effective date of the selection by the Municipality of Option Two.  Notwithstanding the foregoing, in the event that all other Municipalities unanimously agree to assume the pre-existing obligations as described above, the disapproving Municipality shall be relieved of any other financial obligations to the Authority.

Organic Contract § 2.4.4(c)(i)-(ii).  The City of Raton wishes to have its approvals withdrawn so that it can say it never approved the Lamar Repowering Project.  At the same time, the City of Raton has not expressed a desire to abandon the Organic Contract or to terminate its relationship with ARPA. In effect, the City of Raton wants to turn back the clock to before the approvals so that it can exercise the first option and remain a part of ARPA.

The Organic Contract severs approval of a single project from the overall agreement and allows municipalities to uphold the rest of the Organic Contract while rejecting a specific project. The Court believes a rescission claim involving only the approvals – or only the Third Amendment to the Organic Contract, which is designed to accommodate the agreements regarding the Lamar Repowering Project – is cognizable, even if it may be subject to characterization as partial rescission.

In conclusion, the City of Raton has pled cognizable theories to support a rescission claim under Colorado law.  The City of Raton has not unduly delayed or acted in bad faith, and an

amendment will not prejudice ARPA.  The Court will therefore grant the City of Raton leave to

amend its complaint to plead rescission based on unilateral mistake, mutual mistake, and substantial

breach.

   **IT IS ORDERED** that the City of Raton's Motion for Leave to Amend the First Amended

Complaint is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Luis Stelzner
Nannette M. Winter
Sheehan, Sheehan & Stelzner, P.A.
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Lynn H. Slade
Erin E. Langenwalter
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

-- and --

Craig N. Johnson
Fairfield and Woods PC
Denver, Colorado

   *Attorneys for the Defendant*